```
 1   STATE OF NEW YORK : NASSAU COUNTY

 2   COUNTY COURT      : PART XIV
     ----------------------------------------:
 3   THE PEOPLE OF THE STATE OF NEW YORK,    :
                                             :
 4               - against -                 : IND: 1456N-00
                                             :
 5   PAUL SCRIMO,                            :
                                             :   JURY TRIAL
 6                                           :
                                Defendant.   :
 7   -----------------------------------------x

 8                        April 30, 2002
                          262 Old Country Road
 9                        Mineola, New York

10
     B E F O R E:
11
                 THE HONORABLE JEFFREY S. BROWN,
12               County Court Judge.

13
     For the People:
14

15               District Attorney - Nassau County
                 BY:  ROBERT BIANCAVILLA, ESQ.
16               Assistant District Attorney

17
     For the Defendant:
18

19               JOHN CHAMBERLAIN, ESQ.
                 1001 Franklin Avenue
20               Garden City, New York

21

22

23

24
                                BUFF BRANSON, RPR
25                              Senior Court Reporter
```

                              People v. Scrimo

 1                THE CLERK:  Indictment 1456 N of 2000,

 2      Paul Scrimo.

 3                MR. CHAMBERLAIN:  John Chamberlain, 1001

 4      Franklin Avenue, Garden City.

 5                MR. BIANCAVILLA:  Robert Biancavilla for the

 6      People.

 7                Good afternoon.

 8                THE COURT:  Good afternoon.

 9                THE CLERK:  Are you Paul Scrimo?

10                THE DEFENDANT:  Yes.

11                THE CLERK:  Do you appear here with your

12      attorney, Mr. Chamberlain, sitting next to you in the

13      courtroom?

14                THE DEFENDANT:  Yes.

15                THE CLERK:  Are the People ready to proceed?

16                MR. BIANCAVILLA:  The People are ready.

17                THE CLERK:  Is the defendant ready to

18      proceed?

19                MR. CHAMBERLAIN:  Ready.

20                THE COURT:  Counsel, a little bit of

21      housekeeping before we get to the Sandavol hearing.

22                The first thing I would like to discuss is

23      the People versus Antommarchi case, Mr. Chamberlain.

24                Have you had the opportunity to speak with

25      your client with respect to People versus Antommarchi

People v. Scrimo

1   and his right to approach the bench during the voir

2   dire process or the right to hear so nothing is out of

3   his earshot?

4              Mr. Chamberlain, have you had the opportunity

5   to speak with your client with respect to Antommarchi?

6              MR. CHAMBERLAIN:  I have, Judge.  Confirming

7   our conference this morning, the defendant will waive

8   that.

9              THE COURT:  Mr. Scrimo, has Mr. Chamberlain

10  explained to you about your right to be present during

11  the voir dire process and to hear when a potential

12  juror should approach the bench what that particular

13  juror is saying to the Court and to counsel?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Is it your desire that you are

16  going to waive that right to be present during these

17  bench conferences and have Mr. Chamberlain represent

18  you?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And you have had the opportunity

21  to ask Mr. Chamberlain any questions you have with

22  respect to People versus Antommarchi and this right to

23  go forward and listen at the bench?

24             THE DEFENDANT:  I understand, your Honor.

25             THE COURT:  You're willing to let

People v. Scrimo

1    Mr. Chamberlain approach the bench whenever a juror

2    asks to approach the bench?

3             THE DEFENDANT:  Yes.

4             THE COURT:  Thank you.

5             Mr. Chamberlain, initially do you want me to

6    precharge the jury during voir dire no unfavorable

7    inference should be taken should the defendant not take

8    the stand?

9             MR. CHAMBERLAIN:  Yes.

10            THE COURT:  I will do that.

11            Additionally, as counsel are both aware,

12   generally the jury will not be sequestered, however,

13   I'm required to give you an opportunity to be heard.

14   It's my inclination not to sequester the jury during

15   the trial or deliberations.

16            Mr. Biancavilla?

17            MR. BIANCAVILLA:  With respect to the

18   seriousness of the charges and potential publicity, the

19   People request, for jury deliberations only, the jury

20   be sequestered.

21            THE COURT:  Mr. Chamberlain?

22            MR. CHAMBERLAIN:  At this point, I don't

23   agree, and I don't think there will be any necessity

24   for sequestering the jury, certainly not during the

25   trial or deliberations.  I would oppose that

People v. Scrimo

1    application, unless there's a change I don't know

2    about.

3              THE COURT:  At this juncture, I plan not to

4    sequester the jury and I plan to tell the jury that I

5    will not be sequestering them.

6              However, if something should happen as a

7    result of a later application made by counsel, that can

8    be revised.  At this point, I will be telling the

9    potential jurors they will not be sequestered.

10             Counsel, additionally, I told you in chambers

11   that I will be setting time limits with respect to each

12   round.  With respect to round one, I will give you each

13   30 minutes; round two, 20; and each subsequent round

14   after that, 15 minutes.

15             Additionally, I will be keeping the sworn

16   jurors separate after they have been picked.  This way

17   they do not have to sit around during the voir dire

18   process.  As of now, we expect to be starting on

19   Monday.

20             Counsel, there was some question with respect

21   to subpoenaed records.  I have had the opportunity to

22   in camera inspect the records that have been subpoenaed

23   into the court as of now.

24             Just so the record is clear, there was a --

25   there were records to the real estate management

People v. Scrimo

1    company subpoenaed in by the People with respect to

2    Elizabeth Gardens and that contains the defendant's W-2

3    wage and tax information.  There were records with

4    respect to a workers' compensation case that took place

5    back in 1991 that was subpoenaed in by the People.

6            Additionally, there were additional records

7    also subpoenaed in by Mr. Chamberlain from Martin

8    Barten, manager of Elizabeth Gardens, and this record

9    contains correspondence and other documents with

10   respect to Elizabeth Gardens and with respect to the

11   defendant.

12           There were also records that came in called

13   superintendent's duties and it seems to have work

14   sheets that the superintendent would fill out on a

15   weekly basis.  It looks like what he was required to

16   do, when certain things were done with respect to, I

17   guess, the apartments in the complex.

18           Finally, there were records subpoenaed in by

19   the People from the Nassau County Correctional Center.

20   Within those records there is privileged information

21   and I have told counsel in chambers and am now placing

22   on the record with respect to the records, I found --

23   first of all, these records are all subsequent to the

24   date of incident --

25           MR. CHAMBERLAIN:  Date of the incident was

People v. Scrimo

1   April 12th, 2000, Judge.

2           THE COURT:  These records were records that

3   were subsequent to that date.  Furthermore, there's

4   privileged information which has nothing to do with the

5   notice that defense counsel has served upon the People

6   with respect to introducing an expert with respect to

7   orthopedic injuries that allegedly were sustained by

8   the defendant.

9           Now, I will not permit anybody to look at,

10  and I will not permit, with respect to the records

11  that -- other than what I am about to place on the

12  record.

13          Now there is what they call a Nassau County

14  Sheriff's Department Division of Corrections medical

15  intake chart and there were three questions in there

16  that I find would be relevant with respect to this

17  case, and based upon the notice that the defense

18  counsel has served upon the People, and those questions

19  were do you have any medical condition at this time,

20  are you currently under the care of a doctor, and have

21  you had a workers' compensation case with injury, and

22  the response is either no or yes thereafter.

23          I will permit counsel to look at that.  Other

24  than that, the balance of the records, I will not

25  permit counsel to look at.

People v. Scrimo

1      Counsel, I am prepared to go forward with the

2   Sandoval hearing at this time.  There are a couple of

3   things I want to touch on with you.

4      During the voir dire, as you may or may not

5   know, I use a questionnaire.  I will permit you, for

6   example, I will permit you to touch on the law with

7   respect to certain -- to areas, but I do not want you

8   to go into the definitions of the law and I don't want

9   you to go beyond that.  Leave that to me, please.

10      Now, we are about to start the Sandoval,

11   unless there's something else counsel would like to

12   bring to my attention.

13           MR. BIANCAVILLA:  Nothing from the People.

14           THE COURT:  Mr. Chamberlain?

15           MR. CHAMBERLAIN:  Ready for the Sandoval.

16           THE COURT:  Mr. Biancavilla, it's your

17   obligation to go forward with a Sandavol hearing.

18           MR. BIANCAVILLA:  Subject to the receipt of

19   the additional documents which we have subpoenaed, the

20   People have nothing for Sandoval.

21           THE COURT:  There's no need to go forward at

22   this point?

23           MR. BIANCAVILLA:  Unless there's something in

24   the additional documents that we received, Judge, the

25   People have nothing at this point.

People v. Scrimo

1    THE COURT:  Now, with respect to the witness

2    list, that, I understand, will be provided at this

3    point, Mr. Biancavilla?

4    MR. BIANCAVILLA:  I would ask this be marked

5    as Court's Exhibit I.

6    This list that's marked I, and I have served

7    a copy on Mr. Chamberlain, contains the names of 46

8    potential witnesses in this trial.

9    For the record, and as an officer of the

10    court, I will represent to the Court that two of the

11    witnesses contained on that witness list were the

12    subject matter of a protective order issued by Judge

13    Gerald S. Carter on the 27th day of July in the year

14    2000, and that the People were directed to disclose

15    those witnesses when we began the Sandoval hearing.

16    Contained in this list of 46 witnesses are those two

17    individuals that were subject to that protective order.

18    THE COURT:  Mr. Chamberlain?

19    MR. CHAMBERLAIN:  I think probably the proper

20    word, unless he's going to tell us which they are,

21    rather than contained in, is buried in.

22    My understanding, Judge, this sealed order

23    that we found out about just last Thursday for the

24    first time was issued by a walk-in judge because the

25    afternoon of July 26, 2000, the judge who was handling

People v. Scrimo

1   the case was not available.  I still have no idea of

2   what that order said, what the basis for it was, why

3   there was some emergency that it had to be done that

4   day instead of the next morning.

5         I have no idea why the judge who was handling

6   the case was not advised, but he wasn't, as he so

7   advises.  And I have no idea why another judge who was

8   handling the case subsequently was given to believe

9   that all requests had been complied with.  I do have a

10  transcript on that.

11        Judge, there have been discovery demands,

12  stipulations, hearings, all concerning what witnesses

13  the People have that they would be required to produce.

14  That would include -- and there was discussion

15  concerning a witness and motions concerning a witness

16  who the People claim they were not entitled to advise

17  about, although not by name, just that there was such a

18  witness.

19        On Thursday, when this first came up,

20  Judge Ort said you can, in effect, when the Sandoval

21  hearing starts on Monday, that would have been

22  yesterday, you can get that order open.  The trial

23  starts and you can do it then.

24        It didn't happen, partially because of Judge

25  Ort recusing himself.  Then he issued an order

People v. Scrimo

1   yesterday saying you are entitled to have it unsealed

2   at the beginning of the Sandoval.

3           THE COURT:  You said Judge Ort issued an

4   order yesterday.  Was that subsequent to his recusal?

5           MR. CHAMBERLAIN:  It was actually before it.

6   He said with respect to the -- we were asking for

7   the -- I was asking specifically for the unsealing of

8   this record.

9           What I was saying, Judge, was that you're

10  still the judge in this case.  Until it's transferred

11  to another judge, you're the judge.  You are the judge

12  in the case.

13          In any event, whether he did or not, and he

14  did, I'm not withdrawing that claim.  He did, but

15  whether he did or not, the argument was you'll get it

16  once the trial starts.

17          The trial has started.  I would like to know

18  whether the witnesses that they are talking about are

19  police officers.  Your Honor, my defendant was in

20  custody from May --

21          THE COURT:  I would like to see a copy of

22  Judge Carter's order.

23          MR. BIANCAVILLA:  I will show it to you in

24  camera.  It's a sealed order.

25          MR. CHAMBERLAIN:  It's not sealed any more.

People v. Scrimo

1              THE COURT:  Just let me see it.

2              MR. BIANCAVILLA:  Do you want to mark it as

3    an exhibit?

4              THE COURT:  Do we have it marked as a court

5    record?

6              THE CLERK:  May I see it?

7              MR. BIANCAVILLA:  You wouldn't have it,

8    Judge.  It shouldn't be in there.

9              THE COURT:  It shouldn't be.

10             Prior to Judge Carter's order, was there

11   another order from another judge of collateral

12   jurisdiction?

13             MR. BIANCAVILLA:  With respect to these

14   witnesses?

15             THE COURT:  Yes.

16             MR. BIANCAVILLA:  No.

17             MR. CHAMBERLAIN:  I doubt Judge Carter ever

18   intended that the judge in charge of the case not be

19   advised of that order.

20             THE COURT:  I can't answer that,

21   Mr. Chamberlain.  All I can tell you is that Judge

22   Carter is a County Court judge, like myself, and a

23   judge of collateral jurisdiction.  I can't overrule him

24   with respect to his order sealing certain information.

25             MR. CHAMBERLAIN:  So you indicated in

People v. Scrimo

1    chambers, Judge, but I would still suggest that there's

2    no good reason I know of that I haven't been able to

3    see that.  There's no reason I know of why Judge Carter

4    should say this should be sealed and kept secret from

5    the judge handling the case when orders are being

6    issued and hearings are held to determine whether the

7    defendant is in custody, whether the police officers

8    are under the auspices of the police.

9            During the period of time this order was

10   issued, he was in custody.  If this is one of these

11   jail house set ups where you try to get somebody in to

12   talk to him to get him a deal, if that was arranged by

13   the police, I have a right to know that and I have a

14   right to know it before we go on with jury selection

15   and I would like to have an opportunity to investigate

16   it.

17           Even under Judge Carter's order, as I

18   understand it -- I haven't seen it.  I don't know what

19   it's based on.  I don't know whether it was in custody.

20   I don't know if it was in jail or before he was

21   arrested.  I don't know what it's about, but I do know

22   from what I have been told it could be unsealed once

23   the case started.

24           THE COURT:  First of all, this application is

25   made pursuant to CPL 240.90(3) where it says, Where the

People v. Scrimo

1    interests of justice so require, the court may permit a

2    party to a motion for an order of discovery or a

3    protective order, or other affected person, to submit

4    papers to testify ex parte in camera.  Any such papers

5    and transcript of such testimony shall be sealed, but

6    shall constitute a part of the record on appeal.

7            That's what we have before us right now.

8            MR. CHAMBERLAIN:  Judge, I have to

9    respectfully disagree.  That procedure you outlined is

10   done rarely, but it is done.  I understand the section.

11   As a matter of fact, Judge Honorof did it earlier, as

12   we discussed in chambers, with respect to two other

13   witnesses who testified that the chief witness for the

14   people is a drug pusher.

15           THE COURT:  That may be, Mr. Chamberlain, but

16   that has nothing to do the instant order at hand.  My

17   clerk has just handed me the original sealed order in

18   an envelope.  It's marked People versus Paul Scrimo

19   with the indictment number.  It says sealed order,

20   Honorable Gerald Carter.

21           MR. BIANCAVILLA:  Was that sealed order in

22   the court file that Judge Ort had prior to the case

23   being transferred to you?

24           THE COURT:  I can't answer that but it's

25   there now; is that correct?

People v. Scrimo

1    THE CLERK:  Yes.

2    MR. BIANCAVILLA:  I wanted to make that

3    clear.

4    MR. CHAMBERLAIN:  Judge Ort made it clear on

5    the record he knew nothing about that order.  What I am

6    saying, Judge, the reason for the exercise of

7    discretion, under 240, is where there's a good reason.

8    That's done by the judge who knows the case who has a

9    basis for that, not a walk-in judge who has been

10   brought in some papers for the afternoon saying we need

11   a sealing order.

12   THE COURT:  I understand your argument,

13   Mr. Chamberlain, but your argument is to the Appellate

14   Division, not another judge of collateral jurisdiction.

15   MR. CHAMBERLAIN:  Judge, that order, if I

16   have heard it correctly, is unsealed by its own terms.

17   It said until the opening of trial.  Judge Ort says

18   once Sandoval goes ahead.  The trial has commenced.

19   THE COURT:  It's not unsealed.  The People

20   are authorized to delay notice.  At this point, they

21   have now given you notice and they have complied.

22   MR. CHAMBERLAIN:  They haven't give me notice

23   of who the witnesses are, whether the defendant was in

24   custody, under what circumstances that was taken.

25   Really, they haven't given me notice.  I still don't

People v. Scrimo

1    know.  All I have is --

2                 THE COURT:  As you know, Mr. Chamberlain, we

3    are governed by the Criminal Procedure Law that says,

4    at certain junctures and certain times during a trial,

5    you are entitled to certain information which is

6    generally known as Rosario information.

7                 Now, I am not about to go beyond what the

8    Criminal Procedure Law says with respect to

9    information.

10                 Now, if you can, tell me why I should be

11    directing the People to do anything other than what

12    they have done now which is complied with -- all that's

13    happened at this point is they delayed notice with

14    respect to the notice of witnesses and now they have

15    given you notice by what has been marked as Court

16    Exhibit I.

17                 MR. CHAMBERLAIN:  Which I am not entitled to

18    see.

19                 THE COURT:  Sure you are.  You have the

20    witness list.

21                 MR. CHAMBERLAIN:  They've got two names out

22    of a list of whatever it is, 49 --

23                 THE COURT:  Forty-six.

24                 MR. CHAMBERLAIN:  Forty-six, and they won't

25    tell me which two.  I don't even know whether they are

People v. Scrimo

1    police witnesses or private -- or layman witnesses.

2              THE COURT:  Mr. Biancavilla?

3              MR. BIANCAVILLA:  Yes, Judge.  With respect

4    to the witnesses that we are talking about, first of

5    all, the People are not required, other than certain

6    police witnesses that have received statements from the

7    defendant or identification witnesses, and we have

8    provided Mr. Chamberlain with the notice regarding all

9    of those witnesses, any other witnesses the People

10   intend to call at a trial, we are under no obligation

11   to provide defense counsel with those witnesses.

12             It is very clear in the Criminal Procedure

13   Law.  On the date set for trial, prior to jury

14   selection, the People are required to provide a witness

15   list for the Court so the Court can inquire of the

16   jurors whether they know of any of the parties.

17             We have complied.  We have followed the order

18   of Judge Carter and disclosed within that witness list

19   the two individuals that a protective order was issued

20   to up until this point in time.

21             I will represent to the Court they are not

22   police officers, nor are they subject to any other

23   disclosure requirements of the Criminal Procedure Law.

24             THE COURT:  Mr. Chamberlain, I know of no

25   cases that require the People to do anything more at

People v. Scrimo

1      this juncture than what they have done, and they have

2      provided you with a witness list which they are

3      required to do at this juncture.

4              I can't give you any reasons as to why

5      Judge Ort may not have known something or what he did

6      know at what juncture.  We are here today ready to try

7      this case, and, as far as this Court is concerned,

8      there's an order of a judge of collateral jurisdiction,

9      Judge Gerald Carter, who has sealed certain

10     information.

11             All it does now at this point is it directs,

12     at the eve of trial, the Sandoval hearing, it can be

13     disclosed.  I can't overrule Judge Carter nor ask why

14     something happened in any particular shape or form.  As

15     to how it happened, not relevant to the argument before

16     the Court.

17             At this point the People have provided you

18     with a witness list as required by the Criminal

19     Procedure Law and rules of this Court.

20             Anything else?

21             MR. CHAMBERLAIN:  Briefly, Judge.  We did

22     have a joint Wade/Huntley --

23             THE COURT:  Yes.  Yes.

24             MR. CHAMBERLAIN:  The People offered a

25     statement -- one, two statements taken from private

People v. Scrimo

1   individuals not in custody.  My understanding was that

2   was it.  I think the Court's understanding was the

3   same.

4           Again -- may I ask the Court, when will I be

5   able to see the affidavit?  I understood I would see it

6   when the trial commenced which is now.  When will I

7   be --

8           THE COURT:  Which affidavit?

9           MR. CHAMBERLAIN:  The order -- excuse me.

10          MR. BIANCAVILLA:  The affidavit contained

11  there, we will turn that over as Rosario at the time

12  that Rosario is required to be turned over.

13          THE COURT:  Now, as you know,

14  Mr. Chamberlain, just so the record is clear, the

15  Huntley hearing was held pursuant to CPL 710.30.

16  Whenever the People intend to offer at a trial, A,

17  evidence of a statement made by defendant to a public

18  servant, which statement if involuntarily made would

19  render the evidence thereof suppressible upon motion

20  of -- I'm only reading the relevant part.

21          MR. CHAMBERLAIN:  I'm aware of the section,

22  Judge.

23          THE COURT:  Obviously, at this point, the

24  People are telling us this was not made to a public

25  servant.

People v. Scrimo

1    MR. CHAMBERLAIN:  I'm guessing here.  That's

2    all I can do.  What worries me is was this done by

3    pre-arrangement or communication and a deal made

4    between some other inmate trying to get a deal from the

5    People.  If it was done that way, I have a right to

6    probe that.  That's what I believe happened and it's

7    being kept from me.

8    THE COURT:  There's certain information you

9    will receive pursuant to Rosario, Criminal Procedure

10   Law 240.45.

11   Now, the People know what they have to

12   provide you and they have to provide you a whole litany

13   of information here.  If you want additional time after

14   direct examination, you can ask me if you want to have

15   some time to do some research or whatever,

16   Mr. Chamberlain.

17   MR. CHAMBERLAIN:  I may need time to do

18   investigation.

19   THE COURT:  We'll see how it goes at the

20   time.  The People are required, and Mr. Biancavilla

21   knows, pursuant to 240.45, he knows what he has to

22   provide you and I'm sure he will do that.

23   Anything else?

24   MR. CHAMBERLAIN:  Nothing further, Judge.  I

25   respectfully except.

People v. Scrimo

 1    THE COURT:  You have an exception.

 2        Counsel, at this point, unless there's

 3    something further, we will adjourn to 9:30 tomorrow.

 4        So the record is clear, the Court has

 5    returned to Mr. Biancavilla his copy of Judge Carter's

 6    order.

 7        MR. BIANCAVILLA:  Thank you, Judge.

 8        THE COURT:  Counsel, at this point we don't

 9    know which courtroom we are using, but I would suggest

10    you come in first thing in the morning and I'm sure

11    we'll know at that point.

12        MR. CHAMBERLAIN:  Judge, can I ask one

13    question?  We had a report submitted as part of the

14    discovery by the FBI with respect to a tool that was

15    examined here.  I do not, unless I mistake this list,

16    see an FBI agent name on here.

17        MR. BIANCAVILLA:  They are not agents that

18    are involved.

19        MR. CHAMBERLAIN:  Would you tell me who they

20    are?

21        THE COURT:  Twenty-two and 23.

22        MR. CHAMBERLAIN:  I'm having trouble reading,

23    Judge.  Could I ask the district attorney, on this list

24    of 46 witnesses, who will be called generally in the

25    order listed.

People v. Scrimo

1    MR. BIANCAVILLA:  I couldn't tell you.  We
2    are still interviewing witnesses.
3    THE COURT:  At some point I will ask
4    Mr. Biancavilla.
5    MR. BIANCAVILLA:  I'll let you know day to
6    day.
7    MR. CHAMBERLAIN:  I am mainly interested in
8    experts.
9    THE COURT:  Once we have a jury, I will ask
10    Mr. Biancavilla to do that.
11    MR. BIANCAVILLA:  It's hard to set up the
12    witnesses until we actually get a jury, Judge.
13    THE COURT:  I understand.
14    Thank you, counsel.
15    See you tomorrow.
16    MR. BIANCAVILLA:  Judge, I just wanted to
17    make copies of those documents.  Is that okay?
18    THE CLERK:  Mr. Scrimo, your case is being
19    adjourned to tomorrow.  You must appear tomorrow.  If
20    you fail to appear, a warrant may be issued for your
21    arrest and bail, if any, may be forfeited.
22               *        *        *
23    (Whereupon, the trial in the above matter was
24    recessed until May 1, 2002.)
25



```
 1    STATE OF NEW YORK : NASSAU COUNTY

 2         SUPREME COURT PART XII

 3    ------------------------------------------X

 4    THE PEOPLE OF THE STATE OF NEW YORK        Ind. 1456-00

 5              - against -

 6    PAUL SCRIMO,                               Jury Selection

 7                   Defendant

 8    ------------------------------------------X

 9                           May 1, 2002
                              262 Old Country Road
10                            Mineola, New York

11
      B E F O R E :
12
                     HON. JEFFREY S. BROWN,
13                        County Court Judge

14
      A P P E A R A N C E S :
15
                HON. DENIS DILLON
16                 Nassau County District Attorney
                   BY:  ROBERT BIANCAVILLA, Esq., of Counsel,
17                      Assistant District Attorney
                                  For the People
18

19
                JOHN CHAMBERLAIN, Esq.
20                 1001 Franklin Avenue
                   Garden City, New York
21                            For the Defendant

22

23
                              KATHLEEN PLAIA
24                            OFFICIAL COURT REPORTER

25
```

Kathleen Plaia

```
 1              THE CLERK:  Come to order, please.  This is
 2    indictment 1456N of 2000, People versus Paul Scrimo.
 3    Case on trial.  All parties are present.
 4              Are the People ready?
 5              MR. BIANCAVILLA:  Ready, your Honor.
 6              THE CLERK:  Defense ready?
 7              MR. CHAMBERLAIN:  Defendant ready, Judge.
 8              THE COURT:  Counsel, are we ready to bring in
 9    the prospective jury panel?
10              MR. CHAMBERLAIN:  No, Judge.  I have an
11    application.
12              THE COURT:  Yes, Mr. Chamberlain.
13              MR. CHAMBERLAIN:  I'm not sure, Judge, that
14    the application for a preconclusion of the two
15    witnesses that were covering that sealing order was on
16    the record or not.  It was a lot of discussion about
17    it.  I know your Honor denied that.
18              THE COURT:  I believe it was.  But you can
19    certainly place it on the record now if you'd like.
20              MR. CHAMBERLAIN:  I would like to.
21              THE COURT:  Absolutely.
22              MR. CHAMBERLAIN:  Beyond that, Judge, with
23    respect to jury selection, there is an issue concerning
24    some witnesses we have.
25              THE COURT:  Yes, sir.
```

1           MR. CHAMBERLAIN:  That we may have, depending

2      upon what the People put on.

3           THE COURT:  Well, you understand that at this

4      point you don't have to tell me whether you're going to

5      be putting on a case or not.  However, you realize, if

6      there comes a point where one of your witnesses is

7      known to one the jurors, we can have a problem.

8           So, that's something you would have to take

9      under advisement.

10          MR. BIANCAVILLA:  Judge, I'm going to have an

11     application with respect to specifically that, when

12     Mr. Chamberlain is finished.

13          THE COURT:  Okay.

14          MR. CHAMBERLAIN:  Well, Judge, I have a list

15     of witnesses that I could provide for voir dire of the

16     jury, that does not include a number of witnesses who,

17     if they are going to testify, they would be witnesses

18     to testify before and possibly some others may be

19     testifying to things that would amount to criminal

20     acts, in that, they -- the testimony as I understand it

21     before Judge Honorof, although I didn't hear it, was

22     that they had purchased cocaine from a drug seller by

23     the name of John -- they knew him as John Doe, but his

24     name is John Kane and he's the People's chief witness

25     in this case.  And I'm concerned about possible

1      repercussions.  And I don't want to lose those

2      witnesses.  That's the reason why I would like not to

3      reveal their names at this time.

4              THE COURT:  Well, first of all, with respect

5      to whether or not those witnesses you're going to put

6      on, we would have to first see what Mr. Kane testifies

7      to at the time east placed on the witness stand.  Now,

8      let me ask you this.

9              MR. CHAMBERLAIN:  That's correct, Judge.

10             THE COURT:  Are we going to need an attorney

11     for Mr. Kane?  I don't know what's pending, if

12     anything.

13             MR. BIANCAVILLA:  No, Judge.

14             MR. CHAMBERLAIN:  Well --

15             THE COURT:  Yes, Mr. Chamberlain.

16             MR. CHAMBERLAIN:  There may be a question for

17     Mr. Kane that comes up.

18             THE COURT:  I'm only concerned about a Fifth

19     Amendment situation at this juncture.  That's why I

20     asked that question.  I don't know if Mr. Kane has

21     anything pending.

22             MR. CHAMBERLAIN:  There may be questions

23     concerning criminal acts on his part that may require

24     advise of counsel.

25             MR. BIANCAVILLA:  Judge, Mr. Kane is not

1    going to need the advise of counsel.  We'll make that

2    representation to the court.  He will freely testify

3    regarding any questions -- proper questions that are

4    asked of him throughout the trial.

5              THE COURT:  I'm not telling you how to put on

6    your case, Mr. Chamberlain.  But if Mr. Kane should

7    deny that he committed a particular criminal act, then

8    you may want to put on a witness with respect to that

9    credibility issue.

10             MR. CHAMBERLAIN:  That's correct, Judge.

11             THE COURT:  But, at this point, from what

12   Mr. Biancavilla has told us, he's going to freely

13   testify.

14             MR. BIANCAVILLA:  Absolutely.

15             THE COURT:  I'm not sure whether we will

16   reach that point.  But, at this point I will take

17   Mr. Biancavilla's representation as an officer of the

18   court.

19             Anything else, sir?

20             MR. CHAMBERLAIN:  With respect to those

21   witnesses, Judge, there is already testimony that is

22   sealed in this case.  And I would respectfully request

23   that those witnesses, that I not have to reveal the

24   identity of those witnesses at this time.  I don't

25   think I do legally.  And I really doubt with respect to

 1    the issues your Honor is talking about, as far as
 2    possible -- one of the jurors knowing him.  These
 3    people are, people themselves, are going to be
 4    reluctant witnesses because of the fact they're going
 5    to be testifying of drug transactions.  And I doubt
 6    very seriously whether any of the prospective jurors
 7    would have anything to do with them.
 8              THE COURT:  We don't know, Mr. Chamberlain.
 9    That's the only reason I'm asking you at this point.
10    As I said before, first of all, you may not even have
11    to put these witnesses on.  Or, if you do, there's --
12    the only problem I could foresee at this juncture is
13    that one of the jurors may know one of the witnesses.
14    That's, I suppose, why we have alternates on juries.
15              MR. CHAMBERLAIN:  All right, Judge.
16              THE COURT:  But that's why I asked you if you
17    can give me a list of the witnesses now.  I would like
18    to voir dire the ones, you know, you will call.  You
19    don't have to, as I said before, with you with the
20    proviso there can be a problem if one of the jurors
21    does know one of the witness.
22              MR. CHAMBERLAIN:  Okay, Judge.  I'll provide
23    you with a list at this time.
24              THE COURT:  Thank you, Mr. Chamberlain.
25              MR. CHAMBERLAIN:  Thank you, Judge.

```
 1            THE COURT:  Anything further, Counsel?

 2            MR. CHAMBERLAIN:  One further thing, Judge.

 3     Part of the discovery demand concerned prior records

 4     concerning any witnesses that the People were going to

 5     produce.  I believe there may have been some people on

 6     that witness list I got yesterday that has, that in --

 7     that will have prior records.  I would be asking for

 8     that.

 9            MR. BIANCAVILLA:  Judge, the People will

10     provide any type of criminal histories at the

11     appropriate time, pursuant to the statute.

12            THE COURT:  The Criminal Procedure Law

13     addresses that very point -- and I'm sure

14     Mr. Biancavilla knows that too -- that he has to

15     provide it at that juncture.

16            MR. CHAMBERLAIN:  Could I ask the district

17     attorney when we are going to get the Rosario material?

18            MR. BIANCAVILLA:  After the jury is sworn,

19     before opening statements.  Probably, Monday morning,

20     Judge.  We're in the process of compiling it now.

21            Again, as I stated yesterday, I came into

22     this case three weeks ago, Judge.  So, right now we're

23     working on providing the material.  If

24     Mr. Chamberlain -- I'm hoping to have it completed by

25     Sunday.  If he would like to pick it up on Sunday, it
```

Proceedings                                            30

```
 1           possibly could be completed on Sunday for him.
 2                    THE COURT:  Let us know on Friday how you're
 3           doing.
 4                    MR. BIANCAVILLA:  Yes, I'll let you know.
 5                    THE COURT:  Ready to go?
 6                    MR. BIANCAVILLA:  I have an application.
 7                    THE COURT:  Yes, Mr. Biancavilla?
 8                    MR. BIANCAVILLA:  There are a couple of
 9           things I want to address.  We want to amend our witness
10           list and add two further names.
11                    THE COURT:  Yes.
12                    MR. BIANCAVILLA:  John Williams.
13                    THE COURT:  Is he a police officer?
14                    MR. BIANCAVILLA:  No, civilian.  And Robert
15           White, also a civilian.
16                    THE COURT:  Okay.
17                    MR. BIANCAVILLA:  In addition, Judge, I
18           received a letter from the Department of Veterans'
19           Affairs Medical Center in Northport, New York.  We had
20           served a so ordered subpoena on that facility, signed
21           by Judge Ort.  And the letter was addressed to my
22           office.  And it basically stated that we did not
23           receive an adequate authorization with your request and
24           we are unable to release the information without the
25           patient's specific consent.  We have asked the patient
```

Kathleen Plaia

Proceedings                                                31

1          to supply the additional information we need to process

2          the request.  So, the court will not be receiving those

3          documents until counsel has his client provide them

4          with the proper consent.

5                      I would ask that the Mr. Chamberlain be

6          directed to do so, so we can get the discovery material

7          regarding those medical records, or else, again, my

8          application to precludes will be made at that time.

9                      THE COURT:  Mr. Chamberlain.

10                     MR. CHAMBERLAIN:  Judge, if Mr. Biancavilla

11         will provide me with whatever consent he needs, I'll be

12         happy to have my client sign it.

13                     MR. BIANCAVILLA:  Apparently it was mailed

14         directly to Mr. Scrimo, Judge, according to the letter

15         I got from the medical center.

16                     MR. CHAMBERLAIN:  Can I see that?

17                     MR. BIANCAVILLA:  Sure.

18                     THE COURT:  Mr. Chamberlain, if you would ask

19         your client if he's received it.  If he has not,

20         perhaps they can facts another consent.

21                     MR. BIANCAVILLA:  Fine.

22                     MR. CHAMBERLAIN:  He says he hasn't, Judge.

23         I note, the letter is dated April 29th.

24                     MR. BIANCAVILLA:  He may not have received it

25         yet, Judge.  I would ask, once it's received, that it

Kathleen Plaia

1    be immediately sent back to them so we can get those

2    records.

3              MR. CHAMBERLAIN:  As soon as it's received,

4    we will have it sent back.  It probably, hopefully,

5    will be there in a day or two.

6              MR. BIANCAVILLA:  Okay.  I have one further

7    application, Judge.

8              THE COURT:  Yes?

9              MR. BIANCAVILLA:  With respect to

10   Mr. Chamberlain's list of witnesses, Judge, we ask all

11   witnesses be revealed at this time.

12             As authority for that, Judge, I will cite to

13   the Court, People of the State of New York versus Juan

14   Cangiano.  It's a Supreme Court, Criminal Term, Kings

15   County case decided in 1986 that's been affirmed by the

16   a Appellate Division under 156 AD2d, 575.  And it was

17   affirmed by at Appellate Division on December 18th,

18   1989.  Appeal to the Court of Appeals was denied.

19             And, basically, what this case states, Judge,

20   that a defendant must furnish a list of prospective

21   defense witnesses to the Court and the district

22   attorney immediately prior to jury selection in order

23   to determine whether any of the prospective jurors are

24   related to or know a prospective witness, and thereby

25   diminish the risk of a mistrial resulting from

```
 1    relationship between sworn jurors and witnesses

 2    uncovered in the middle of trial.  And no

 3    constitutional right of the defendant is violated by

 4    requiring him to furnish such list, since mere

 5    disclosure, witness names, immediately prior to jury

 6    selection cannot prejudice the defense, absent

 7    extraordinary circumstances.

 8                 I have one further case, Judge, in support of

 9    that proposition, which is cited within Cangiano, which

10    is a Court of Appeals case, the People of the State of

11    New York versus James L. Boyd.  It's a Court of

12    Appeals, decided May 12th 1981, 53 NY2d, 912.

13                 THE COURT:  Now, did the Appellate Division,

14    when it affirmed the Criminal Court decision, did it

15    write on it or just affirm?

16                 MR. BIANCAVILLA:  Just affirmed it, Judge.

17    They cited too, People v. Boyd.

18                 I have brought copies of both of those

19    decisions for the Court.

20                 Unless there is some compelling reason and

21    some extraordinary circumstance relating to those two

22    witnesses that were sealed, at this particular point in

23    time, at this particular point in time, we would ask

24    that the defendant be required to disclose their

25    identity or be precluded from presenting their
```

Proceedings                                    34

1    testimony which is the remedy set forth by both the

2    Court of Appeals and the lower court judge.

3              THE COURT:  May I see those cases?

4              MR. BIANCAVILLA:  Yes, absolutely.  And I

5    have brought copies for Mr. Chamberlain also.

6              THE COURT:  Mr. Chamberlain, would you like

7    to be heard?

8              MR. CHAMBERLAIN:  I would like to take a look

9    at the cases.

10             THE COURT:  Certainly.

11             MR. CHAMBERLAIN:  If I may.

12             THE COURT:  Absolutely.

13             (Whereupon, there is a brief pause in the

14   proceedings.)

15             THE COURT:  Mr. Chamberlain.

16             MR. CHAMBERLAIN:  Yes, Judge.  Yes, your

17   Honor.  Boyd, as I read it, is a case involving an

18   improper remark by the Court, indicating that a certain

19   part of the list, a defendant's witness list, means the

20   defendant doesn't have to testify and the Court said it

21   was harmless error in view of the overwhelming guilt.

22             The other case talks about other ways of

23   handling this, which would include a possibility at the

24   end of the court, if, in fact, we put witnesses on,

25   other than that are on the list, voir diring the jurors

```
 1      at that point.

 2              But, in this case, the Court, this particular

 3      Court said it preferred revelation of the witnesses at

 4      the inception, unless there was some good cause shown.

 5              My understanding of the law, and it's

 6      longstanding, it's always been discretionary with the

 7      Court.  I don't think there's any obligation on the

 8      part of the defense to present a witness list.  But

 9      it's within the discretion of the court.  The Court

10      generally likes to have a list rendered at the

11      inception.

12              Judge, I have a practical way out of this

13      whole thing.  I will reveal the names, provided I get a

14      representation from the district attorney that these

15      people will not be investigated and threatened with

16      prosecution with respect to the crimes that they

17      allegedly will testify, that I believe they will

18      testify, which is possession, buying cocaine from the

19      People's witness.  And that's what -- Judge, that's why

20      Judge Honorof -- the reason I gave you that transcript,

21      you asked about why Judge Honorof sealed that.  He

22      sealed it for that specific reason.  Because there

23      was -- the witnesses we have are not everyday citizens.

24      These were users.  They were involved -- one of the

25      people had to be -- actually had been in custody at the
```

Proceedings                                              36

1    time, and I never got to -- got to talk to that person

2    before, I think briefly after coming out of Judge

3    Honorof's chambers.

4              What I'm saying is, these people will easily

5    be threatened off testifying here if they're -- if the

6    DA goes out and says, we're going to charge you with

7    crimes.  Judge Honorof, I believe, said they would get

8    immunity for that testimony.  If I have that

9    representation, or if they have this, or he represents

10   he will not go and get these people and prosecute you

11   for possession of coke for testifying truthfully in a

12   murder case, then I have no problem revealing those

13   names.

14             MR. BIANCAVILLA:  Judge, can I just be heard

15   for a second?

16             THE COURT:  Yes.

17             MR. BIANCAVILLA:  Unless the constitution of

18   the state has changed, I don't think Judge Honorof has

19   the authority to grant anyone immunity from

20   prosecution, first of all.

21             Second of all, the People don't just blindly

22   grant people immunity from prosecution.  If these

23   individuals choose to testify, we expect to be -- to

24   fully cross-examine them regarding their testimony.

25             Obviously, if they intend to take the stand

Proceedings                                    37

1    and take the Fifth Amendment, that's an issue that we

2    will deal with at that particular time.

3             Right now I'm just asking the Court to

4    exercise its discretion, and clearly it's within the

5    discretion of the trial court, to require the defendant

6    to release the names of its potential witnesses at this

7    particular time.

8             I don't see any circumstances.  The District

9    Attorney's Office does not go out and threaten

10   witnesses not to testify.  Clearly, as all these

11   witnesses on this witness list will be interviewed by

12   members of either my staff or the Nassau County Police

13   Department.  If they choose not to speak to us, they

14   have an absolute right not to speak to us.

15            But my point is, that we have a right, if we

16   wish, to try and attempt to contact these witnesses, to

17   speak to them.  And it will be up to them to decide

18   whether or not they wish to speak to our investigators.

19            But Mr. Chamberlain has not set forth any

20   extraordinary circumstances that require a protective

21   order at this particular time for those two witnesses

22   or any other witness that he anticipates to call.

23   Because, as he said, this is just a list of some of the

24   people he intends to call.

25            We would ask that the Court to require him to

Kathleen Plaia

```
 1    produce all the witnesses he intends to call.  And we

 2    have given the Court -- again, discretionary -- but we

 3    have given the Court, Court of Appeals support for

 4    exercising that discretion, together with a lower court

 5    decision which has been affirmed by the Appellate

 6    Division.

 7              THE COURT:  Based upon what you told me,

 8    Mr. Chamberlain, I see another problem that's going to

 9    come up.

10              I think I might have to have counsel for

11    these witnesses if you do put them on the stand.  I

12    would -- that's another problem we will have to address

13    later.

14              However, I would prefer that you divulge them

15    at this point, just to prevent any problem we may have

16    with respect to somebody knowing one of these

17    witnesses.

18              You know, I understand what you're telling

19    me.  However, now, it would be a shame to be going

20    through this trial and find out that somebody knows

21    these witnesses and then we end up with a mistrial.

22              MR. CHAMBERLAIN:  Judge, I think there are

23    two things.  As I have already indicated, I think the

24    possibility of that is extremely limited based upon the

25    nature of the witnesses.  And there may or may not be a
```

1    witness who is on probation or has pending matters.   I

2    don't really know.

3              But, the power of this District Attorney's

4    Office and the police department is immense, to go send

5    investigators out.   I have a list of forty-nine

6    witnesses, I guess it is now, forty-eight, whatever it

7    is.   Many of whom who I have never heard of before.

8    And I don't even know what they're going to testify to.

9    He knows because from the outset of this case the

10   nature of this testimony was revealed to the People.

11   And the only issue is whether or not they have a right

12   to interview them previous to their testifying here.

13   And that's the problem.   That's what I consider to be

14   the problem here, Judge.

15             Judge Honorof did indicate, if I recall

16   correctly, on the record that they would be granted

17   immunity for that testimony.   I think that's in the

18   record there.   Your Honor has that transcript.

19             THE COURT:   Well, whether it's on the record

20   or not, usually it's the District Attorney's Office who

21   is the one who grants immunity.

22             MR. CHAMBERLAIN:   Well, it may usually be,

23   Judge.   I think -- I disagree with the district

24   attorney that the Court -- I think the Court can, in an

25   in-camera protective order situation or the situation

Kathleen Plaia

1    we're talking about here, offer immunity to witnesses

2    for truthful testimony.  Obviously, it has to be

3    truthful testimony.  But I think they can.

4            THE COURT:  Mr. Chamberlain, that's not my

5    recollection of the law.  However, you know, a judge

6    certainly has a right to seal the record, which he has

7    done.  And he has -- these names are not available to

8    anyone at this point.  And that may be.  All I'm saying

9    to you at this point, and you understand the problems

10   that are academic with respect to not providing these

11   name to me at this point.

12           I understand you do not have to put on a

13   case.  It's the People's burden to go forward and prove

14   these allegation in the indictment beyond a reasonable

15   doubt.  You do not have to do anything.

16           You know, if you don't want to give me the

17   names, I'm not going to compel you to do that.

18   However, it can be a problem in the future, if it turns

19   out that one of the witnesses or one of the witnesses

20   is known to one or more jurors of the jurors.  I don't

21   know.  I don't know how many witnesses we're talking.

22   You keep saying there's no reason why these people

23   should know each other.  You don't know what their life

24   experience may be with respect to the potential juror

25   or jurors.  They may know these people.  I don't know

1    that.

2              At this point I would prefer it, but as I

3    said before, if we have -- we will have alternates.

4    And maybe we should have a couple of extra alternates

5    as a result of that.

6              MR. CHAMBERLAIN:  Could I defer in response

7    then until after lunch?  I would like to talk to my

8    client and then I can bring in the other list I

9    suppose.

10             THE COURT:  You certainly can.  I'm not sure

11   how far I'm going to get anyway.  So, what I'm going to

12   suggest is, what I will do is, I will defer the

13   question of the potential jurors with respect to the

14   potential witnesses that may be called until a later

15   point in my voir dire, so this way we will give you an

16   opportunity to talk to your client over lunch.

17             MR. CHAMBERLAIN:  All right.

18             THE COURT:  Ready for the jury?  Please bring

19   them in.

20             MR. BIANCAVILLA:  Yes, Judge.

21             MR. CHAMBERLAIN:  Yes, Judge.

22             THE COURT OFFICER:  Jury entering.

23             (Whereupon, a panel of prospective jurors

24   enters the courtroom to commence the voir dire

25   examination concerning their qualifications to sit as

1    sworn jurors on the case in chief)

2              THE COURT:  Good afternoon, ladies and

3    gentlemen.  My name is Jeffrey Brown.  I'm a County

4    Court Judge.  I'll be the judge presiding over this

5    case.

6              At this point, now that you have all made

7    yourselves comfortable, I would ask you to please stand

8    so the Clerk will swear you in.

9              (Whereupon, the panel of prospective jurors

10   are duly sworn by the Clerk of the Court.)

11             THE CLERK:  You may be seated.

12             THE CLERK:  Jurors, can I have your

13   attention, please.  If you hear your name called,

14   please gather all your personal belongings, step up and

15   follow the instructions of the court officers.

16             Please, at this time, separate your

17   questionnaires and hand them to the court officer when

18   you step up.

19             (Whereupon, fourteen prospective jurors are

20   seated in the jury box to commence the voir dire

21   examination regarding their qualifications to sit as

22   sworn jurors on the case in chief.)

23             THE COURT:  Again, ladies and gentlemen, good

24   afternoon.  At this time I intend to make a brief

25   statement to all of you and to ask you certain

1    questions.  And I want you to know, I'm directing my

2    remarks to all the prospective jurors, those in the

3    jury box and those of you on the other side of the

4    rail.  Please pay close attention to all the questions

5    I ask, particularly the general questions which I

6    direct to the body as a whole.  The reason for this is,

7    if you who are outside the rail are called to sit in

8    the jury box, I will be asking you in summary fashion

9    whether your answers to general questions will be yes

10   or no.  So, if any of you have any difficulty hearing

11   the questions put to these jurors, please make it known

12   and I will repeat myself.

13          The purpose of my inquiries is to obtain

14   twelve citizens to sit as fair and impartial jurors at

15   this trial.

16          Now, this case involves the trial of criminal

17   charges brought by the People of the State of New York

18   against the defendant, Paul Scrimo.

19          Now, the defendant is represented by John

20   Chamberlain.

21          Mr. Chamberlain.

22          MR. CHAMBERLAIN:  Your Honor, ladies and

23   gentlemen.

24          THE COURT:  And the district attorney who

25   represents the People of the State of New York is

1    represented by Robert Biancavilla.

2              Mr. Biancavilla.

3              MR. BIANCAVILLA:   Your Honor, ladies and

4    gentlemen.   Good afternoon.

5              THE COURT:   Now, the charges against the

6    defendant are contained in an indictment which alleges

7    the defendant committed certain criminal acts.   There

8    are two counts to this indictment, each one of them is

9    for murder in the second degree.   One is an intentional

10   murder, one is a depraved indifference murder.

11             Now, these alleged events occurred -- alleged

12   events occurred on April 12th, 2000, in Farmingdale,

13   County of Nassau.

14             Now, as jurors, you are going to be called

15   upon to determine whether or not the evidence which you

16   shall hear and see in this case establishes the

17   defendant's guilt of these charges.   In order to do

18   this you will have to evaluate all the evidence at the

19   end of the trial to determine whether what you have

20   heard from the witnesses and see as exhibits prove the

21   charges beyond a reasonable doubt.   This is called

22   finding the facts.   That will be your function alone.

23   And I will find no facts in this trial.

24             Now, at this point I want to also tell you

25   that this jury will not be sequestered.   This means

Proceedings                                          45

1     that you will go home each and every evening, as well

2     as during your deliberations.  However, there is always

3     a possibility at some later point that the jury can

4     become sequestered if something should arise that

5     causes sequestration.  However, I want you to know at

6     this point that this jury will not be sequestered.

7          Now, your ultimate decision is called a

8     verdict.  Your verdict as to each charge will either be

9     guilty or not guilty.  Evidence will be presented

10    usually by calling witnesses and the attorneys may

11    suggest that you draw certain conclusions from the

12    evidence.  But only you can decide what the evidence

13    proves.  And the verdict as to each of the counts

14    remains your decision alone.

15         As Judge I will make no determination of

16    guilt or lack of guilt.  Now, my role at trial is to

17    insure that you each reach your verdict in accordance

18    with the law.  And I will explain that to you as to

19    what the law is as to all the issues in this trial.

20         In order that the People and the defendant

21    receive a fair trial, I will have to rule on objections

22    during the course of the trial.  Those rulings will

23    have nothing to do with whether the defendant is guilty

24    or not guilty.  I may rule on evidence that you may

25    consider and for what purpose.  When I make a ruling,

1       if you are to see an exhibit offered as evidence, I

2       will be ruling on whether or not you are permitted to

3       see or hear it as a matter of law.  Likewise, if you

4       are instructed to disregard something you have heard, I

5       will do so because that is the law.  None of my rulings

6       should be taken by you as any indication at all whether

7       you should believe all or part of what is offered as

8       evidence or that the defendant is guilty or not guilty.

9       That is solely your job to determine.

10              But you must accept the law as I give it to

11      you if the defendant and the People are to have a fair

12      trial to which they are entitled to.

13              Now, the indictment is merely a way by which

14      the State of New York brings into court individuals it

15      claims to have violated the law.  It's not any evidence

16      whatsoever of the guilt of the defendant.  Indeed, the

17      defendant, Paul Scrimo, is presumed to be innocent.

18      His presumption of innocence continues throughout the

19      trial, unless and until the jury, having considered all

20      of the evidence, shall find the defendant is guilty

21      beyond a reasonable doubt of the charges made against

22      him.

23              Now, at the conclusion of the trial it's my

24      province as the judge to instruct the jury as to the

25      law which is applicable to this case, and the jury is

1     bound to follow my instructions on the law.  The jury

2     is the exclusive judges of the facts.  And it alone

3     determines whether the People have proven the charges

4     with respect to the defendant beyond a reasonable

5     doubt.

6            Now, in connection with the selection of the

7     jury, counsel for the respective parties has a right to

8     challenge prospective jurors for cause.  That is,

9     either counsel may be of the opinion that a particular

10    prospective juror is not qualified or is disqualified

11    from service here because of some fact which affects

12    his or her impartiality as a trial juror.

13           In addition, counsel for the respective

14    parties have an absolute right to excuse a number of

15    jurors for arbitrary reason, without assigning any

16    grounds.  That is called a peremptory challenge.

17           Should you be discharged, you're not to

18    consider that as reflection on your integrity, capacity

19    to serve as a juror.

20           Needless to say, prospective jurors may be

21    excused for a variety of reasons.  Do not be

22    embarrassed or concerned about such challenges.  In a

23    majority of instances you may often discover that you

24    would all agree that a juror should be excused, for

25    that matter, that you, yourself, should be excused from

Proceedings                                                      48

1    service on a trial jury for valid reasons.

2         In any event, enter into the voir dire with

3    an open mind.  I am confidence that you will answer all

4    questions truthfully and in good spirit, knowing full

5    well that all of us, Court, jury and counsel, are

6    solely concerned about choosing from your number twelve

7    jurors who will be willing to serve as a fair and

8    impartial jury.

9         I now caution and admonish you, at any time

10   when the court is in recess, you are not to discuss

11   this case or any subject connected with this trial

12   among yourselves.  This simply means, you're not to

13   discuss this case with your fellow jurors, or, for that

14   matter, with anyone; nor are you to permit others to

15   discuss it with you or in your presence.  If anyone

16   tries to discuss this case or any subject connected

17   with the trial with you, despite the fact you tell them

18   not to do so, then report that fact to the Court as

19   soon as possible.  If it becomes necessary for you to

20   report such an incident to the Court, let me further

21   caution you, you are to discuss such incident with your

22   fellow jurors, but report the same only to the Court

23   and do so as quickly as possible.

24        I also charge and admonish you, under no

25   circumstances are you to read anything about this case

1    in any newspaper, magazine.  Nor are you to listen to

2    or view any television or radio concerning this case,

3    that includes accessing information on the Internet.

4          It the event you're selected to serve as a

5    juror, during the course of the trial you may see the

6    attorneys in and around the area of the court house and

7    they do not acknowledge you or exchange greetings with

8    you is, it is not that they do not recognize you.  By

9    law they are following the Court's direction to have no

10   contact with you.

11         Under no circumstances are you to view the

12   scene of the alleged -- or, view what you believe to be

13   the scene of the alleged crime.

14         Finally, you're not to form in the privacy of

15   your own mind or express any opinion as to the guilt or

16   innocence of the defendant until such time I submit

17   this case to you for your deliberations.

18         The reason for these admonitions should be

19   readily apparent.  Should you decide -- as a trial jury

20   you should decide the case solely on the evidence that

21   you will see and hear during the trial.  Obviously, it

22   would not be fair to make your decision on the basis of

23   something you read or heard or something someone said

24   outside of this courtroom.  So, abide by these

25   admonitions.

1           If you're sworn to serve as a juror, you'll

2     be able to decide all the issues with a free and

3     unfettered mind.  Prior to discharge, you may not

4     request accept, agree to accept or discuss with any

5     person receiving or accepting any payment or benefit in

6     consideration for supplying any information concerning

7     this trial.

8           Additionally, for your information, we expect

9     the trial will take approximately two weeks after the

10    conclusion of the selection of the jury.  Now, we

11    expect to be picking the jury this week and we hope to

12    be starting Monday morning.

13          Now, ladies and gentlemen, at this time I'm

14    going to be breaking for lunch with you.  Now, I want

15    those of you in the box to remember exactly where

16    you're sitting.  I ask you, when the court officer lets

17    you back in, to take the same seat again.  Those in the

18    back take any seat.

19          What I want to do is admonish you, which I

20    will do each and every time we break.  During the

21    recess, do not discuss the case among yourselves or

22    with anyone else.  Keep an open mind.  Do not form or

23    express any opinions until the entire case has been

24    completed.  Do not read or listen to any accounts of

25    the case, should it be reported in the media.  Do not

Proceedings                                                51

1     visit or view any premises mentioned.   Finally, do not

2     permit any party to discuss this case or an attempt to

3     influence you.   You must promptly report to the Court

4     any violation thereof.

5              Finally, do not visit any other courtroom in

6     this building or any other building.

7              Have a very nice lunch.   I will ask you all

8     to be back here a little before two o'clock so I can

9     start as close to two o'clock as possible.   The court

10    officers will tell you directly where to report.

11             (Whereupon, the panel of prospective jurors

12    leave the courtroom)

13             THE COURT:   Counsel, we'll see you at two

14    o'clock.

15             MR. BIANCAVILLA:   Thank you, Judge.

16             (Whereupon, court stands in recess for lunch.

17    The trial is adjourned until 2:00 p.m)

18

19

20

21

22

23

24

25

```
 1              A F T E R N O O N      S E S S I O N
 2                   THE CLERK:  Continued case on trial, Paul
 3         Scrimo.
 4                   Prosecutor, defendant and defense attorney
 5         are present, along with his able assistant.
 6                   MR. CHAMBERLAIN:  For the record, my partner,
 7         Eileen Chamberlain, may be in for jury selection.  She
 8         may be in and out.
 9                   THE COURT:  Of course, Mr. Chamberlain.
10                   Mr. Chamberlain, you have provided myself and
11         the assistant district attorney with an amended witness
12         list, is that correct?
13                   MR. CHAMBERLAIN:  That's correct, Judge, with
14         some additional names.
15                   THE COURT:  Are we ready to proceed, Counsel?
16                   MR. BIANCAVILLA:  People are ready.
17                   MR. CHAMBERLAIN:  Defendant ready.
18                   THE COURT:  Okay.  Let's bring in the jury,
19         please.
20                   THE COURT OFFICER:  Jury entering.
21                   (Whereupon, the panel of prospective jurors
22         enter the courtroom.  The fourteen prospective jurors
23         resume their seats in the jury box to continue their
24         dire examination regarding their qualifications to sit
25         as sworn jurors on the case in chief.)
```

Kathleen Plaia

```
 1              THE CLERK:  Case on trial continued.  All
 2   parties are now present.
 3              Counsel stipulate, all the prospective jurors
 4   are present and seated in the proper order?
 5              Mr. Biancavilla?
 6              MR. BIANCAVILLA:  Yes.
 7              THE CLERK:  Mr. Chamberlain?
 8              MR. CHAMBERLAIN:  Defendant ready.
 9              THE CLERK:  Okay.  Thank you.
10              THE COURT:  Good afternoon, ladies and
11   gentlemen.  We're ready to continue with the voir dire
12   process.  We now turn to the actual proceeding --
13   procedure, I should say, of choosing the trial jury.
14              Although my questions will be, again,
15   directed to the prospective jurors seated in the jury
16   box, again, I ask all of our remaining prospective
17   jurors who are seated in the courtroom to please pay
18   close to attention to questions so all of you will
19   become familiar with the function and responsibilities
20   of trial jurors.
21              My first series of questions will concern
22   matters of general information.  These questions will
23   touch upon the broad qualifications of trial jurors.
24   The questions which I ask and those that counsel will
25   subsequently ask are in no way intended to embarrass
```

1    anyone or delve deeply into your private lives.

2    Basically, these questions can be answered with a yes

3    or no.  For that reason, I will put these general

4    questions to all the prospective jurors seated in the

5    jury box.  If any of you wish to respond positively

6    with either a yes or maybe, just raise your hand.  If

7    you do not understand the question, say so.  If you do

8    not raise your hand, I will assume your answer is no.

9         Now, the district attorney and the defense

10   attorney -- and the defendant have been introduced to

11   you.  Do any of you know any of these people?

12        No.

13        Are any of you acquainted with Denis Dillon,

14   the District Attorney of Nassau County, or any members

15   of his staff or anyone that works in the District

16   Attorney's Office?

17        Yes, sir.

18        PROSPECTIVE JUROR:  At one time I worked in

19   the courts for twenty-seven years.

20        THE COURT:  In what capacity?

21        PROSPECTIVE JUROR:  I started out as a court

22   officer and graduated to associate court clerk.

23        THE COURT:  Which court?

24        PROSPECTIVE JUROR:  Manhattan, Queens and

25   Brooklyn.

Kathleen Plaia

1          THE COURT:  Okay.  Anybody else?   Do any of

2     you personally know the law associate or defendant's

3     attorney or anyone who works with him?

4          Is there anyone in the jury box at the

5     present time that has any business pending in the

6     district attorney's office or the police department or

7     some other law enforcement agency?

8          Does anyone in the jury box or anyone close

9     to you work for a lawyer or group principally concerned

10    with the law either as a paid employee or a volunteer?

11         All right.  Let's start -- there's quite a

12    few of you.  Let's start with you.

13         PROSPECTIVE JUROR:  My son-in-law is with the

14    Appellate Term.

15         THE COURT:  I'm asking if anybody worked for

16    a lawyer at this time.  I will individually question

17    you with respect to that.

18         PROSPECTIVE JUROR:  I work for a law firm.

19         THE COURT:  Okay what type of firm is that?

20         PROSPECTIVE JUROR:  Accident, car accident,

21    insurance.

22         THE COURT:  You do civil work?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  In what capacity do you work

25    there?

1          PROSPECTIVE JUROR:  I get the arbitrations

2     and summonses ready for the court.  I prepare it in the

3     files.

4          THE COURT:  Anybody else?

5          PROSPECTIVE JUROR:  I'm an attorney.  I have

6     a general practice.  I have an associate practice here

7     in the county court.

8          THE COURT:  Thank you, sir.

9          Anybody else?

10          Okay.  Now, I have to ask this question.  Is

11     everyone now seated in the jury box at least eighteen

12     years of age?

13          Are you all residents of Nassau County and

14     citizens of the United States?

15          Now, have any of you ever had a dispute with

16     a police officer or other law enforcement officer?

17          Now, the attorneys advised me among the

18     following people may be called as witnesses in this

19     case.  I will read the list to you now:

20          Doctor Michael DeMartino; Doctor Gerard

21     Catanese; Doctor Thomas Manning; Doctor Arlene Colon.

22     Each one of them are employed by the Nassau County

23     Medical Examiner.  Detective Jack McHugh; Detective

24     Brian Parpan; Detective Scott Kovar; Detective Vito

25     Shiraldi; Detective Kevin McCarthy; Detective James

Kathleen Plaia

```
 1        Cereghino; Detective Dennis Downes; Detective Jerl

 2        Mullen; Detective Warren Zimmerman; Detective Robert

 3        Dempsey; Detective Charles Costello; Detective Ron

 4        Brusseau; Police Officer Pamela Stark; Police Officer

 5        Raymond Wadsworth; Sergeant Michael Cole and Detective

 6        Sergeant Neil Delargi.  Each one of those are members

 7        of the Nassau County Police Department.  Megan Clement,

 8        who is employed by the Laboratory Corporation of

 9        America.  Bruce Budowle and Carlo Rosati are employed

10        by the Federal Bureau of Investigation.

11               MR. CHAMBERLAIN:  Your Honor, may we approach

12        for one minute?

13               THE COURT:  Yes.

14               MR. CHAMBERLAIN:  Sorry to interrupt.

15               THE COURT:  Counsel, Mr. Biancavilla.

16               (Whereupon, there is a discussion held at the

17        Bench, off the record, between the Court and Counsel.)

18               THE COURT:  Gerry Connell; Martin Barten;

19        John Williams; Lisa Lawson; John Kane, Francine Quinn,

20        Thomas Hardman; Bill DeLuso; Thomas Armour; Bill Nimo;

21        Robert Gunther; Penny Shouse; Mohammed Hussain; Pat

22        Buffalino; Sven Brost; Carolyn Daly; John Williams;

23        Robert White; Ross O'Boyle; Adam Stiglie; Frank

24        DeFalco; Melissa Notarnicola; Doug Leung; Ceron Smith;

25        Jennifer DeRenzis; Nicholas Patraco; Ellen Scrimo; Dee
```

1    Reed; Jay Hardman; Ed Morrison; Sue Bicollo; Teman

2    Chello; Lee Barrow; Bob Hallaner; Linda Russo.

3    Christian Kittelstaff;  Charles Ross; Keith Wilson; S.

4    Domokofsky; Doctor Howard Baum of New York City Office

5    of Medical Examiner; Doctor Phillip Gaffey; Mark Hecht;

6    Michael Callers and Charles Ball.

7         Is there anyone here who knows any one of

8    these people?

9         Now, is anyone a parent or guardian of a

10    person who resides in the same household with a child

11    or children under sixteen whose principle

12    responsibility is to actually and personally engage in

13    the daily care and supervision of that child?

14         Now, does anyone in the jury box know

15    anything about this case?  Has anyone talked to you

16    about this case?  Has anyone read anything about this

17    case in newspapers, magazines or other publications, or

18    heard anything about this case from radio or television

19    programs?

20         Now, you as you previously just heard my

21    order and admonitions, you're not to speak about this

22    case among yourselves.  You're not to permit anyone to

23    speak to you about it.  You're not to read any

24    newspapers, listen to any radio programs or television

25    news programs concerning this trial.  Will each of you

1    promise me you will faithfully obey those admonitions

2    if you are chosen to serve as a trial juror?

3            Now, any of you have any opinion as to the

4    guilt or innocence of this defendant; as to any of the

5    charges contained in this indictment?

6            Now, ladies and gentlemen, my next series of

7    questions are specifically directed to your functions

8    and responsibilities should you be chosen to serve as

9    trial jurors.  In this regard my questions will

10   certainly concern your willingness to follow my

11   instructions and the law.  Of course, in order to be a

12   juror in this case you do not have to know anything

13   about the law.  That's my function to explain the law

14   to you.  It's your function to determine the facts from

15   all the evidence and apply the law to those facts and

16   thereby render a fair and just verdict.  If you're

17   selected as a trial juror, I will explain the law in

18   detail to you at the end of the case.  But as you can

19   appreciate, it is important to know at this stage that

20   you will apply and follow the law as I give it to you.

21   I will, therefore, describe some of the fundamental

22   principles of law so that you will be ready, willing

23   and able to apply these laws in arriving at your

24   ultimate verdict.

25           For example, it's our law that an indictment

Kathleen Plaia

```
1    is not evidence.  The mere fact that the defendant has

2    been indicted is not evidence of anything.  In

3    particular, it's not evidence of the defendant's guilt.

4    Should you be chosen to serve as a trial juror, the law

5    requires that you decide the case wholly and solely

6    upon all the evidence or lack of evidence.

7              Therefore, since it's our rule of law that

8    the indictment is evidence of nothing, I will now ask,

9    will each of you promise me that you will follow that

10   rule of law?

11             Ladies and gentlemen, it's our law that your

12   final verdict, your verdict must be unanimous.  Twelve

13   jurors seldom agree immediately, therefore, at the end

14   of the trial you will be called upon to deliberate

15   together.  Can everyone on the trial promise me at the

16   time your deliberations commences you will each

17   participate in those deliberations, express your own

18   views, reason together with your fellow jurors in order

19   to arrive at your final verdict?

20             In other words, will you promise the

21   defendant and the People that you are willing to

22   participate in these deliberations, express your views

23   based on all the evidence in the case, keep an open

24   mind, listen to the views of your fellow jurors and

25   reason together until you arrive at your unanimous,
```

1    final verdict?

2         Now, under our law every person accused of a

3    crime, is brought to trial, is presumed innocent unless

4    or until he's proven guilty beyond a reasonable doubt.

5    The defendant here is presumed innocent.  Put another

6    way, the defendant is never required to prove his or

7    her innocence.  On the contrary, the People, having

8    accused the defendant of the crimes charged, have the

9    burden of proving the defendant guilty beyond a

10   reasonable doubt.

11        Further, this burden of proof never shifts.

12   It remains on the People and the presumption of

13   innocence remains with the defendant throughout the

14   trial.

15        Is there anyone among you who cannot now in

16   his or her own mind grant to this defendant this

17   presumption of innocence?

18        Will you promise me you will apply this

19   presumption of innocence throughout the trial and that

20   you will wait until you have heard all the evidence and

21   retire to your final deliberations before you decide

22   upon your final verdict?   Stated otherwise, will you

23   promise me you will apply the presumption of innocence

24   unless and until you are convinced of the defendant's

25   guilt beyond a reasonable doubt?

Kathleen Plaia

```
 1              Now, before rendering its verdict, the jury

 2     must hear all the evidence.  This is another way of

 3     saying that the jury must be patient, listen to the

 4     evidence, and wait until they have heard all of the

 5     evidence before rendering their final verdict.  Will

 6     you promise me that you will be patient and wait until

 7     you have heard all of the evidence, wait until you have

 8     heard the summations of counsel and my final

 9     instructions to you, wait until you deliberate in the

10     jury room before rendering your verdict?

11              Now, in a criminal case the burden of proof

12     is entirely on the People and remains on the People

13     throughout the trial.  The defendant is not required to

14     prove anything, nor is the defendant required to

15     disprove anything.  Again, the entire burden of proof

16     is on the People and remains on the People throughout

17     the trial.

18              Is there any one here who will have

19     difficulty in following that rule of law?   Will you

20     promise me you will follow that rule of law?

21              Now, since in a criminal case a defendant

22     need not prove anything, there is no requirement that a

23     defendant testify on his or her own behalf.  If Paul

24     Scrimo does not testify, that fact is not a factor from

25     which any inference unfavorable to the defendant may be
```

1    drawn.  Does anyone have any difficulty following that

2    rule of law?

3            Now, the standard of proof required for -- by

4    law for conviction, every criminal case is proof of

5    guilt beyond a reasonable doubt.  That standard

6    however, does not require the People to prove the

7    defendant's guilt beyond all possibility of a doubt or

8    beyond a shadow of a doubt.  It requires the People to

9    establish the defendant's guilt beyond a reasonable

10   doubt.

11           Our law, therefore, requires that before this

12   jury may convict the defendant, each of you must be

13   satisfied that the credible evidence convinces you

14   beyond a reasonable doubt that the defendant is in fact

15   guilty.  The evidence must establish to you beyond a

16   reasonable doubt that the defendant is in fact the

17   person who committed the crime charged.

18           The evidence must also establish beyond a

19   reasonable doubt each and every essential element of

20   the crimes charged, which I shall later define such

21   elements to you.

22           Now, what does the law mean when it requires

23   proof of guilt beyond a reasonable doubt?  In other

24   words, when is a doubt of guilt a reasonable doubt?

25   Under our law, a doubt of a defendant's guilt to be a

1    reasonable doubt must be a doubt for which some reason

2    can be given.  A doubt to be reasonable must,

3    therefore, arise because of the nature and quality of

4    the evidence in the case or from the lack or

5    insufficiency of the evidence in the case.  The doubt

6    to be a reasonable doubt should be one which a

7    reasonable person acting in a matter of this importance

8    will be likely to entertain because of the evidence or

9    because of the lack or insufficiency of the evidence in

10   the case.

11          Now, a doubt of guilt is not reasonable if

12   instead of being based on the nature and quality of the

13   evidence or lack of the evidence, it's based on some

14   guess or whim or speculation unrelated to the evidence

15   in the case.  Also a doubt of guilt is not a reasonable

16   doubt if it's based merely on sympathy for the

17   defendant or from a mere desire by a juror to avoid a

18   disagreeable duty.

19          I, therefore, repeat, a doubt of the

20   defendant's guilt to be a reasonable doubt must arise

21   either from the nature and quality of the evidence in

22   the case, or from the lack or insufficiency of the

23   evidence in the case.

24          Therefore, the first duty of each juror is to

25   consider and weigh all the evidence in the case and

1     decide what evidence you believe is credible and worthy

2     of your consideration.

3           The next duty of each juror is to determine

4     whether the case has been proved beyond a reasonable

5     doubt of the defendant's guilt as that term is defined

6     in our law.

7           A reasonable doubt, our law says, is an

8     actual doubt, one which you are conscious of having in

9     your mind after you have considered all the evidence in

10     the case. If after doing, so you then feel uncertain

11     and not fully convinced of the defendant's guilt, and

12     you are also satisfied that in entertaining such a

13     doubt you are acting as a reasonable person should act

14     in a matter of this importance, then that is a

15     reasonable doubt, to which the defendant is entitled to

16     the benefit.

17           I repeat, it's the duty of each juror to

18     carefully view, weigh and consider all the evidence in

19     the case. If after doing so you find that the People

20     have not proven the defendant's guilt beyond a

21     reasonable doubt, as I have defined that term to you,

22     then you must find the defendant not guilty.

23           On the other hand, if you are satisfied that

24     the People have proved the defendant's guilt beyond a

25     reasonable doubt, as I have defined that term to you,

Kathleen Plaia

1        you must then find the defendant guilty.

2              Will you now promise me, in your final

3        deliberations, you will follow and apply the standard

4        of proof, that is, beyond a reasonable doubt, exactly

5        as I shall further explain and define that term to you

6        in my final charge?

7              PROSPECTIVE JUROR:  I would try.  I will try.

8              THE COURT:  Now, when you say you will try,

9        I'm going to be charging the law to you.  Will you

10       promise me that you will follow the law as I charge it?

11             PROSPECTIVE JUROR:  Oh, yes.  Yes.

12             THE COURT:  Thank you.

13             As you heard earlier, ladies and gentlemen,

14       it is anticipated that one or more police officers will

15       testify in this case.  Will you promise me that you

16       will give the same evenhanded scrutiny to the testimony

17       of a police officer than you will give to that of any

18       other witness?

19             This is another way of asking whether or not

20       you will evaluate the credibility of a police officer

21       just like any other witness.

22             Each witness's testimony must be weighed upon

23       its own merits.  Every defendant must be judged solely

24       upon the evidence.

25             All of us are aware that we may have

1    prejudices or sympathies.  Some of you have had

2    unpleasant experiences which may lead you to believe

3    that members of a certain group are more honest or less

4    honest or more or less likely to commit a crime or more

5    or less likely to commit a particular crime or more or

6    less likely to be wrongfully accused.  It is our law

7    that the trial jury must decide each case solely and

8    wholly upon the evidence and upon the evidence alone.

9         It is our law that the trial jury must decide

10   and render a verdict fairly and impartially, without

11   reference to race, creed or color; without fear, favor

12   or sympathy.  Since neither bias nor prejudice nor

13   sympathy can be allowed to interfere with your

14   deliberations in the jury room, I ask you if there's

15   anyone here who thinks they might have such feelings,

16   favorable or unfavorable, about the defendant, any

17   other witness or any person involved in this trial?  If

18   you have such feelings, you are bound by your oath to

19   say so.

20        PROSPECTIVE JUROR:  I'm very sensitive.

21        THE COURT:  You're sensitive?  I think we all

22   are sensitive people.  Is that going to affect you from

23   being a fair and impartial jury juror?

24        PROSPECTIVE JUROR:  I'm very emotional.  I

25   don't think I can do that.

1          PROSPECTIVE JUROR:  Me too.  I feel I'm very

2      sensitive also.

3          THE COURT:  We'll expand upon that when I

4      individually speak to you in a few moments, okay?

5          Now, I'm going to ask you all, will you all

6      be able to decide this case solely on the evidence,

7      without fear, without favor or sympathy either for the

8      defendant or for the People?  Will you bring in a

9      verdict based solely on the evidence and the evidence

10     alone?

11         Now, our law requires that I advise you,

12     ladies and gentlemen of our prospective jury panel, you

13     are not, I repeat not, during your deliberations to

14     consider the subject of punishment.  Sentencing lies

15     solely within the exclusive province of the Court and

16     the jury has no role to play.  You are not permitted to

17     consider the possibility of punishment or penalty in

18     your deliberations.  You may notice, this includes any

19     recommendation as to sentence in your verdict.

20         Thus, you will see that as a trial jury you

21     are the sole and exclusive judges of the facts and the

22     facts alone.  This Court is the sole and exclusive

23     judge of the law and any sentence thereof.  Punishment

24     or penalty will be imposed following the rendering of a

25     verdict.

1          Will you promise me that you will render your

2     verdict free from fear, favor or sympathy and without

3     considering any possibility of sentence or punishment?

4          Again, ladies and gentlemen, it's our law as

5     trial jurors, you are the sole and exclusive judges of

6     the facts.  Thus, for example, nothing the lawyers say

7     during the trial is evidence.  As a matter of fact,

8     nothing I say will be evidence.

9          You and you alone will decide from all the

10    evidence what the facts are in this case.  At the same

11    time, nothing that the lawyers say is the law.  It's

12    the responsibility of the Court to advise all concerned

13    as to the law that will be applicable in this case.  To

14    put it another way, when you raise your hands to take a

15    oath as a jurors, when I took my oath as a judge, we

16    agreed to follow and obey the laws of the State of New

17    York exactly as given to us by  the Legislature and set

18    forth in our constitution.  This simply means that

19    whether you have any ideas of your own of what you

20    think the law is or what you think it ought to be, you

21    must now under your oath cast aside your own ideas of

22    the law.  Upon your oath as jurors, you must accept the

23    law as I explain it to you, whether you agree with it

24    or not, and apply the law to the facts as you find the

25    facts to be in this case.

Kathleen Plaia

1            Therefore, I ask you the following question,

2   will you accept the law given to you by me and will you

3   apply the law to the facts as you find the facts to be

4   in this case?

5            Let me ask you, any one of you been

6   intimidated or embarrassed in any way by any spectators

7   at this trial?

8            Do each of you now have the state of mind

9   that will permit you to examine and assess the

10   testimony honestly, carefully, fairly, impartially,

11   without fear, favor or sympathy either for the People

12   or for the defendant?

13            Now, do any of you in your own best

14   conscience or good judgment know of any reason why you

15   cannot sit as a fair and impartial juror?

16            Yes, ma'am?

17            PROSPECTIVE JUROR:  My husband is a retired

18   police officer.

19            THE COURT:  It might be better if I know at

20   this point.  What I will do is, question each one of

21   you individually and this way you can bring it to my

22   attention and the attorneys' attention.

23            At this point we will start to question with

24   Nicholas Gambino.

25            How are you, sir?

```
1              PROSPECTIVE JUROR:  Fine.  How are you today?

2              THE COURT:  Fine, thank you.

3              You checked off that you're not working at

4       the present time.  What did you do?

5              PROSPECTIVE JUROR:  I worked with AT&T.  I

6       got laid off because of 9/11.

7              THE COURT:  You work in what capacity for

8       AT&T?

9              PROSPECTIVE JUROR:  I was a customer service

10      representative.

11             THE COURT:  Now, you checked off that you

12      have friends in law enforcement.  You want to tell

13      us --

14             PROSPECTIVE JUROR:  Yes.  My brother is a

15      Nassau County Detective.

16             THE COURT:  Okay.  Also, you checked off

17      victim of a crime.

18             PROSPECTIVE JUROR:  Yes.  My ex-wife, it was

19      about twenty-five years ago, was held up at gunpoint.

20             THE COURT:  And was anybody -- could you tell

21      us, as a result of that --

22             PROSPECTIVE JUROR:  I don't believe so.  No.

23             Now, you have heard all the questions asked.

24      Any reason you can't be a fair and impartial juror in

25      this case?
```

1           PROSPECTIVE JUROR:  I think I could be.

2           THE COURT:  Well, you can't be equivocal.

3     You have to, you know, that's kind of like half a loaf.

4           PROSPECTIVE JUROR:  Exactly.  Exactly.

5           THE COURT:  Can you follow the law as I give

6     it to you?

7           PROSPECTIVE JUROR:  Yes.  Yes.

8           THE COURT:  You will hear all the testimony

9     from the witness stand.  There will be exhibits and

10    there will be other things you will look at.  Will you

11    promise me you will keep an open mind, listen to the

12    evidence that comes out.  That you will listen to the

13    law as I charge you at the end of the case.  That you

14    will talk to your fellow jurors and reason with them

15    and at the end will you promise me you come to a fair

16    and a reasonable verdict in this case?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Okay.  So, you, in essence, you

19    can be a fair and impartial juror.

20          PROSPECTIVE JUROR:  I suppose so.  Yes.

21          THE COURT:  Okay.  Please forgive me if I

22    pronounce your name wrong, Teppis Blanchard.

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Let's see, you checked off,

25    you're a therapist.

Kathleen Plaia

```
 1                    PROSPECTIVE JUROR:  Respiratory therapist.

 2                    THE COURT:  You work in a hospital?

 3                    PROSPECTIVE JUROR:  Yes, Nassau.

 4                    THE COURT:  You checked off a lot of no

 5        boxes.  So, there's nothing I specifically have to ask

 6        you.

 7                    Generally, you have heard all the questions

 8        asked; any reason you can't be fair and impartial?

 9                    PROSPECTIVE JUROR:  I don't know.  I

10        volunteer for the police department here in Nassau.

11        I'm a volunteer.

12                    THE COURT:  In what capacity?  When you say

13        volunteer --

14                    PROSPECTIVE JUROR:  Auxiliary police,

15        traffic, parade that's all.

16                    THE COURT:  Could you promise us you will

17        treat a police officer who testifies just like you

18        would any other witness who testifies from this witness

19        stand?

20                    PROSPECTIVE JUROR:  Sure, sure.

21                    THE COURT:  Okay.  So, in essence, can you be

22        a fair and impartial juror in this case?

23                    PROSPECTIVE JUROR:  Yes.

24                    THE COURT:  Okay.  Thank you.

25                    Janet Imordino.
```

Kathleen Plaia

1          PROSPECTIVE JUROR:  James.

2          THE COURT:  James, I'm sorry.

3          PROSPECTIVE JUROR:  My handwriting is very

4     poor.

5          THE COURT:  I should have looked up before I

6     asked.

7          THE COURT:  You're right, I can't read your

8     occupation.

9          PROSPECTIVE JUROR:  I'm a registered

10    representative.  I sell stocks and bonds.

11         THE COURT:  Okay.

12         THE COURT:  Now, you checked off a lot of no

13    boxes.  Let me ask you, you have heard all the

14    questions asked?

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Any reason you can't be a fair

17    and impartial juror in this case?

18         PROSPECTIVE JUROR:  I could be fair and

19    impartial, yes.

20         THE COURT:  Thank you, sir.

21         How are you, ma'am?

22         PROSPECTIVE JUROR:  Okay.

23         THE COURT:  You checked off unemployed.  Did

24    you do something before that?

25         PROSPECTIVE JUROR:  I did interior

1   landscaping for a while.

2                   THE COURT:  Okay.  Now, you checked off a lot

3   of nos.  So, generally, let me ask you, you have heard

4   all the questions that were asked?

5                   PROSPECTIVE JUROR:  Yes.

6                   THE COURT:  Any reason you can't be a fair

7   and impartial juror in this case?

8                   PROSPECTIVE JUROR:  No, I can.

9                   THE COURT:  You can be fair and impartial?

10                  PROSPECTIVE JUROR:  Yes.

11                  THE COURT:  Thank you.

12                  Paul McGuire.

13                  PROSPECTIVE JUROR:  Yes, sir.

14                  THE COURT:  How are you?

15                  PROSPECTIVE JUROR:  Very good.

16                  THE COURT:  You're an administrator at

17  Jamaica Hospital?

18                  PROSPECTIVE JUROR:  That's correct.

19                  THE COURT:  Are you a physician?

20                  PROSPECTIVE JUROR:  No, I am not.

21                  THE COURT:  You have close friends or

22  relatives in law enforcement.  You want to tell us

23  about that?

24                  PROSPECTIVE JUROR:  Life long friend who is a

25  police officer.  Just buddies.

1          THE COURT:  Okay.  You also served on a civil

2     jury?

3          PROSPECTIVE JUROR:  Yes, I have.

4          THE COURT:  Get to reach a verdict?

5          PROSPECTIVE JUROR:  No, we did not.

6          THE COURT:  It was a civil case?

7          PROSPECTIVE JUROR:  Yes, it was.

8          THE COURT:  You also checked off party to a

9     civil case.

10          PROSPECTIVE JUROR:  That's correct.

11          THE COURT:  Tell us about that.

12          PROSPECTIVE JUROR:  Myself and my employer

13     were named in a suit for wrongful discharge based on

14     ethnicity.  It was in federal court in Brooklyn.

15          THE COURT:  How long ago was that?

16          PROSPECTIVE JUROR:  Three years ago -- I'm

17     sorry, five years ago.

18          THE COURT:  Is that case resolved now?

19          PROSPECTIVE JUROR:  Yes, it is.

20          THE COURT:  Heard all the question that were

21     asked?

22          PROSPECTIVE JUROR:  Yes, I have.

23          THE COURT:  Can you be a fair and impartial

24     juror in this case?

25          PROSPECTIVE JUROR:  Yes, I can.

Kathleen Plaia

```
1              THE COURT:  Florence Scheinman, how are you?

2              PROSPECTIVE JUROR:  I've been better.

3              THE COURT:  Why is that?

4              PROSPECTIVE JUROR:  I find this very

5      stressful.

6              THE COURT:  It shouldn't be stressful.

7              PROSPECTIVE JUROR:  It is to me.

8              THE COURT:  Okay.  Let me see if we can put

9      you at ease a little bit here.  Now, you're a sales

10     rep?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  What type of firm is that?

13             PROSPECTIVE JUROR:  I work for myself,

14     representing various cosmetic companies.  I travel

15     every day to Brooklyn, Queens, Nassau, Suffolk and New

16     York City.

17             THE COURT:  So, you're self-employed, is what

18     you're telling us.

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Now, you have also checked off

21     law enforcement, friend and relatives; tell us about

22     that.

23             PROSPECTIVE JUROR:  My girlfriend's husband

24     is a police officer, retired.  My other friend's

25     husband is a retired police officer.  And her son is on
```

Kathleen Plaia

1    the police force.

2           THE COURT:  Okay.

3           PROSPECTIVE JUROR:  In addition, my fiancee

4    is an attorney with an office in Garden City.  As I

5    said, my son-in-law is with the Appellate Term, he's an

6    attorney.

7           THE COURT:  What kind of law discuss your

8    fiancee practice?

9           PROSPECTIVE JUROR:  General.  My son-in-law

10    is with an Appellate Term.  He's an attorney down

11    there.

12           THE COURT:  Okay.  Now, you checked off

13    victim and witness to a crime; do you want to tell us

14    about that?

15           PROSPECTIVE JUROR:  That was my mom.  She was

16    mugged and someone, you know, grabbed her and hurt her.

17    She was and elderly woman.  And they caught him.  She

18    was able to identify him.  And she had to go down --

19           THE COURT:  She went into court?

20           PROSPECTIVE JUROR:  Yes.

21           THE COURT:  Now, where did that take place?

22           PROSPECTIVE JUROR:  That happened in

23    Brooklyn.

24           THE COURT:  Now, you also checked off party

25    to a civil case.

```
 1              PROSPECTIVE JUROR:  I had a lawsuit pending.
 2      I owned a promotional modeling agency, where you were
 3      considered an independent contractor.  You were
 4      responsible for your own taxes.  I had a girl work for
 5      me for a very, very short period, and she used me as
 6      one of the employees.  I had to go down and close my
 7      business and reopen it because I could not afford to be
 8      responsible for these taxes.  I had done that myself.
 9      I paid my own taxes.
10              THE COURT:  Now, you have also checked off
11      some boxes here.  You want to tell us about that?
12              PROSPECTIVE JUROR:  No.
13              THE COURT:  We will call you up at the end.
14              PROSPECTIVE JUROR:  Yes.
15              THE COURT:  Joyce Campbell, how are you?
16              PROSPECTIVE JUROR:  Fine.
17              THE COURT:  Okay.  You told us you worked as
18      a clerk, right?
19              PROSPECTIVE JUROR:  Yes, law office.
20              THE COURT:  Now, there are some things you
21      wanted to tell me before.  You want to tell me now?
22              PROSPECTIVE JUROR:  I can't do it, because
23      I'm too sensitive.  I get --
24              THE COURT:  You are telling me -- I told you
25      in part of my precharge, you have to put sympathies
```

Kathleen Plaia

1    aside, can you do that?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  You can't do that?

4              PROSPECTIVE JUROR:  No.  I'm very sensitive.

5              THE COURT:  Can you listen to the law as I

6    give it to you and agree to follow the law?

7              PROSPECTIVE JUROR:  I will follow the laws,

8    yes.

9              THE COURT:  Now, you have heard that a police

10   officer will be testifying.  Can you promise me you

11   will treat them just like any other witness who

12   testifies before this court?

13             PROSPECTIVE JUROR:  Yes, I can do that.

14             THE COURT:  So, the only problem you have is

15   because you're sensitive?  You would be sympathetic?

16             PROSPECTIVE JUROR:  And emotional, too.  Very

17   emotional.

18             THE COURT:  We're all emotional.  That by

19   itself -- I'm concerned about, you know, if you are

20   saying you're sympathetic, that means, I told you in

21   the precharge that you're not supposed to consider

22   sympathy.  Just listen to the evidence that comes from

23   the witness stand.  Can you promise me that you can put

24   any sympathies you have aside?

25             PROSPECTIVE JUROR:  I can try.

```
 1                    THE COURT:  But you can't promise me?

 2                    PROSPECTIVE JUROR:  No.

 3                    THE COURT:  Okay.  Thank you.

 4                    Edna Carrera, how are you?

 5                    PROSPECTIVE JUROR:  Fine.  How are you?

 6                    THE COURT:  Good.

 7                    Now, you're retired.  What did do you before

 8       you retired?

 9                    PROSPECTIVE JUROR:  Housewife.

10                    THE COURT:  And you checked off you were,

11       let's see, twice you were on jury trial, right?

12                    PROSPECTIVE JUROR:  Yes.

13                    THE COURT:  Both civil?

14                    PROSPECTIVE JUROR:  Yes.

15                    THE COURT:  And you put, settled out of

16       court.  One was settled out of court?

17                    PROSPECTIVE JUROR:  Last one was settled.

18                    THE COURT:  One of the cases you got to

19       deliberate?

20                    PROSPECTIVE JUROR:  Yes.

21                    THE COURT:  Did you reach a verdict?

22                    PROSPECTIVE JUROR:  Yes.

23                    THE COURT:  Was it a good jury experience for

24       you?

25                    PROSPECTIVE JUROR:  Yes.
```

Kathleen Plaia

1          THE COURT:  Now, you have heard all the

2     questions that were asked.  Any reason you can't be a

3     fair and impartial juror in this case?

4          PROSPECTIVE JUROR:  I don't know.  I will

5     try, but I don't know if I'm exactly -- I change

6     opinions as the case goes on.

7          THE COURT:  You heard what I said about you

8     have to listen to your fellow jurors when you're in the

9     jury room.  And they should listen to what you say and

10    you should listen to what they say.  If they have

11    merits you should listen to them, but not change your

12    mind because they said it, but because there my be a

13    reason to change it.  Will you promise me you will

14    listen to them and use the give and take in the jury

15    room·so that you will be a fair and impartial juror?

16         PROSPECTIVE JUROR:  I will try.  But I don't

17    want to promise.  I don't know how my opinions are

18    going to change.

19         THE COURT:  You're saying if another juror

20    has an opinion, you're not going to listen to it.

21    You're going to close your mind to it?

22         PROSPECTIVE JUROR:  No.  But I may be swayed

23    another way.  That's what I'm afraid of.  I'm not set

24    as I listen.

25         THE COURT:  As a juror you're supposed to

1    listen to your fellow jurors and come to a

2    well-reasoned decision, can you promise us you will do

3    that?

4               PROSPECTIVE JUROR:  I will try.

5               THE COURT:  Okay.  Thank you.

6               Adam Robbins, how are you?

7               PROSPECTIVE JUROR:  How are you?

8               THE COURT:  Good, thank you.

9               Now, you have heard all the questions that

10   were asked.

11              PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Any reason you can't be a fair

13   and impartial juror in this case?

14              PROSPECTIVE JUROR:  No.

15              THE COURT:  Okay.  Thank you.

16              Anthony Guardina, how are you?

17              PROSPECTIVE JUROR:  Fine.

18              THE COURT:  You have friends in law

19   enforcement?

20              PROSPECTIVE JUROR:  Three relatives.

21              THE COURT:  Relatives.

22              PROSPECTIVE JUROR:  Right.

23              THE COURT:  Tell us about them please.

24              PROSPECTIVE JUROR:  They were Nassau County

25   Police Officers, retired now.

Kathleen Plaia

```
 1            THE COURT:  All three are retired now?

 2            PROSPECTIVE JUROR:  Yes.

 3            THE COURT:  Now, you checked off victim and

 4     witness to a crime.  Want to tell us about that?

 5            PROSPECTIVE JUROR:  As far as the victim, my

 6     car was vandalized, okay.  As far as witness to a

 7     crime, an assault.

 8            THE COURT:  Okay.  Did you have to go to

 9     court?

10            PROSPECTIVE JUROR:  No.

11            THE COURT:  Now, you checked off some other

12     things, can you tell us from there.

13            PROSPECTIVE JUROR:  That I would like to

14     discuss in private.

15            THE COURT:  We'll bring you up later then.

16            Mr. Louis German, how are you?

17            PROSPECTIVE JUROR:  Fine, thank you.

18            THE COURT:  You checked off quite a few

19     things here.  You said that you're a former Assistant

20     Attorney General.

21            PROSPECTIVE JUROR:  Yes.

22            THE COURT:  How many years did you do that?

23            PROSPECTIVE JUROR:  Six years.

24            THE COURT:  And what type of cases did you

25     handle for the Attorney General's Office?
```

1      PROSPECTIVE JUROR:  I was in charge of the
2  criminal prosecutions under the education law.
3      THE COURT:  Okay.  And you also worked in the
4  Appellate Division, in what capacity?
5      PROSPECTIVE JUROR:  Principle Appellate Law
6  Assistant, handling, among other things, criminal
7  appeals.
8      THE COURT:  Working in the pool?
9      PROSPECTIVE JUROR:  Actually, I was assigned
10  to the presiding justice's chambers.
11      THE COURT:  You probably read quite a few
12  criminal briefs.
13      PROSPECTIVE JUROR:  Yes, I have.
14      THE COURT:  And you're also, of course, an
15  attorney.  Did you practice law, other than working at
16  the Appellate Division and AG's?
17      PROSPECTIVE JUROR:  I graduated law school, I
18  immediately went to work for the Attorney General's
19  Office.  From there I went directly to the Appellate
20  Division.  I retired from the State in '91.  I have
21  been practicing privately since 1991, to present.
22      THE COURT:  You also check off you sat on a
23  criminal case.
24      PROSPECTIVE JUROR:  Yes, about five years
25  ago, here.

Kathleen Plaia

1      THE COURT:  In County Court?

2      PROSPECTIVE JUROR:  Yes.

3      THE COURT:  And did you get to deliberate?

4      PROSPECTIVE JUROR:  We did.

5      THE COURT:  Did you reach a verdict?

6      PROSPECTIVE JUROR:  Yes, we did.

7      THE COURT:  Was it a good jury experience for

8   you?

9      PROSPECTIVE JUROR:  I suppose.

10     THE COURT:  Okay.  That's an answer.

11     Now, you checked off victim of a crime.  Want

12  to tell us about that?

13     PROSPECTIVE JUROR:  Had a car stolen.  My son

14  was mugged.  Other than that, it's pretty common stuff,

15  I guess.

16     THE COURT:  And checked off party to a civil

17  case.

18     PROSPECTIVE JUROR:  Pardon me?

19     THE COURT:  Party to a civil case.

20     PROSPECTIVE JUROR:  Yes, I was sued along

21  with the justices of the Appellate Division, the

22  Grievance Committee, other attorneys, and several other

23  parties in criminal -- in supreme and federal court by

24  a disgruntled former attorney, both matters were.

25     THE COURT:  Resolved.

Kathleen Plaia

```
 1                    PROSPECTIVE JUROR:  They were both dismissed.
 2                    THE COURT:  Now, you have heard all the
 3         questions asked.  Can you be fair and impartial juror
 4         in this case?
 5                    PROSPECTIVE JUROR:  I think I have a
 6         predisposition probably against the defendants.
 7                    THE COURT:  I'm sorry?
 8                    PROSPECTIVE JUROR:  I would try to be fair.
 9         But I honestly come here with a little bit of a
10         prosecutorial background.
11                    THE COURT:  Let me ask you this then, you did
12         sit on a criminal jury five years ago.  Has something
13         changed from five years ago to today?
14                    PROSPECTIVE JUROR:  No, I said exactly the
15         same thing then.
16                    THE COURT:  Because I wanted to make sure.
17                    PROSPECTIVE JUROR:  I haven't changed.
18                    MR. BIANCAVILLA:  I will take him, Judge.
19                    THE COURT:  Okay, thank you.  Sir.
20                    Patricia Lovack.
21                    PROSPECTIVE JUROR:  Yes.
22                    THE COURT:  Now, you checked off friend and
23         relatives in law enforcement.
24                    PROSPECTIVE JUROR:  My husband.  A lot of
25         friends.  But my husband is retired from the New York
```

Kathleen Plaia

1    City Police Department.

2             THE COURT:  Okay.  Now, you also checked off

3    victim of a crime.  Want to tell us about that?

4             PROSPECTIVE JUROR:  My house was burglarized.

5             THE COURT:  How long ago was that?

6             PROSPECTIVE JUROR:  About ten years.

7             THE COURT:  You heard all the questions

8    asked.

9             PROSPECTIVE JUROR:  Yes.

10            THE COURT:  Any reason you can't be fair and

11   impartial in this case?

12            PROSPECTIVE JUROR:  Well, I feel that I'm

13   prejudiced toward the police, I would have to say.

14            THE COURT:  So you're telling us that even

15   though I charge you that you have to treat a police

16   witness the exact same way as any other witness that

17   appears on this witness stand, that you would more so

18   be apt to find the police officer credible, than

19   somebody who is not a police officer, is that what

20   you're telling us?

21            PROSPECTIVE JUROR:  Yep.  Yep.

22            THE COURT:  Thank you.

23            Brian Campbell.  How are you sir?

24            PROSPECTIVE JUROR:  Fine.

25            THE COURT:  Now, a systems engineer?

Kathleen Plaia

1           PROSPECTIVE JUROR:  Yes.

2           THE COURT:  What is that?

3           PROSPECTIVE JUROR:  I build trading systems,

4   trade stocks and bonds.

5           THE COURT:  You checked off victim of a

6   crime.

7           PROSPECTIVE JUROR:  Not me.  My family.

8           THE COURT:  Tell us about that.

9           PROSPECTIVE JUROR:  My mother was mugged a

10  few times.  My dad was mugged at gunpoint.  My brother

11  was mugged at knife point.

12          THE COURT:  Now, you have heard all the

13  questions that were asked.  Is there any reason you

14  can't be fair and impartial in this case?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Thank you, sir.

17          THE COURT:  And Kenneth Reed, how are you,

18  sir?

19          PROSPECTIVE JUROR:  Very good.

20          THE COURT:  You were an associate court

21  clerk.

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  You -- I seem to remember, you

24  said Brooklyn, Manhattan.

25          PROSPECTIVE JUROR:  Started out in Manhattan,

1       went to Queens Supreme and I winded up in Kings County.

2               THE COURT:  Criminal or civil?

3               PROSPECTIVE JUROR:  In Kings County I wound

4       up as judgment clerk.  Prior to that, in Queens, I

5       worked in the supreme court as a senior court officer.

6               THE COURT:  As a senior court officer.  Were

7       you assigned to criminal civil, both?

8               PROSPECTIVE JUROR:  All.

9               THE COURT:  All over.  Now, you have been

10      retired, how long?

11              PROSPECTIVE JUROR:  Six years in July.

12              THE COURT:  Party to a civil case?

13              PROSPECTIVE JUROR:  When I was a kid I was

14      hit by a car.

15              PROSPECTIVE JUROR:  Case still pending?

16              PROSPECTIVE JUROR:  I doubt it.  Okay.  You

17      have heard all the questions asked.  Can you be a fair

18      and impartial juror in this case?

19              PROSPECTIVE JUROR:  Yes, I believe so.

20              THE COURT:  Thank you.

21              There are two people who want to approach the

22      bench.

23              Counsel, could you come forward, please.

24              (Whereupon, the following takes place at the

25      Bench, between the Court and Counsel and prospective

Kathleen Plaia

```
 1      juror:)

 2                   THE COURT:  Florence Scheinman, come forward

 3      please.

 4                   THE COURT:  Miss Scheinman.

 5                   PROSPECTIVE JUROR:  I really would --

 6                   THE COURT:  You check off here accused and

 7      convicted of a crime.  Could you tell about that,

 8      please?

 9                   PROSPECTIVE JUROR:  My husband was convicted

10      of a crime.  And he went to Allenwood.  He was an IRS

11      agent.  He was convicted of bribery.  He is deceased.

12                   THE COURT:  In Federal Court?

13                   PROSPECTIVE JUROR:  Yes.

14                   THE COURT:  How many years ago was that?

15                   PROSPECTIVE JUROR:  About fifteen years ago.

16                   THE COURT:  Okay.  Now, there was something

17      else you wanted to tell us?

18                   PROSPECTIVE JUROR:  Since 9/11, I am I cannot

19      watch anything.  My son worked down there.  My son was

20      there.  He was down there.  And I cannot watch the

21      news.  I can't watch -- I can't -- couldn't in all good

22      conscience judge -- sit in judgment of somebody and

23      know their life is in my hands.

24                   I have a medical condition.  I took four

25      pills for me to get here.  I have not eaten breakfast
```

Kathleen Plaia

```
1     or lunch.  I am extremely anxious.

2               THE COURT:  I can see that.

3               MR. BIANCAVILLA:  People consent.

4               PROSPECTIVE JUROR:  I'm very distressed.

5               THE COURT:  Mr. Chamberlain, any questions?

6               MR. CHAMBERLAIN:  I get the sense that she

7     would not be comfortable on this trial.

8               THE COURT:  You consent, Mr. Chamberlain?

9               MR. CHAMBERLAIN:  I will consent.

10              THE COURT:  We'll excuse you.

11              PROSPECTIVE JUROR:  Thank you very much.  Can

12    I go?

13              THE COURT:  You have to see the Clerk.

14              Anthony Guardina.

15              (Whereupon, prospective juror approaches the

16    bench.)

17              THE COURT:  Sir, you checked off accused of a

18    crime and convicted of a crime.  Tell us about that.

19              PROSPECTIVE JUROR:  I was driving under the

20    influence.  I plead guilty to speeding about five years

21    ago.

22              THE COURT:  Was that here in this County?

23              PROSPECTIVE JUROR:  Suffolk County.

24              THE COURT:  Now, as a result of that, do you

25    hold any anger toward police officers?
```

1          PROSPECTIVE JUROR:  No, not at all.  Not at

2     all.  If anything, I have a bias the other way.

3          THE COURT:  When you say bias the other way,

4     you're more apt to believe a police officer?

5          PROSPECTIVE JUROR:  Correct.

6          THE COURT:  If I tell you, as you probably

7     heard a couple of times already, you are supposed to

8     treat a police officer the same as any other witness

9     who testifies in this case.  Can you assure us you will

10    do that?

11         PROSPECTIVE JUROR:  Um, well, you know, all

12    things being equal, all things being equal, okay, and

13    you have two divergent testimony.

14         THE COURT:  One was a police officer and one

15    wasn't.

16         PROSPECTIVE JUROR:  I would tend to give the

17    bias toward the police officer.

18         THE COURT:  It you're saying for no other

19    reason to diverge --

20         PROSPECTIVE JUROR:  I'm saying their

21    credibility was affected in some way.

22         THE COURT:  I understand that.  If there's

23    two witnesses, one is a police officer and one is not,

24    you're telling us that you, just because he's a police

25    officer, you would believe that witness over the other

Kathleen Plaia

1  one?

2          PROSPECTIVE JUROR:  I want to be as impartial

3  as possible.

4          THE COURT:  There's no right or wrong answer.

5          PROSPECTIVE JUROR:  I understand, I

6  understand.  You know, it would depend on, you know,

7  the quality of the witness.

8          THE COURT:  Certainly those are factors.

9          PROSPECTIVE JUROR:  I have a lot of sympathy

10  for the police.  They have a tough job.

11          THE COURT:  And, of course, you heard what I

12  said about sympathy.  You're not supposed to

13  consider --

14          PROSPECTIVE JUROR:  Absolutely correct.

15          THE COURT:  For either side, sympathy has no

16  place whatsoever in this case.  Could you tell us, can

17  you put that aside and decide this case solely on the

18  evidence?

19          PROSPECTIVE JUROR:  Possible.  Possible.

20          THE COURT:  But not necessarily?

21          PROSPECTIVE JUROR:  Again, I hope, you know.

22          THE COURT:  Okay.  Counsel, any questions?

23          MR. BIANCAVILLA:  None from the People.

24          MR. CHAMBERLAIN:  Consent.

25          MR. BIANCAVILLA:  People don't consent,

Kathleen Plaia

1    Judge.

2          THE COURT:  Have a seat, sir.

3          THE COURT:  Counsel, do you want me to fill

4    the box with respect to --

5          MR. BIANCAVILLA:  I think there's another

6    juror.  Juror number four.

7          THE COURT:  Lisa Barcheckly.

8          (Whereupon, the prospective juror, Lisa

9    Barcheckly, approaches the Bench.)

10         THE COURT:  Miss Barcheckly, come forward.

11         PROSPECTIVE JUROR:  Hi.  I think I could do a

12    good job.  I have one problem.  I can't sit for long

13    periods of time.  I had spinal surgery last summer.

14         THE COURT:  Let me tell you this, first of

15    all, let me ask you, how long a period can you sit at

16    any one time?

17         PROSPECTIVE JUROR:  About forty-five minutes.

18         THE COURT:  Let me tell you this also, we

19    take lots of breaks during the course of the trial.

20    And if there's ever a point where you had a problem

21    where you couldn't sit any longer, you were

22    uncomfortable, all you have to do is raise your hand

23    and we certainly would break at that point so you would

24    be able to stretch or get up.

25         PROSPECTIVE JUROR:  Okay.  Can I ask a

1    question?   Could I sit on an end so I could stand up?

2             THE COURT:  You have to sit in a spot where

3    you are as a juror.

4             PROSPECTIVE JUROR:  I mean --

5             THE COURT:  No, you can't do that.  If you're

6    juror number one, you have to sit in juror number one's

7    seat.  That's how it works.  So, I can't, you may get

8    lucky and get an end, but I can't, other than that, say

9    you will.

10            PROSPECTIVE JUROR:  If I need to stand, I can

11   get up?

12            THE COURT:  If you want to stretch for a

13   second, there won't be any problem.

14            Have a seat for a moment.

15            (Whereupon, the prospective juror resumes her

16   seat in the jury box.)

17            THE COURT:  Should I fill seat number six,

18   Counsel?

19            MR. CHAMBERLAIN:  Sure.  Why don't we, as

20   long as we're up here, it's up to you.  There are a

21   number of people I think.

22            THE COURT:  Let me preface it by saying, if

23   the two of you can agree upon them, I would be glad to

24   do so now.  So, by the time the panel gets up, when you

25   both speak --

1          MR. BIANCAVILLA:  Again, Judge, I never -- I

2     would suggest, I mean, you're going, we have

3     seventy-two people in here that obviously are going to

4     have a certain problem that they're going to want to

5     deal with at the bench.  If you dealt with those

6     problems all at once and we got rid of those people,

7     then instead of doing fourteen at a time, we would be

8     able to probably move faster.  This is just a

9     suggestion.

10          THE COURT:  I did that at one trial, I'm just

11     afraid that we get a line of fifty people waiting to

12     talk.

13          MR. BIANCAVILLA:  It's a murder case, you're

14     going to get that anyway.  The last murder case we

15     picked a jury in, we went through three hundred people

16     to get fourteen.  That's the problem.

17          THE COURT:  I would like to try the way

18     Mr. Chamberlain suggested.

19          MR. BIANCAVILLA:  Just a suggestion.

20          THE COURT:  In you can agree, why don't we do

21     that.

22          Counsel, if there's anyone you would like to

23     remove on consent.

24          MR. BIANCAVILLA:  I think, clearly, juror

25     number 7.

Kathleen Plaia

1          THE COURT:  Off the record.

2              (Whereupon, there is a discussion held off

3      the record between the attorneys and the Court.)

4              (Whereupon, the following takes place in open

5      court:)

6          THE CLERK:  Edna Carrera, you're excused.

7      Please watch your step coming down.

8              (Whereupon, the prospective juror leaves the

9      courtroom)

10         THE CLERK:  Jurors, if your name is called,

11     please take all your personal belongings with you.

12             First person called will be seated here in

13     seat number six, Walter Probs.  Seat number eight,

14     Louis Piarulli.

15             (Whereupon, the prospective jurors are seated

16     in the jury box)

17         THE COURT:  Wall Probs, how are you, sir?

18         PROSPECTIVE JUROR:  Good.

19         THE COURT:  Now, you're a mechanic?

20         PROSPECTIVE JUROR:  Yes.  Aircraft overhaul

21     shop in Garden City.

22         THE COURT:  You checked off friend in law

23     enforcement, relatives.

24         PROSPECTIVE JUROR:  My uncle is a police

25     officer in Nassau County.  And my best friend is a city

1      police officer.  And you also checked off victim of a

2      crime.

3                  PROSPECTIVE JUROR:  My relative was shot

4      right over here on Wendy's.  He was shot in the face.

5                  THE COURT:  How long ago was that?

6                  PROSPECTIVE JUROR:  I think it was two years

7      ago.  It was a big case.

8                  THE COURT:  Was anybody arrested in that?

9                  PROSPECTIVE JUROR:  Yes.

10                 THE COURT:  Was there a trial?

11                 PROSPECTIVE JUROR:  Yes, there was.

12                 THE COURT:  Did you attend the trial?

13                 PROSPECTIVE JUROR:  No, I did not.

14                 THE COURT:  Now, you checked off some other

15     things here.  Do you want to tell us from there?

16                 PROSPECTIVE JUROR:  If you want.

17                 THE COURT:  It's up to you.  If you feel

18     comfortable, that will be fine.

19                 PROSPECTIVE JUROR:  Okay.

20                 THE COURT:  You know what I'm talking about?

21                 PROSPECTIVE JUROR:  The victim of a crime was

22     my cousin.  Friend of mine stole a police officer's

23     car.  And I don't know, what else did I check?

24                 THE COURT:  You wrote accused and convicted.

25     You checked yes, sir.  It was the same person?

                        Kathleen Plaia

1          PROSPECTIVE JUROR:  Same person.

2          THE COURT:  This person, was he convicted.

3          PROSPECTIVE JUROR:  Yes, he was.

4          THE COURT:  There was a trial?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Was it here in Nassau County?

7          PROSPECTIVE JUROR:  Yes, it was.

8          THE COURT:  You understand that the same

9    district Attorney's office is prosecuting this case

10   that prosecuted your friend.  Would that create a

11   problem for you?

12         PROSPECTIVE JUROR:  I don't think so.

13         THE COURT:  You have heard all the questions

14   asked.  Can you be a fair and impartial juror in this

15   case?

16         PROSPECTIVE JUROR:  I think so.

17         THE COURT:  You can't think so.  Half a loaf.

18         PROSPECTIVE JUROR:  I lean toward the police

19   officer.

20         THE COURT:  That's what we want to hear,

21   things is that might be bothering you that you want to

22   make us aware of.  You say lean toward.  Are you

23   saying, correct me if I'm wrong, are you saying that if

24   there was a police witness and a civilian witness, you

25   would be more prone to believe a police witness?

Kathleen Plaia

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  That's what you're telling me?

3          PROSPECTIVE JUROR:  Yes, I definitely would.

4          THE COURT:  Thank you.

5          Louis Piarulli, how are you?

6          PROSPECTIVE JUROR:  Okay.

7          THE COURT:  Now, you checked off retired.

8      What did you do before you retired?

9          PROSPECTIVE JUROR:  Long Island Railroad.

10         THE COURT:  Conductor?

11         PROSPECTIVE JUROR:  No, electrician.

12         THE COURT:  You work in one of the shops?

13         PROSPECTIVE JUROR:  No, outside.

14         THE COURT:  Okay.  Now, you checked off law

15     enforcement.  What to tell us about that?

16         PROSPECTIVE JUROR:  My son-in-law and nephew.

17         THE COURT:  Also victim of a crime.

18         PROSPECTIVE JUROR:  I was robbed in New York

19     and my house was robbed twice.

20         THE Court:  You mean burglarized.

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Now, you have heard all the

23     questions that were asked.  Any reason you can't be a

24     fair and impartial juror?

25         PROSPECTIVE JUROR:  I don't know.

Kathleen Plaia

1          THE COURT:  Well, it's kind -- that's kind of

2      a equivocal answer to use, for lack of a better word.

3          You heard the questions I asked with respect

4      to how you listen to the evidence and listen to the

5      law.  Do you feel that you won't let sympathy sway you?

6      Do you follow me, that you will follow the law as I

7      tell you?  Do you follow me, that will you assure me

8      that you will listen to the evidence in this case and

9      then if you're picked for this jury, you're sitting in

10     the jury room, you will listen to your fellow jurors

11     and there will be the give and take that goes back in

12     the deliberations and come to that well-reasoned

13     verdict?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  You will do that?

16          PROSPECTIVE JUROR:  Well --

17          THE COURT:  You're kind of shaking your head.

18          PROSPECTIVE JUROR:  Well, I don't know.

19          THE COURT:  Is there something at this point

20     that is bothering you, that you feel would -- that we

21     should know, that would tell us that perhaps you might

22     not be best suited to sit on this case?

23          PROSPECTIVE JUROR:  I have no idea.  I don't

24     know.

25          THE COURT:  Okay.  Well, thank you, sir.

Kathleen Plaia

1          Okay, ladies and gentlemen, at this point

2     we're going to take a very short break.

3          Okay.  Now, I'm going to admonish you at this

4     point.  Do not converse among yourselves or with anyone

5     else upon any subject connected with this trial.  Do

6     not read or listen to any accounts or discussion of

7     this case in the event it's reported in the newspapers

8     or other media.  Do not view or visit the premises or

9     place where the offense or offenses charged were

10    allegedly committed.  Do not visit any other courtroom.

11    And promptly report to the Court any incident within

12    your knowledge of, or any attempt by any person to

13    improperly influence you or any member of the jury.

14          Follow the court.  Officers we will be back

15    with you in ten minutes.

16          THE COURT OFFICER:  Jurors step this way.

17          (Whereupon, the panel of prospective jurors

18    leave the courtroom)

19          (Whereupon, there is a brief recess taken in

20    the proceedings.)

21          THE COURT OFFICER:  Jurors entering.

22          (Whereupon, the panel of prospective jurors

23    enter the courtroom)

24          THE CLERK:  Continued case on trial.  All

25    parties are present.

Kathleen Plaia

```
1              Counsel stipulate potential jurors are all

2      present and seated in the proper order?

3              MR. BIANCAVILLA:  So stipulated.

4              MR. CHAMBERLAIN:  So stipulated.

5              THE CLERK:  Thank you.

6              THE COURT:  We are now ready for Counsel to

7      address you.

8              We will begin with Mr. Biancavilla.

9              MR. BIANCAVILLA:  Thank you, your Honor.

10             (Whereupon, Assistant District Attorney

11     Robert Biancavilla commences his voir dire examination

12     of the prospective jurors seated in the jury box

13     regarding their qualifications to sit as sworn jurors

14     on the case in chief, not having been recorded, not

15     having been transcribed)

16             THE COURT:  Thank you, Mr. Biancavilla.

17             Mr. Chamberlain.

18             MR. CHAMBERLAIN:  May we approach?

19             (Whereupon, the following takes place at the

20     Bench, between the Court and Counsel.)

21             MR. CHAMBERLAIN:  Again, in the interest of

22     saving time, I heard a number of witnesses say, flat

23     out, that they couldn't be fair and impartial even

24     after the district attorney tried to get them to say

25     they could.
```

Kathleen Plaia

```
1            Based upon that --
2            THE COURT:  Mr. Chamberlain, perhaps you
3    could rehabilitate them, I don't know.
4            MR. CHAMBERLAIN:  I'm not interested in
5    rehabilitating them I'm interested in saving time.
6            THE COURT:  Not at this juncture, after the
7    People have already gone.  Perhaps before it might have
8    been different.  The People have already used their
9    time.  I'm not going to let you do anything but proceed
10   with your time and we will deal with cause after.
11           MR. CHAMBERLAIN:  Very good, sir.
12           THE COURT:  Absolutely.
13           (Whereupon, the following takes place in open
14   court:)
15           (Whereupon, Mr. John Chamberlain commences
16   his voir dire examination of the prospective jurors
17   seated in the jury box regarding their qualifications
18   to sit as sworn jurors on the case in chief, not having
19   been recorded, not having been transcribed)
20           MR. BIANCAVILLA:  Objection.  Motive is not
21   an element of the crime.
22           THE COURT:  Ladies and gentlemen, I will
23   charge you with respect to the law, as to what the law
24   is, at the conclusion of the case.
25           MR. CHAMBERLAIN:  I'll go on, Judge.  Thank
```

1          you.

2                    (Whereupon, Mr. Chamberlain continued with

3          his voir dire examination of the prospective jurors.)

4                    THE COURT:   Thank you very much, ladies and

5          gentlemen.

6                    Counsel, when you're ready, please approach

7          the Bench.

8                    (Whereupon, the following takes place at the

9          Bench, between the Court and Counsel:)

10                   THE COURT:   Ready.

11                   THE CLERK:   Do the People have any challenges

12         for cause as to one through twelve?

13                   MR. BIANCAVILLA:   None for cause.

14                   THE CLERK:   Defense counsel, any challenges

15         for cause, one through twelve?

16                   MR. CHAMBERLAIN:   You want to go in that

17         order?

18                   MR. CHAMBERLAIN:   Lovack.

19                   THE COURT:   Which number?

20                   MR. CHAMBERLAIN:   She's number -- number

21         twelve.

22                   THE COURT:   Granted.

23                   MR. CHAMBERLAIN:   Number eleven.

24                   THE COURT:   Granted.

25                   THE CLERK:   Number eleven?

1          THE COURT:  Yes.

2          MR. CHAMBERLAIN:  Number ten.

3          THE COURT:  Granted.

4          MR. CHAMBERLAIN:  I guess he's number number

5      eight.

6          THE COURT:  Granted.

7          THE CHAMBERLAIN:  Mr. Gambino, number one.

8          THE COURT:  He told us he had to hear both

9      sides.  Yes, I'm going to grant that.

10         MR. CHAMBERLAIN:  Number five.

11         THE COURT:  Could you tell me why you feel

12     you're moving for cause on number five?

13         MR. CHAMBERLAIN:  My notes indicate he has

14     any number of police officer friends and --

15         THE COURT:  Just because your friends are

16     police officers, doesn't mean you can be --

17         MR. CHAMBERLAIN:  I think I had something

18     else.

19         MR. BIANCAVILLA:  I think, he clearly said he

20     could be fair and impartial.  Because I expressly went

21     into that with him.

22         THE COURT:  Anything else, Mr. Chamberlain?

23         MR. CHAMBERLAIN:  Okay.

24         THE COURT:  I'm going to deny that challenge

25     for cause.

1      MR. CHAMBERLAIN:  Okay, Judge.

2      MR. CHAMBERLAIN:  Probs is number six.

3      THE COURT:  Yes, Mr. Probs indicated the

4  defendant must testify.  He would have a problem if he

5  didn't.  So, I'm going to grant that challenge for

6  cause.

7      THE COURT:  Anymore for cause,

8  Mr. Chamberlain?

9      MR. CHAMBERLAIN:  No.

10      THE CLERK:  Do the People have any peremptory

11  challenges, one through twelve?

12      MR. BIANCAVILLA:  Number three.

13      THE COURT:  Okay.

14      MR. BIANCAVILLA:  Number four, number seven.

15      MR. CHAMBERLAIN:  Are we going for perempts

16  now?

17      THE COURT:  Yes.  So far, Mr. Biancavilla has

18  perempts three four and seven.

19      THE CLERK:  Two, five and nine are remaining.

20      MR. BIANCAVILLA:  No, that's it.

21      THE COURT:  Mr. Chamberlain, numbers two,

22  five and nine are remaining for perempts.

23      MR. CHAMBERLAIN:  I'm going to exercise on

24  five and nine.

25      THE COURT:  Five and nine.

```
 1              THE COURT:  So, number two will be sworn.

 2              THE CLERK:  Do the People have any challenges

 3      for cause, number thirteen and fourteen?

 4              MR. BIANCAVILLA:  No.

 5              THE CLERK:  Defense counsel, challenge for

 6      cause number thirteen or fourteen?

 7              MR. CHAMBERLAIN:  Fourteen has a problem.  He

 8      was a clerk.

 9              THE COURT:  Put your reasons on the record

10      with respect to fourteen.

11              MR. CHAMBERLAIN:  My notes indicate, at one

12      point he worked for the DA's Office.  He worked in

13      criminal way back.  But subsequently he worked court

14      parts as a court clerk dealing with a lot of police

15      officers for many years.  I think his association with

16      the prosecutorial end is too close.  He seemed

17      uncertain.  My indication is he would -- he said he

18      would lean toward the police officer in the credibility

19      issue, because -- and I have a word I can't read prior

20      association, because he had no ax to grind.

21              THE COURT:  Mr. Biancavilla?

22              MR. BIANCAVILLA:  Judge, I think he said he

23      could fairly evaluate the evidence.  And he said he

24      would use the same tests to evaluate both police

25      officer testimony and civilian testimony.
```

Kathleen Plaia

```
 1              THE COURT:  Merely because someone works
 2    within the court system doesn't mean he can't be fair
 3    and impartial.
 4              THE COURT:  Addressing that question first,
 5    just because this man told us he's been an associate
 6    court clerk, I think it was twenty-seven years he was a
 7    court officer and court clerk, doesn't mean he can't be
 8    a fair and impartial juror.
 9              There's nothing about what he did for a
10    living that would cause me to believe he can't be fair
11    and impartial.
12              Also, it seems to me, he's told us that he
13    can fairly and impartially evaluate the evidence.
14              I'm going to deny that request for cause.
15              THE CLERK:  Do the People wish to exercise a
16    peremptory challenge, thirteen or fourteen?
17              MR. BIANCAVILLA:  No.
18              THE CLERK:  Peremptory challenge as to
19    thirteen or fourteen by defense?
20              MR. CHAMBERLAIN:  Fourteen.
21              THE COURT:  Number thirteen will be sworn.
22              We'll them home until Monday?
23              MR. BIANCAVILLA:  Sure.
24              MR. CHAMBERLAIN:  Fine with me.
25              (Whereupon, the following takes place in open
```

Kathleen Plaia

1    court:)

2              THE CLERK:  Jurors, may I have your

3    attention, please.

4              The following jurors have been selected to I

5    serve on this jury:

6              Pep advertise, Mr. Blanchard, number two, and

7    Brian Campbell.

8              If I did not call your name, you are excused

9    with the thanks of the Court.  Please gather your

10   personal belongings -- the jurors in the box only,

11   gather your personal belongings and step out of the

12   box.  Follow the instructions of the court officers.

13             Are these jurors satisfactory to the People?

14             MR. BIANCAVILLA:  Yes, they are, your Honor.

15             THE CLERK:  Satisfactory to the defense?

16             MR. CHAMBERLAIN:  Yes, they are, your Honor.

17             THE COURT:  Shall I swear them, Judge?

18             THE COURT:  Yes, please.

19             (Whereupon, the selected jurors are duly

20   sworn by the Clerk of the Court to sit as sworn jurors

21   on the case in chief.)

22             THE COURT:  Okay I'm addressing the two sworn

23   jurors.  At this point we're going to excuse you and

24   ask you to come back on Monday morning at 9:30 when we

25   expect to start the trial.

Kathleen Plaia

1    So, you do not have to report tomorrow or

2    Friday.  We'll see you Monday morning.  The court

3    officers will tell you exactly where to report.

4        Now, of course, I'm going to remind you, I

5    want to admonish you, you must not converse among

6    yourselves or with anyone else about any subject

7    connected with this trial.  You must not read or listen

8    to any account or discussion of this case, in the event

9    it's reported in the newspapers, or news media.  And

10   that includes the internet.  You must not visit or view

11   the premises where the offense or offenses charged were

12   allegedly committed.  And you must promptly report to

13   the Court any incident within your knowledge involving

14   any attempt by any person to improperly influence any

15   member of the jury.  Finally, do not visit any

16   courtroom in this building or any other building.

17       Sometimes parking will be a problem.  If we

18   want to start at 9:30 it's better if you get here at

19   nine and go for a cup of coffee.

20       Have a nice rest of the week and weekend and

21   we'll see you Monday morning.

22       (Whereupon, the sworn jurors leave the

23   courtroom)

24       THE CLERK:  Jurors, once again, if you hear

25   your name called, please gather all your personal

1    belongings, have your questionnaires out and hand them

2    to the officer, please.

3              (Whereupon, fourteen prospective jurors are

4    seated in the jury box to commence questioning

5    regarding their qualifications to sit as sworn jurors

6    on the case in chief:)

7              Ladies and gentlemen, at this time we will

8    break for the day.  Those of you seated in the box now,

9    remember where you're seated because I'm going to ask

10   you when the court officers let you back into the

11   courtroom, to take the same exact seats.

12             Those in the back can take any seat in the

13   back, but come back.

14             So, I want to remind you of certain things.

15   But before I do that, I want to tell you, I want to ask

16   you to get here, I want to try to start between 9:45

17   and ten o'clock.  I'm going to ask you to be here for

18   9:45.  Again, I'm going to mention, as I said before,

19   sometimes it's difficult to park here.  So, I'm going

20   to suggest you get here early, nine, 9:15, in order to

21   get a parking space so this way you can get a cup of

22   coffee or breakfast so you can report to the courtroom

23   around 9:45.

24             Again, ladies and gentlemen, you must not

25   converse among yourselves or with anyone else upon any

Kathleen Plaia

1    subject connected with the trial.  You must not read or

2    listen to any accounts or discussions of this case in

3    the event it is reported by the newspapers or other

4    media, including the internet.  You must not visit or

5    view the premises where the offenses or offenses

6    allegedly were committed or any other premises involved

7    in the case.  You must promptly report to the Court any

8    incident within your knowledge involving any attempt by

9    any person to improperly influence any member of the

10   jury.  Finally, did not visit any other courtroom in

11   this building or any other building.

12            Have a very nice evening.  We'll see you

13   tomorrow morning.  The court officers will tell you

14   exactly where to go.

15            (Whereupon, the panel of prospective jurors

16   leave the courtroom.)

17            THE COURT:  Counsel, see you tomorrow morning

18   at 9:45.

19            (Whereupon, court stands in recess for the

20   day.  The trial is adjourned to May 2nd, 2002 at 9:45

21   a.m. to continue jury selection.)

22

23

24

25

Kathleen Plaia