```
 1   STATE OF NEW YORK : NASSAU COUNTY

 2   COUNTY COURT     : PART XIV
     ---------------------------------------:
 3   THE PEOPLE OF THE STATE OF NEW YORK,    :
                                             :
 4                   - against -             :  IND: 1456N-00
                                             :
 5   PAUL SCRIMO,                            :
                                             :   JURY TRIAL
 6                                           :
                           Defendant.        :
 7   ---------------------------------------x

 8                            May 2, 2002
                              262 Old Country Road
 9                            Mineola, New York

10
     B E F O R E:
11
               THE HONORABLE JEFFREY BROWN,
12             County Court Judge.

13
     A P P E A R A N C E S:
14

15        (As previously noted.)

16                  *      *      *

17             THE CLERK:  Indictment 1456N of 2000, the

18   People of the State of New York versus Paul Scrimo.

19   Case on trial.  All parties present.  The jurors are

20   not present at this time.

21             People ready?

22             MR. BIANCAVILLA:  Ready.

23             THE CLERK:  Defense ready?

24             MR. CHAMBERLAIN:  Ready.

25             THE COURT:  Bring in the jury.
```

Voir Dire - Court

1     (Whereupon, the panel of prospective jurors

2        entered the courtroom and resumed their respective

3        seats.)

4     THE COURT:  Good morning, ladies and

5  gentlemen.  Let me first apologize to you.  From time

6  to time -- with all good intentions, we always try to

7  start on time, however, other court business, from time

8  to time, necessitates me starting a little late.  All I

9  can do at this point is apologize to you and we'll try

10  to do better next time.

11     At this point we are ready to start

12  individually questioning the jurors who are in the box.

13  I will start with Anthony Contorno.

14     How are you, sir?

15     PROSPECTIVE JUROR:  Fine.

16     THE COURT:  You work for the US Customs

17  Service?

18     PROSPECTIVE JUROR:  Yes.

19     THE COURT:  You have friends in law

20  enforcement.  People from your job, I presume?

21     PROSPECTIVE JUROR:  Yes.

22     THE COURT:  And other places?

23     PROSPECTIVE JUROR:  Just on the job.

24     THE COURT:  You also served on a jury before.

25  Federal or State?

Voir Dire - Court

1        PROSPECTIVE JUROR:  It was a civil case.

2        THE COURT:  Did you get to deliberate?

3        PROSPECTIVE JUROR:  Yes.

4        THE COURT:  Did you reach a verdict?

5        PROSPECTIVE JUROR:  Yes.

6        THE COURT:  Was it a good jury experience for

7   you?

8        PROSPECTIVE JUROR:  It was okay.

9        THE COURT:  You've heard all the questions

10   asked of all the other jurors.  Is there anything you

11   want to tell us?

12        PROSPECTIVE JUROR:  No.

13        THE COURT:  Can you be a fair and impartial

14   juror in this case?

15        PROSPECTIVE JUROR:  Yes.

16        THE COURT:  Thank you, sir.

17        Ellen Benson, how are you?

18        PROSPECTIVE JUROR:  Good morning.

19        THE COURT:  Good morning.

20        Now, you work for a school district?

21        PROSPECTIVE JUROR:  Yes.

22        THE COURT:  And you have friends and

23   relatives in law enforcement.  Can you tell us about

24   that?

25        PROSPECTIVE JUROR:  Friends, a very old

Voir Dire - Court

1   friend, a family of friends.

2   THE COURT:  Police officers?

3   PROSPECTIVE JUROR:  Yes.

4   THE COURT:  In Nassau or the City?

5   PROSPECTIVE JUROR:  In Nassau and one is

6   retired from New York.

7   THE COURT:  Okay.  You checked off victim of

8   a crime.  Do you want to tell us about that?

9   PROSPECTIVE JUROR:  That was my mother.  My

10  mother was held up at gunpoint.  She was mugged and her

11  house was burglarized.

12   THE COURT:  You checked off party to a civil

13  case.

14   PROSPECTIVE JUROR:  That was my daughter.

15  When she was 17, she was in an automobile accident and

16  was sued and --

17   THE COURT:  Was that case resolved?

18   PROSPECTIVE JUROR:  Yeah.

19   THE COURT:  Was it settled?

20   PROSPECTIVE JUROR:  It was settled at the

21  door of the court.

22   THE COURT:  Okay.  Now, you've heard all the

23  questions that were asked.  Is there anything you want

24  to tell us?  Any reason you can't be a fair and

25  impartial juror in this case?

Voir Dire - Court

1    PROSPECTIVE JUROR:  I am afraid of the thing

2    about the police.

3        THE COURT:  What is that?

4        PROSPECTIVE JUROR:  Well, a person my age was

5    raised when police were held in high respect.  You

6    know, in the '40s, policemen were your friends.

7    Uniforms were good.  I can't see myself not taking the

8    word of a police officer.

9        THE COURT:  You must have heard me say it a

10   few times already, that police officers are like any

11   other witnesses who testify and you have to treat them

12   exactly the same.

13       PROSPECTIVE JUROR:  That's right and my mind

14   would probably tell me that, but my instinct would be

15   to accept their word.

16       THE COURT:  Even though I tell you what the

17   law is?

18       PROSPECTIVE JUROR:  I know.

19       THE COURT:  For example, if there were two

20   witnesses, one was a civilian and one was a police

21   officer testifying about the same thing, you're going

22   to tell me that you would believe the police officer

23   over the civilian?

24       PROSPECTIVE JUROR:  I will give him the edge.

25   Plus, a policeman is a professional.  I would think he

Voir Dire - Court

1    knew more about the business.

2              THE COURT:  Well, that may be, that a police

3    officer may be trained with respect to certain things,

4    but I'm just concerned that you would be able to tell

5    us as you are sitting here that you would be able to

6    follow the law as I charge you.

7              You know, if you tell me you can't -- as I

8    said before -- I think many of us have said it --

9    there's no right or wrong answer here.  It's just what

10   it is.  If you tell me you can't, that's fine too.

11             PROSPECTIVE JUROR:  The scales would tip in

12   favor of policemen.  That's the way I was brought up.

13             THE COURT:  Thank you.

14             Amy Landau?

15             PROSPECTIVE JUROR:  Good morning.

16             THE COURT:  Good morning.  How are you?

17             PROSPECTIVE JUROR:  Good.  Thank you.

18             THE COURT:  You are a teacher?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Now, you checked off that you

21   were on a civil case.

22             PROSPECTIVE JUROR:  Yes, it settled while we

23   were at lunch.

24             THE COURT:  That happens sometimes.

25             You checked off party to a civil case.

Voir Dire - Court

1      PROSPECTIVE JUROR:  Yes, it settled with the

2      insurance company.

3      THE COURT:  You've heard all the questions

4      asked.  Is there anything you want to tell us?

5      PROSPECTIVE JUROR:  I have some family

6      criminal history that I would like to talk to you in

7      private about, not this way.

8      THE COURT:  I'll ask you to come up at the

9      end.

10      Edin Laikin?

11      PROSPECTIVE JUROR:  Yes.

12      THE COURT:  You're a reporter for Newsday?

13      PROSPECTIVE JUROR:  I am.

14      THE COURT:  Now, what type of cases have you

15      reported on?  Do you cover the courthouse?

16      PROSPECTIVE JUROR:  I don't.  I work on the

17      investigation team.

18      THE COURT:  Feature stories you would see on

19      a Sunday in the newspaper?

20      PROSPECTIVE JUROR:  We do long term projects,

21      corruption and things like that.

22      THE COURT:  If you were to serve on this

23      jury, would it be a problem for you if I tell you not

24      to read the newspapers with respect to this case or --

25      PROSPECTIVE JUROR:  You mean just these

Voir Dire - Court

1    articles, I can read the rest of paper?

2              THE COURT:  I would have no problem with that

3    but I would tell you, not that there would be anything

4    in the paper, I don't know that, but, if there was,

5    would you have a problem with that?

6              PROSPECTIVE JUROR:  I wouldn't have a problem

7    with that.

8              THE COURT:  Or speaking to any of your fellow

9    reporters or researchers?

10             PROSPECTIVE JUROR:  Not if I was told not to

11   but I do have to say, I don't know how appropriate it

12   is, I believe I remember the coverage of this case

13   pretty specifically.

14             THE COURT:  I don't know, only you would know

15   that, but I appreciate you telling us that.

16             PROSPECTIVE JUROR:  Can I approach?

17             THE COURT:  I'll have you come forward later.

18             Laida Repetto, how are you?

19             PROSPECTIVE JUROR:  Fine.

20             THE COURT:  You have friends -- this says

21   your husband and nephew are police officers.

22             PROSPECTIVE JUROR:  It's my husband's nephew.

23   He's an upstate trooper.

24             THE COURT:  Now, you served also on a

25   criminal and civil case as a juror.

Voir Dire - Court

1        PROSPECTIVE JUROR:  Yes, I did.

2        THE COURT:  How long ago were you on a jury?

3        PROSPECTIVE JUROR:  Four years ago on the

4    criminal, eight on the civil.

5        THE COURT:  Was the criminal here in Nassau

6    County?

7        PROSPECTIVE JUROR:  Yes.

8        THE COURT:  Did you deliberate and reach a

9    verdict?

10       PROSPECTIVE JUROR:  Yes.

11       THE COURT:  Was it a good jury experience for

12   you?

13       PROSPECTIVE JUROR:  Yes.

14       THE COURT:  The civil case, did you also

15   deliberate?

16       PROSPECTIVE JUROR:  It was settled out of

17   court as we went in.

18       THE COURT:  Now, you have heard all the

19   questions asked.  Is there anything you want to tell

20   us, any reason you can't be fair and impartial in this

21   case?

22       PROSPECTIVE JUROR:  I could.

23       THE COURT:  Let me rephrase it.  Can you be a

24   fair and impartial juror in this case?

25       PROSPECTIVE JUROR:  Yes.

Voir Dire - Court

1        THE COURT:  Thank you.

2        Daniel Lubrano, how are you, sir?

3        PROSPECTIVE JUROR:  Fine.

4        THE COURT:  Now, you also have friends in law

5    enforcement, or relatives.  Do you want to tell us

6    about that?

7        PROSPECTIVE JUROR:  I have a nephew who is a

8    New York City policeman.  Two close friends are retired

9    detectives from Freeport, and I have friends that are

10   New York City policemen, and Nassau County as well.

11       THE COURT:  You checked off victim of a

12   crime.  Do you want to tell us about that?

13       PROSPECTIVE JUROR:  A long time ago, I was

14   about 12 years old, I was mugged and assaulted at

15   knifepoint.

16       THE COURT:  Did you have to go to court?

17       PROSPECTIVE JUROR:  No.

18       THE COURT:  Now, you also checked off

19   something.  Can you tell us from your seat?

20       PROSPECTIVE JUROR:  I would rather speak to

21   you in private.

22       THE COURT:  I'll bring you up at the end.

23       Salvatore Arena, how are you?

24       PROSPECTIVE JUROR:  Good.  Thank you.

25       THE COURT:  Now, you also have friends in law

Voir Dire - Court

1   enforcement, or relatives.  Tell us about that please.

2              PROSPECTIVE JUROR:  I have my wife's cousin,

3   her husband is a correction officer and his son is a

4   cop.  And a friend of mine, his son is a cop in Nassau

5   and the other one is in the City.

6              THE COURT:  You checked off some boxes also.

7   Can you tell us from your seat?

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  We'll bring you up at the end.

10             Charney Anand?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  You are a physician?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Where do you work?

15             PROSPECTIVE JUROR:  I practice in Hicksville.

16             THE COURT:  What type of practice do you

17   have?

18             PROSPECTIVE JUROR:  Internal medicine.

19             THE COURT:  You checked off victim of a

20   crime.  Do you want to tell us about that?

21             PROSPECTIVE JUROR:  A neighbor was

22   burglarized.

23             THE COURT:  Also a party to a civil case.

24             PROSPECTIVE JUROR:  Malpractice.

25             THE COURT:  Is that still pending?

Voir Dire - Court

1    PROSPECTIVE JUROR:  No, it was settled.

2    THE COURT:  You heard all the questions that

3    were asked?

4    PROSPECTIVE JUROR:  Yes.

5    THE COURT:  Is there anything you want to

6    tell us?

7    PROSPECTIVE JUROR:  Could I speak to you

8    later?

9    THE COURT:  You can, if it's something you

10   can't say out loud.

11   PROSPECTIVE JUROR:  I have two young kids.

12   You had mentioned something about children under 16.

13   I'm the sole caregiver, but it would be --

14   THE COURT:  Who watches them when you are at

15   work?

16   PROSPECTIVE JUROR:  A baby-sitter.

17   THE COURT:  Would your baby-sitter be able to

18   watch your children while we are on trial?

19   PROSPECTIVE JUROR:  If the jury gets

20   sequestered --

21   THE COURT:  Like any case, there's always a

22   possibility.  At this point, we don't plan on

23   sequestering the jury.

24   PROSPECTIVE JUROR:  I guess in that case,

25   okay.

Voir Dire - Court

1      THE COURT:  Is there any reason -- can you be

2  a fair and impartial juror in this case?

3      PROSPECTIVE JUROR:  Yes.

4      THE COURT:  Thank you.

5      Emile Kuster, how are you?

6      PROSPECTIVE JUROR:  Nervous and upset.

7      THE COURT:  Why is that?

8      PROSPECTIVE JUROR:  I just feel like I am

9  locked up already.

10      THE COURT:  All you have been doing is

11  sitting in the chair for half an hour.

12      PROSPECTIVE JUROR:  I know.  With all the

13  rules and regulations they send you, if you don't do

14  this and don't do that, you're liable for something.

15      THE COURT:  You're not in trouble.  You're

16  doing what you are supposed to be doing.  You came to

17  court.

18      PROSPECTIVE JUROR:  I don't know if I can

19  decide on someone else's fate if I'm this uneasy

20  already.

21      THE COURT:  First of all, let me ask you some

22  questions.  Do you have friends or family in law

23  enforcement?

24      PROSPECTIVE JUROR:  I got a niece that is a

25  probation officer in the FBI.

Voir Dire - Court

1      THE COURT:  Somebody is in the FBI and --

2      PROSPECTIVE JUROR:  No, a probation officer

3  in the FBI.

4      THE COURT:  That's usually not the same but

5  that may be.

6      PROSPECTIVE JUROR:  She works for probation.

7      THE COURT:  Okay.  You were a party to a

8  civil case?

9      PROSPECTIVE JUROR:  Yeah, I was hurt at work

10  and sued a third party for the accident.

11      THE COURT:  You said you have a medical

12  problem.  Can you tell us about that?

13      PROSPECTIVE JUROR:  I have a prostrate

14  condition and take blood pressure pills with water

15  pills so I run frequently.

16      THE COURT:  I probably said this to some of

17  the others, if you need to take a break, if you were

18  picked for the jury, all you would have to do is raise

19  your hand and we would certainly take a break.  That's

20  not a problem.  I don't want you to be concerned about

21  that.

22      PROSPECTIVE JUROR:  Well, I didn't know.

23      THE COURT:  I am glad you mentioned it.

24      PROSPECTIVE JUROR:  I didn't think you could

25  interrupt a court case.

Voir Dire - Court

1      THE COURT:  If you raised your hand and said

2   you needed to take a break, we would.  We take breaks

3   during the course of the trial.  I can't exactly say if

4   it would be more or less than an hour which we usually

5   take.  But if something came up, all you would have to

6   do is raise your hand and we would take a break.

7      Now, you've heard all the questions that were

8   asked.  Is there anything you want to tell us?

9      PROSPECTIVE JUROR:  Yeah, I don't think I

10  could decide on another man's fate when I don't feel

11  that easy myself just being here.

12     THE COURT:  Let me ask you this.  You know,

13  the only way I suppose I can ask you this question is

14  that this man sitting here, he's innocent as he sits

15  here, and the burden is on the prosecution to prove

16  beyond a reasonable doubt that he committed the crimes

17  alleged in the indictment.

18     Now, they are going to produce witnesses and

19  there will be exhibits.  Do you promise us that you

20  would listen to the evidence that comes from the

21  witness stand and look at the exhibits?  I would charge

22  you with the law and do you promise you would listen to

23  the law and accept the law as I give it to you, and

24  then when you got in the jury room, could you sit with

25  your fellow jurors and talk about the case and give and

Voir Dire - Court

1      take between you and come to a well reasoned verdict?

2      Can you promise us that?

3                  PROSPECTIVE JUROR:  I don't think I can do

4      that.

5                  THE COURT:  You just feel --

6                  PROSPECTIVE JUROR:  I don't feel I can do

7      that.

8                  THE COURT:  Okay.  Thank you.

9                  Jacqueline Ilordi, how are you?

10                 PROSPECTIVE JUROR:  Nervous.

11                 THE COURT:  Don't be.  There's nothing to be

12     nervous about.  Are you nervous because you are sitting

13     here as a potential juror?

14                 PROSPECTIVE JUROR:  Yes, and the type of case

15     it is.

16                 THE COURT:  Are you saying because of the

17     allegations in this indictment you feel that you would

18     be better in a different type of case?

19                 PROSPECTIVE JUROR:  Yes.

20                 THE COURT:  Matter of fact, let me ask you

21     some things.  You left a lot of blanks on your form.  I

22     don't know if you realize that.  You checked off victim

23     of a crime.  You checked off yes but then didn't check

24     anything for the following four questions.  Did you

25     mean to check off no or yes?

Voir Dire - Court

1    PROSPECTIVE JUROR:  I don't remember the
2    question.
3          THE COURT:  Witness to a crime, accused of a
4    crime, victim of a crime and party to a civil case.
5          PROSPECTIVE JUROR:  No.
6          THE COURT:  Could you tell us about victim of
7    a crime?
8          PROSPECTIVE JUROR:  I was mugged about ten
9    years ago in the street.  That was very upsetting.
10         THE COURT:  Okay.  Also, you have friends in
11   law enforcement.  Do you want to tell us about that?
12         PROSPECTIVE JUROR:  My cousin is a retired
13   detective.
14         THE COURT:  Nassau County or the City?
15         PROSPECTIVE JUROR:  I think he was in the
16   City.
17         THE COURT:  Now, you've heard all the
18   questions asked.  Is there anything you want to tell
19   us?
20         PROSPECTIVE JUROR:  I don't think I can be a
21   fair and impartial juror.  It's very upsetting to me.
22         THE COURT:  Are you saying because you're --
23   you're so upset you wouldn't be able to listen to the
24   evidence?
25         PROSPECTIVE JUROR:  I wouldn't be able to see

Voir Dire - Court

1    disturbing pictures.

2              THE COURT:  Is that the only reason or is

3    there more, just so I know the full picture?  You heard

4    what I said before about listening to the evidence and

5    the law.  Can you assure us that you can do that?

6              PROSPECTIVE JUROR:  I don't think so.

7              THE COURT:  Thank you.

8              Gary Schor.

9              PROSPECTIVE JUROR:  Good morning.

10             THE COURT:  Good morning.  How are you?

11             PROSPECTIVE JUROR:  Fine.

12             THE COURT:  You are a principal at an

13   elementary school, right?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Do you have relatives in law

16   enforcement or friends?

17             PROSPECTIVE JUROR:  My son is an ADA in

18   Westchester.

19             THE COURT:  What types of cases does your son

20   handle?

21             PROSPECTIVE JUROR:  He was in Queens for

22   three years.  Now he does domestic abuse cases.  He did

23   homicide investigations, appeals.

24             THE COURT:  You checked off victim of a

25   crime.

Voir Dire - Court

1    PROSPECTIVE JUROR:  Over 30 years ago I was
2    mugged, and my oldest son, as a teenager, was shot with
3    a pellet gun as he was protecting a friend whose
4    bicycle was being stolen.
5        THE COURT:  Now, you checked off jury service
6    several years ago but then you checked off no about
7    serving.  I assume you were called down but never made
8    it on a jury.
9        PROSPECTIVE JUROR:  Once I was impaneled but
10   the case was settled as soon as we were impaneled.
11       THE COURT:  Was this a civil case?
12       PROSPECTIVE JUROR:  Yes.
13       THE COURT:  Is there anything you would like
14   to tell us?
15       PROSPECTIVE JUROR:  It would be a hardship at
16   school to serve.  We have four state math tests next
17   week and science after that.
18       THE COURT:  I have to ask this question, do
19   you have an assistant principal?
20       PROSPECTIVE JUROR:  No, I don't.
21       THE COURT:  So if you are not there, there
22   would be nobody there to administer the school?
23       PROSPECTIVE JUROR:  Right.
24       THE COURT:  Let me ask you, can you be a fair
25   and impartial juror?

Voir Dire - Court

1      PROSPECTIVE JUROR:  Yes, I can.

2      THE COURT:  Thank you, sir.

3      Tyrone Bennett, how are you?

4      PROSPECTIVE JUROR:  I'm all right.

5      THE COURT:  Good.

6      Now, you checked off friends and relatives in

7   law enforcement.  Do you want to tell us about that?

8      PROSPECTIVE JUROR:  I have an uncle who is a

9   state trooper and friends in New York City Police

10  Department, Nassau County and Hempstead.

11     THE COURT:  Witness to a crime, can you tell

12  me about that?

13     PROSPECTIVE JUROR:  I have witnessed a lot.

14  Victim, I got my car stolen.

15     THE COURT:  When you say you witnessed a lot

16  of crimes, can you tell us some of the crimes you

17  witnessed?

18     PROSPECTIVE JUROR:  I was sitting at the

19  store.  A homeless guy was asking for a ride.  The guy

20  was getting out of the car to go to the store and the

21  guy leaves the car running and the guy jumps in the car

22  and takes off, stuff like that.

23     THE COURT:  You checked off something else.

24  Do you want to tell us from there?

25     PROSPECTIVE JUROR:  I got arrested at Hofstra

Voir Dire - Court

1     for trespassing because I was arguing with security.

2              THE COURT:  Did you have to go to court as a

3     result of that?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Do you understand that the same

6     district attorney's office that prosecuted you with

7     respect to the trespass is the one that's prosecuting

8     this case?  Will that be a problem for you?

9              PROSPECTIVE JUROR:  Yep.

10             THE COURT:  You don't feel you could be a

11    fair and impartial juror in this case?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  Thank you.

14             PROSPECTIVE JUROR:  You are welcome.

15             THE COURT:  Janet Christenson, how are you?

16             PROSPECTIVE JUROR:  Hi.

17             THE COURT:  You checked -- you have a lot of

18    no boxes.  Generally, let me ask, is there anything you

19    want to tell us?

20             PROSPECTIVE JUROR:  Yes.  I understand from

21    being in court yesterday the case involves gangs and

22    bikers.  Several years back I had a relationship with

23    someone who is in a gang who happened to be a biker.

24    It was an abusive relationship and I was taken

25    advantage of financially and emotionally.  I don't

Voir Dire - Court

1  think I could remain impartial.

2            THE COURT:  I'm not so sure.  We haven't

3  heard evidence.  Counsel asking certain questions

4  doesn't mean the case involves bikers or anything of

5  that nature, but you're saying if the evidence happens

6  to be that it involved bikers --

7            PROSPECTIVE JUROR:  I don't look favorably

8  upon that life-style.

9            THE COURT:  Otherwise, can you be a fair and

10  impartial juror?

11            PROSPECTIVE JUROR:  Yes.

12            THE COURT:  Martha Barkman, good morning.

13            PROSPECTIVE JUROR:  Good morning.

14            THE COURT:  You checked off you were on a

15  civil jury back in 1992.

16            PROSPECTIVE JUROR:  Right.

17            THE COURT:  Did you get to deliberate?

18            PROSPECTIVE JUROR:  No.

19            THE COURT:  Was the case settled?

20            PROSPECTIVE JUROR:  Yes.

21            THE COURT:  You checked off party to a civil

22  case?

23            PROSPECTIVE JUROR:  Yes, my husband,

24  litigation between two business partners.  He's just a

25  witness.

Voir Dire - Court

1          THE COURT:  So it's really not a party?

2          PROSPECTIVE JUROR:  Right.  Right.

3          THE COURT:  You've heard all the questions.

4     Is there anything you want to tell us?

5          PROSPECTIVE JUROR:  Just being a school

6     teacher, I'm concerned about the length of the trial.

7          THE COURT:  But can you still be a fair and

8     impartial juror in this case?

9          PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Thank you.

11          Counsel, approach the bench, please.

12          (Whereupon, the following took place at the

13          bench outside of the hearing of the prospective

14          jurors and defendant.)

15          THE COURT:  Amy Landau, do you want to

16     approach?

17          PROSPECTIVE JUROR:  A cousin of mine was

18     accused of murdering somebody and spent years in jail

19     and my family really felt that he was wrongly accused.

20     I just saw what happens.

21          THE COURT:  Keep your voice lower.

22          PROSPECTIVE JUROR:  I just saw what happened

23     when someone's fate is decided and the family thinks

24     it's wrong.  I don't know if I can honestly do that.

25          THE COURT:  Are you saying because of the

Voir Dire - Court

 1     nature of the crime alleged in the indictment you feel

 2     uncomfortable serving on a murder case because of what

 3     happened?

 4                PROSPECTIVE JUROR:  Yes.  It was a hell's

 5     angel too.  Pagan came up.  It's just a lot of bad --

 6                THE COURT:  It doesn't necessarily mean

 7     there's going to be anything related to gangs.  Counsel

 8     is just entitled to ask certain questions to get

 9     people's opinions on certain subjects.

10                You are saying because of this being an

11     allegation of murder that you don't think you would be

12     appropriate on this case?

13                Counsel?

14                MR. BIANCAVILLA:  No questions from the

15     People.

16                MR. CHAMBERLAIN:  The fact that your cousin

17     was perhaps wrongly accused in that case, can you

18     disassociate that and listen to this case?

19                PROSPECTIVE JUROR:  I can tell you I would

20     try, but I saw it rip my whole family apart and I can't

21     promise more than that I would try.

22                THE COURT:  Thank you.  Have a seat.

23                (Whereupon, the prospective juror returned to

24     her seat.)

25                MR. BIANCAVILLA:  Judge, why don't you excuse

Voir Dire - Court

1    her?

2              THE COURT:  Do you consent?

3              MR. BIANCAVILLA:  Judge, I'll make my

4    argument now that's clearly for cause.

5              MR. CHAMBERLAIN:  I'll consent, Judge.

6              THE COURT:  We'll do it at the end.

7              MR. BIANCAVILLA:  Okay.

8              MR. CHAMBERLAIN:  Are you doing these one at

9    a time or all together at the end?

10             THE COURT:  We'll see how it goes.

11             Edin Laikin.

12             PROSPECTIVE JUROR:  I remember the case.  I'm

13   one town over.  I talked to friends about it.  I have

14   eaten there.  I just wanted to let you know that.  I

15   remember the details when it was covered.

16             THE COURT:  Counsel, is this the same case?

17             MR. BIANCAVILLA:  Yes.

18             PROSPECTIVE JUROR:  I remember the name.  I'm

19   pretty sure.

20             THE COURT:  You don't think you can be fair

21   and impartial?

22             PROSPECTIVE JUROR:  I think I could.

23             THE COURT:  You've already told us that you

24   have already read the stories in the papers with

25   respect to -- I presume the arrest.

Voir Dire - Court

1    PROSPECTIVE JUROR:  Right.

2        THE COURT:  Do you think that you can

3    disassociate that and just listen to the evidence here

4    and listen to the law as I give it to you?

5        PROSPECTIVE JUROR:  I believe so.  Before

6    when I heard you talk, I was thinking that he was

7    arrested and that's who did it.  But once you say just

8    because someone is indicted doesn't mean anything, you

9    are right.  I would have an open mind.

10        THE COURT:  As you stand here now, can you be

11    a fair and impartial juror and listen to the evidence

12    and law as I give it to you?

13        PROSPECTIVE JUROR:  Yes.

14        THE COURT:  And come to a well reasoned

15    decision?

16        PROSPECTIVE JUROR:  I believe so.

17        THE COURT:  Thank you.  Have a seat.

18        (Whereupon, the prospective juror returned to

19    his seat.)

20        THE COURT:  Daniel Lubrano.

21        Sir, you checked off convicted of a crime.

22        PROSPECTIVE JUROR:  My brother was a heroin

23    addict and he committed an armed robbery.

24        THE COURT:  Was that in Nassau County?

25        PROSPECTIVE JUROR:  Yes.

141

Voir Dire - Court

 1          THE COURT:  Do you understand that the same
 2   district attorney's office that prosecuted your brother
 3   is prosecuting this case?  Would you be able to
 4   disassociate yourself?
 5          PROSPECTIVE JUROR:  Yes, I have no problem
 6   with that.
 7          THE COURT:  Can you be a fair and impartial
 8   juror in this case?
 9          PROSPECTIVE JUROR:  Yes.  But, if I may, it
10   would be a hardship for me because I'm the sole
11   proprietor of a small business.  If I don't go to work,
12   the business doesn't function until I come back.  If
13   this is going to be long, it would be a real hardship.
14          MR. BIANCAVILLA:  People consent, Judge.
15          MR. CHAMBERLAIN:  Consent.
16          THE COURT:  Have a seat for the moment.
17          (Whereupon, the prospective juror returned to
18   his seat.)
19          THE COURT:  Salvatore Arena.
20          You've checked off accused?
21          PROSPECTIVE JUROR:  I don't think I can
22   qualify for any criminal case.  I have a relative,
23   close relative that's been accused and convicted and is
24   serving life.  It's mob related and everything else.
25   From what I saw -- I went to three trials.

Voir Dire - Court

1        THE COURT:  You sat through the trials?

2        PROSPECTIVE JUROR:  Yes.  To me, like I say,

3   I don't think I can accept a lot of things no more and

4   that's the truth.

5        THE COURT:  You wouldn't be able to listen to

6   the evidence?  You would come in with preconceived

7   notions?

8        PROSPECTIVE JUROR:  I am trying to tell you

9   the truth.  I don't think I'm qualified to be there

10  because of the way I feel.  Certain things happen in a

11  trial.  Certain witnesses are put on and it's not fair

12  to either one of them.

13        MR. BIANCAVILLA:  People consent.

14        MR. CHAMBERLAIN:  I have some questions.

15        THE COURT:  Certainly.

16        MR. CHAMBERLAIN:  The relative you're talking

17  about, what relation was it?  Was it a close relative?

18        PROSPECTIVE JUROR:  Am I allowed to say that?

19        THE COURT:  Yes.

20        PROSPECTIVE JUROR:  Cousin, very close.  We

21  grew up together, you know.

22        MR. CHAMBERLAIN:  That was another case.  If

23  the Judge told you just to listen to the facts of this

24  case.

25        PROSPECTIVE JUROR:  It's still similar and my

Voir Dire - Court

1    judgment is things were done wrong, deals, whatever you

2    want to call it, and it wouldn't be fair for me to

3    judge one or the other.  That's why I'm saying that.

4              THE COURT:  Do you think you are better

5    suited for a civil case than a criminal case?

6              PROSPECTIVE JUROR:  Yes, I don't think I

7    should be on a criminal case.

8              MR. CHAMBERLAIN:  Consent.

9              THE COURT:  We'll excuse you.  Have a seat

10   for a moment.

11             MR. CHAMBERLAIN:  Thank you.

12             (Whereupon, the prospective juror returned to

13   his seat.)

14             THE COURT:  Emile Kuster, did you ask to

15   approach the bench?

16             PROSPECTIVE JUROR:  That was the prostrate

17   thing.

18             THE COURT:  Jacqueline Ilordi.

19             PROSPECTIVE JUROR:  No.

20             THE COURT:  It's not necessary.  Okay.

21             Counsel, we have consent on three.  I'll

22   refill the box.

23             MR. BIANCAVILLA:  Judge, Kuster said he can't

24   decide someone's fate.  That was the guy with the

25   prostrate problem in the back.

Voir Dire - Court

1          MR. CHAMBERLAIN:  I would like to ask

2     questions.

3          THE COURT:  We'll keep him.

4          MR. BIANCAVILLA:  And Mr. Bennett has been

5     arrested for trespass at Hofstra and he also said he

6     couldn't be fair to us.

7          MR. CHAMBERLAIN:  Which one is that?

8          THE COURT:  Bennett.

9          MR. CHAMBERLAIN:  I'll have to go along.  No

10    sense wasting time.

11         THE COURT:  We'll excuse Mr. Bennett.

12         MR. BIANCAVILLA:  Miss Ilordi said she can't

13    be fair and impartial.  She's nervous and doesn't want

14    to sit because of the type of case.

15         MR. CHAMBERLAIN:  Consent.

16         THE COURT:  We will excuse her.  Just so it's

17    clear, Ilordi, Landau, Arena and Bennett will be

18    excused on consent for cause; is that correct, counsel?

19         MR. BIANCAVILLA:  Yes.

20         MR. CHAMBERLAIN:  Yes.

21         (Whereupon, the following took place in open

22         court.)

23         THE CLERK:  May I have your attention.  The

24    following jurors have been excused with the thanks of

25    the Court.  If I call your name, take your belongings

Voir Dire - Court

1    and step outside.  The court officer will direct you.

2    Jacqueline Ilordi, Salvatore Arena, Daniel Lubrano, Amy

3    Landau and Tyrone Bennett.

4              THE COURT:  Fill those seats, please.

5              THE CLERK:  Leslie Droogan, seat three;

6    Burton Sacks, seat number six; John Phelan, seat number

7    seven; Sandra Burelli, seat number 10; Kenneth Siff,

8    seat number 12.

9              THE COURT:  Leslie Droogan.

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  How are you?

12             PROSPECTIVE JUROR:  Good.

13             THE COURT:  You work for Tiffany and Company?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  In Manhattan?

16             PROSPECTIVE JUROR:  Manhasset.

17             THE COURT:  You have close friends in law

18   enforcement or relatives?

19             PROSPECTIVE JUROR:  My husband is an attorney

20   and my brother-in-law is a criminal defense attorney.

21             THE COURT:  What type of law does your

22   husband practice?

23             PROSPECTIVE JUROR:  Mostly civil.  He does

24   general, but mostly civil.

25             THE COURT:  Where does your brother-in-law

Voir Dire - Court

1   practice?

2           PROSPECTIVE JUROR:  California.  He

3   actually -- he practices every where really, but

4   basically California.

5           THE COURT:  You checked off victim of a

6   crime.

7           PROSPECTIVE JUROR:  A friend of mine was

8   murdered.  I wasn't a victim but my friend was

9   murdered.

10           THE COURT:  You understand what the

11   allegations are here.  Would that cause a problem for

12   you?  Would you be able to disassociate and consider

13   the evidence in this case and not be affected by what

14   happened with respect to your friend?

15           PROSPECTIVE JUROR:  I think, with my friend,

16   I wouldn't have a problem with that.  I have more of a

17   problem with the attorney thing.

18           THE COURT:  You checked off you had something

19   you wanted to bring to my attention.

20           PROSPECTIVE JUROR:  Next Thursday my son

21   graduates from college so that could be a problem.

22           THE COURT:  Where is it, out of town?

23           PROSPECTIVE JUROR:  Penn State.

24           THE COURT:  That's about five hours from

25   here.

Voir Dire - Court

1    PROSPECTIVE JUROR:  Right.

2    THE COURT:  Let me just ask you, generally

3    can you be a fair and impartial juror in this case?

4    PROSPECTIVE JUROR:  I don't know.  Really, I

5    would like to say yes, but I'm not sure because of my

6    brother-in-law really, not my husband.

7    THE COURT:  Does your brother-in-law talk to

8    you a lot about what he does?

9    PROSPECTIVE JUROR:  I know a lot about what

10   he does.  My sister tells me.

11   THE COURT:  I appreciate your candor.  Thank

12   you.

13   PROSPECTIVE JUROR:  You are welcome.

14   THE COURT:  Burton Sacks, good morning.

15   PROSPECTIVE JUROR:  Good morning.

16   THE COURT:  You work for the City Board of

17   Ed?

18   PROSPECTIVE JUROR:  Chief executive for the

19   New York City Board of Education.

20   THE COURT:  You're at 110 Livingston Street?

21   PROSPECTIVE JUROR:  That's right.

22   THE COURT:  You checked off friends in law

23   enforcement.

24   PROSPECTIVE JUROR:  Yes, one of my

25   responsibilities is the division of school safety.  The

Voir Dire - Court

1   police department, I work with the police department on

2   a daily basis.  The new police commissioner of Nassau

3   County, he worked with me as head of school safety.  I

4   deal with the police every single day.

5            THE COURT:  Do you understand what I told you

6   with respect to police officers and how they should be

7   treated like anybody else who appears in this

8   courtroom?  Can you assure us you can follow that rule

9   of law?

10            PROSPECTIVE JUROR:  Absolutely.  I deal with

11   them every single day.

12            THE COURT:  You said you wanted to speak to

13   me about something.  Can you tell me from your seat?

14            PROSPECTIVE JUROR:  No.

15            THE COURT:  We'll call you up later.

16            John Phelan, good morning.

17            PROSPECTIVE JUROR:  Good morning.

18            THE COURT:  You have friend in law

19   enforcement or relatives?

20            PROSPECTIVE JUROR:  Yes, I have a nephew in

21   Rochester.  One brother-in-law was department inspector

22   in New York City and my other brother-in-law was the

23   recently retired chief of homicide in Nassau County.

24            THE COURT:  You've heard all the questions

25   asked of the other potential jurors.  Is there anything

Voir Dire - Court

1  you want to tell us, any reason you can't be fair and
2  impartial in this case?
3          PROSPECTIVE JUROR:  No.
4          THE COURT:  Thank you.
5          Sandra Burelli, how are you?
6          PROSPECTIVE JUROR:  Okay.
7          THE COURT:  You checked off victim of a
8  crime.
9          PROSPECTIVE JUROR:  My house was burglarized
10  last March of 2001 and then I also got hit by a drunk
11  driver in 2001.  Denis Dillon was actually the DA in
12  charge of that case.
13          THE COURT:  So you know Mr. Dillon?
14          PROSPECTIVE JUROR:  Yes.
15          THE COURT:  You've spoken to him, I should
16  say?
17          PROSPECTIVE JUROR:  Yes.
18          THE COURT:  Now, you said party to a civil
19  case.
20          PROSPECTIVE JUROR:  A lawsuit -- my house
21  also burned down last year before it was burglarized.
22  I had a bad year.  We have a lawsuit -- my family has a
23  lawsuit with a TV company and I have a lawsuit with the
24  guy that hit me.
25          THE COURT:  They are all still pending?

Voir Dire - Court

1      PROSPECTIVE JUROR:  Yes.

2      THE COURT:  You've heard all the questions

3  that were asked.  Is there anything you want to tell

4  us, any reason you can't be a fair and impartial juror

5  in this case?

6      PROSPECTIVE JUROR:  It's a murder trial and I

7  don't know if I want that kind of responsibility.

8      THE COURT:  Are you saying because of the

9  nature of the allegations here you feel that you can't

10  be fair and impartial, is that what you are telling us?

11      THE DEFENDANT:  Yes.

12      THE COURT:  Do you feel you'll be able to do

13  it with respect to another type of crime or civil case

14  but not with respect to a murder?

15      PROSPECTIVE JUROR:  Yes.

16      THE COURT:  Thank you.

17      Kenneth Siff.

18      PROSPECTIVE JUROR:  Good morning.

19      THE COURT:  How are you?

20      PROSPECTIVE JUROR:  Okay.

21      THE COURT:  Route sales for Entenmann's?

22      PROSPECTIVE JUROR:  Right.

23      THE COURT:  Great cake.  You checked off

24  party to a civil case.  Do you want to tell us about

25  that?

Voir Dire - Court

1      PROSPECTIVE JUROR:  I was a third party to a

2   suit where I owned a bicycle and someone got hurt on

3   it.  They sued the manufacturer of the bike company and

4   I was brought in on that.

5      THE COURT:  Is that pending?

6      PROSPECTIVE JUROR:  No.

7      THE COURT:  Settled.

8      PROSPECTIVE JUROR:  Yes.

9      THE COURT:  You checked off law enforcement.

10  Tell us about that.

11     PROSPECTIVE JUROR:  I have a niece that is a

12  NYPD officer, a friend that's with DEA, drug

13  enforcement agency, a friend in the Port Authority

14  Police Department at Kennedy.

15     THE COURT:  Now, you've heard all the

16  questions.  Is there anything you want to tell us?

17        Can you be a fair and impartial juror in this

18  case?

19     THE DEFENDANT:  I tend to side with law

20  enforcement.  I tend to think they are doing their job.

21  Why else would -- I don't think they go out to make

22  lies and bring cases against people generally, so I

23  tend to go along with them.

24     THE COURT:  You've heard my precharge with

25  respect to -- I told you the indictment is just a

Voir Dire - Court

1    vehicle for bringing someone into court.  It's not

2    evidence of anything.  All of the evidence has to come

3    from the witness stand and you also heard me tell you

4    that this man as he sits here is innocent and the

5    burden is on the People to prove his guilt beyond a

6    reasonable doubt for each and every count alleged in

7    the indictment.

8         Can you assure us you can do that, listen to

9    the evidence and listen to the law as I give it to you

10   and reason with your fellow jurors and come to a well

11   reasoned verdict?

12        PROSPECTIVE JUROR:  I guess I could try.

13        THE COURT:  You can't equivocate.  Understand

14   there's no right answer.

15        PROSPECTIVE JUROR:  My general feelings

16   toward the way I think about things, I've told you -- I

17   guess I could be impartial and listen to what's going

18   on and make a judgment.

19        THE COURT:  Let me ask you this way, can you

20   be a fair and impartial juror in this case, knowing all

21   I told you with respect to the law and with respect to,

22   you know, my recharge, with respect to all the

23   difference facets of this case, can you promise us

24   you'll be fair and impartial?

25        PROSPECTIVE JUROR:  Yes.

Voir Dire - Court

1    THE COURT:  Counsel, approach the bench,

2    please.

3        (Whereupon, the following took place at the

4        bench outside of the hearing of the prospective

5        jurors and defendant.)

6        THE COURT:  Mr. Sacks.

7        PROSPECTIVE JUROR:  I'm chief executive of

8    this board and I was working all night on the budget.

9    This is a tremendous hardship for me to be out for two

10   weeks.  I had the chancellor on the phone all morning.

11   It's just a very, very difficult time.

12       THE COURT:  You report to the chancellor.

13       PROSPECTIVE JUROR:  Directly, Harold Levy.

14   Also my sister-in-law is a defense attorney, Deborah

15   Cordova.  She knows you and you.  Plus, I'm on 24,

16   seven days a week in my job.  My e-mails are just

17   beeping as I'm sitting here.

18       THE COURT:  Questions by either counsel?

19       MR. CHAMBERLAIN:  I'll consent.

20       MR. BIANCAVILLA:  Consent.

21       THE COURT:  Just have a seat for a moment.

22       (Whereupon, the prospective juror returned to

23   his seat.)

24       THE COURT:  Consent as to Droogan?  Counsel,

25   you consent that Miss Droogan can be excused for cause;

Voir Dire - Court

1    is that correct?

2                MR. CHAMBERLAIN:  Yes.

3                MR. BIANCAVILLA:  Yes.

4                THE COURT:  Anybody else?

5                MR. BIANCAVILLA:  No.

6                MR. CHAMBERLAIN:  No.

7                THE COURT:  We'll refill the box with respect

8    to these two.  Counsel, I want to remind you the next

9    round is 20 minutes.

10               MR. BIANCAVILLA:  Okay.

11               MR. CHAMBERLAIN:  When juror number 12 says,

12   after being probed repeatedly, they'll try -- first

13   they say they can't be impartial and your Honor says

14   can they, we'll try, I guess that type of response --

15               THE COURT:  Mr. Chamberlain, at this juncture

16   each counsel has a right to try to rehabilitate any of

17   the potential jurors.  And at the conclusion, you can

18   make your application with respect to cause.

19               MR. CHAMBERLAIN:  All right.

20               (Whereupon, the following took place in open

21         court.)

22               THE CLERK:  The following jurors have been

23   excused from this jury panel.  If you hear your name

24   called, please gather your personnel belongings and

25   step out of the box and follow the instructions of the

Voir Dire - Court

1    court officer:  Leslie Droogan and Burton Sacks.

2              F. Michael Whelan, please take seat number

3    three; Denise Sawyer, seat number six.

4              THE COURT:  F. Michael Whelan, how are you?

5              PROSPECTIVE JUROR:  Good.

6              THE COURT:  You checked of a few things.

7    Tell us about law enforcement.

8              PROSPECTIVE JUROR:  My grandpa was a New York

9    City cop.  I don't think that would apply.  The

10   majority of my friends -- I live in Massapequa.  Mostly

11   I know Nassau County, City of New York cops and

12   firemen.  Also, I noticed yesterday when you were

13   reading the names of the people testifying, I know the

14   daughter of one of the detectives, Detective Costello.

15   I don't know if it matters.

16             THE COURT:  Do you know Detective Costello?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  You checked off victim and

19   witnesses to a crime.

20             PROSPECTIVE JUROR:  It wasn't me.  It was my

21   two life long friends.  My best man at my wedding went

22   out to a bar one night and they both got shot and one

23   got killed.

24             THE COURT:  You know what the allegations are

25   here, it's a murder trial.

Voir Dire - Court

1    PROSPECTIVE JUROR:  Sounds similar.

2    THE COURT:  You don't know much about this

3    case.  I just want to know, generally, knowing the

4    nature of this charge, can you assure us you can sit

5    fairly and impartially as a juror on this type of case?

6    PROSPECTIVE JUROR:  No, I'm not positive.

7    THE COURT:  Is that as a result of what

8    happened with respect to your friends?

9    PROSPECTIVE JUROR:  Yes.  Plus, they got off

10   on some kind of stupid thing.  I was busy raising kids

11   at that time.  I don't know exactly what happened but

12   it was stupid.  The guy never went to jail or anything.

13   THE COURT:  Was that in Nassau County?

14   PROSPECTIVE JUROR:  Yes.

15   THE COURT:  Do you understand that the office

16   that prosecuted the case of your friends, or the

17   victims, is the same office prosecuting this case?

18   Would you have a problem with respect that?

19   PROSPECTIVE JUROR:  Just a general problem,

20   not specifically against the DA or anything of that

21   nature.

22   THE COURT:  I want to make sure you're not

23   holding any hostilities.

24   PROSPECTIVE JUROR:  No, just the system in

25   general, not the DA.

Voir Dire - Court

1       THE COURT:  You also checked off party to a

2  civil case.

3       PROSPECTIVE JUROR:  It was a car crash that

4  was settled a long time ago.

5       THE COURT:  Settled.

6       PROSPECTIVE JUROR:  Yes, long time ago.

7       THE COURT:  I understand that you are a

8  teacher and that Regents are in five weeks.

9       PROSPECTIVE JUROR:  Physics.  Two days is all

10  right, couple days or nights, but I don't know how long

11  this will last and I would be stressed out.

12       THE COURT:  We're estimating two weeks.

13       PROSPECTIVE JUROR:  That would be fine.

14       THE COURT:  When is the physics exam,

15  sometime in June?

16       PROSPECTIVE JUROR:  I don't know the exact

17  date.  Second week in June maybe, maybe after the 17th.

18       THE COURT:  Thank you, sir.

19       Denise Sawyer, how are you today?

20       PROSPECTIVE JUROR:  Good.

21       THE COURT:  Glad to hear it.  You checked off

22  you work for Verizon, the phone company?

23       PROSPECTIVE JUROR:  Don't say that too loud,

24  please.

25       THE COURT:  Okay.  Now, you checked off close

Voir Dire - Court

1    friends and relatives in law enforcement.  Tell us
2    about that.
3              PROSPECTIVE JUROR:  I have family members in
4    law enforcement, yes.
5              THE COURT:  You also checked off victim.
6              PROSPECTIVE JUROR:  It was a long time ago,
7    but my paternal grandfather was the victim of a crime.
8    He was killed.
9              THE COURT:  Was anybody arrested as a result
10   of that?
11             PROSPECTIVE JUROR:  No.
12             THE COURT:  You checked off some other
13   things.  Can you tell us from your seat?
14             PROSPECTIVE JUROR:  Yes.  I do have a family
15   member who was arrested and convicted of, I think,
16   assault.  I'm not even sure because I'm not close to
17   this person.
18             THE COURT:  Was that here in Nassau County?
19             PROSPECTIVE JUROR:  Yes.
20             THE COURT:  Would that cause you any problem
21   with respect to sitting on this case?
22             PROSPECTIVE JUROR:  No.  He was guilty so he
23   went to jail.
24             THE COURT:  You've heard all of the
25   questions.  Is there anything you want to tell us?

Voir Dire - Court

1    PROSPECTIVE JUROR:  No, not really.  This is

2    my first jury experience so I'm a little nervous.

3    THE COURT:  It's not something to be nervous

4    about.

5    Can you be a fair and impartial juror case?

6    PROSPECTIVE JUROR:  Yes.

7    THE COURT:  Thank you.

8    Mr. Biancavilla.

9    (Whereupon, voir dire examination, not

10    stenographically recorded, was conducted.)

11    THE COURT:  Ladies and gentlemen, we have

12    been going for quite some time.  I think it would be a

13    good idea, at this point, to take a break.  We'll make

14    it real short, five minutes.

15    Do not discuss the case amongst yourselves or

16    with anyone else.  Keep an open mind.  Do not form or

17    express any opinions until the entire case has been

18    completed.

19    Do not read or listen to any accounts of the

20    case should they be reported in the media.  Do not

21    visit or view any place or premises that have been

22    mentioned.

23    You are not to permit any party to discuss

24    the case with you or attempt to influence you, and you

25    must promptly report to the Court any violation

Voir Dire - Court

1        Mr. Chamberlain?

2        MR. CHAMBERLAIN:  I don't know -- that's on

3    expert testimony.  I don't think that, in and of

4    itself, would be basis for disqualification.  I

5    personally think she would make a good juror based upon

6    her other answers.

7        THE COURT:  As we all know, an expert is not

8    supposed to bring their expertise into the jury room

9    and advise the other jurors with respect to medicine.

10   She has told us she is acquainted with one of the

11   experts who may testify in the case.  I am going to

12   excuse the doctor for cause.

13       THE CLERK:  Challenges for cause, People, one

14   through ten?

15       MR. BIANCAVILLA:  No.

16       THE CLERK:  Challenges for cause, one through

17   ten by defense counsel?

18       MR. CHAMBERLAIN:  Number one, Judge.

19       THE COURT:  Yes, he did say that he would be

20   more inclined to believe police officers.  I will grant

21   that.

22       MR. BIANCAVILLA:  Judge, may I be heard

23   briefly?  I don't think you'll have a juror in this

24   courtroom who is not going to say they are more

25   inclined to believe police officers.

Voir Dire - Court

1        My point is this.  Given -- people are, of
2   course, going to be more inclined to believe police
3   officers no matter what the questions are.
4        The question is, can they be fair and
5   impartial judging the testimony and reject what's
6   unreasonable.  I think all of them, especially
7   Mr. Contorno said, when I gave him that example of what
8   is reasonable and what is unreasonable, he specifically
9   said that he would be able to accept what is reasonable
10   and disregard what is unreasonable, whether or not it
11   came from a police officer or a civilian.  He said he
12   would apply the same tests.  I think that's what's
13   important here, Judge.  Otherwise, number one, we will
14   never get a jury.
15        THE COURT:  I disagree with that,
16   Mr. Biancavilla.
17        MR. BIANCAVILLA:  All right.
18        THE COURT:  I'll hear you in a minute
19   Mr. Chamberlain.  My notes are he would be sympathetic
20   to police officers and he would favor them.
21        Mr. Chamberlain?
22        MR. CHAMBERLAIN:  First of all, I disagree
23   with the example Mr. Biancavilla used, the example
24   regarding circumstantial evidence.
25        MR. BIANCAVILLA:  Then you missed the point

Voir Dire - Court

1   of the example.

2           MR. CHAMBERLAIN:  The way he phrased the

3   example, it's not the proper criteria for credibility.

4   Would you give additional credibility simply because

5   they are police officers, that's my understanding.  He

6   clearly indicated he would.

7           THE COURT:  I am excusing Mr. Contorno.

8           MR. CHAMBERLAIN:  Number two, Judge, he said,

9   I can't say --

10          THE COURT:  He would be pro-police and take

11  the police version.  I agree with you.  It's granted.

12          MR. CHAMBERLAIN:  Mr. Whelan, same thing.

13          THE COURT:  Mr. Whelan told us he couldn't

14  focus because he's concerned about his class with the

15  Regents coming up.  I will grant that for cause.

16          MR. CHAMBERLAIN:  I believe -- I'm going with

17  number five, Miss Repetto.  I believe she indicated she

18  would have a problem focusing on this case at the

19  conclusion of Mr. Biancavilla's voir dire.  I didn't

20  get into it.

21          THE COURT:  That's not my notes here.  She

22  did say that two weeks would be a long time but to many

23  of us it would be a long time.  She didn't say she

24  couldn't be a fair and impartial juror.

25          MR. BIANCAVILLA:  I agree, Judge.

Voir Dire - Court

1    THE COURT:  I am going to deny that request

2    for cause.

3    MR. CHAMBERLAIN:  Number seven -- wait a

4    minute, Judge.  Yes, seven.  He was very clear that he

5    would give the police greater credibility.

6    THE COURT:  I understand that his

7    brother-in-law is a retired chief of homicide.

8    However, your questions had to do with professionalism,

9    if I recollect.

10    MR. BIANCAVILLA:  Judge, he said he would

11    fairly evaluate them.

12    MR. CHAMBERLAIN:  This case will turn on

13    whether the police have the right person and why they

14    have the right person.  If he believes the police

15    officers simply because they are police officers -- he

16    said I have to believe the police are going to do the

17    right thing.

18    MR. BIANCAVILLA:  He didn't say that, Judge.

19    THE COURT:  I believe he was talking about

20    the police officer's professionalism.  It is a

21    profession, police officer.  I don't agree with you

22    with respect to that.  In Nassau County, as we are

23    seeing as we pick this jury, almost everybody has

24    relatives who are police officers, correction officers,

25    probation officers.

Voir Dire - Court

1          The important point that has to be delved

2   into is whether they can be fair and impartial with

3   respect to this case.  I believe -- I disagree with

4   respect to they can't be fair and impartial.  I believe

5   he responded he could be.  I am denying that request.

6          MR. CHAMBERLAIN:  I respectfully except.

7          THE COURT:  You have an exception, of course.

8          MR. BIANCAVILLA:  Judge, if I may interject

9   for a moment, you already excused Kuster for cause,

10  nine, the one who has to go to the bathroom.  We

11  discussed that before.

12         THE COURT:  I don't know if we were on the

13  record at that point.

14         MR. BIANCAVILLA:  You said you would wait

15  until after.

16         THE COURT:  Yes.

17         MR. BIANCAVILLA:  I just wanted to make sure.

18         MR. CHAMBERLAIN:  I don't think that's

19  correct.

20         THE COURT:  Why don't we wait for an

21  application then.

22         MR. BIANCAVILLA:  Judge, we addressed this

23  before we broke and you specifically said you were

24  going to excuse him.  You just didn't want to do it at

25  that time.

166

Voir Dire - Court

1      THE COURT:  I said that.

2      MR. CHAMBERLAIN:  And you asked if I consent

3  and I said no.

4      THE COURT:  I don't recall that.

5      MR. CHAMBERLAIN:  Before we broke, Judge, the

6  reason you asked me -- the reason you took the break

7  was because -- there may be grounds on the record here.

8      Judge, don't worry about it.  I'll consent.

9  Let's get rid of him.  That's not what happened, Judge.

10  The reason we took the break -- that's why I went back

11  and asked more questions.

12      THE COURT:  Let's make this clear for the

13  record Mr. Kuster told us up one side and down the

14  other he can't be fair on this case.  I don't want to

15  put words in Mr. Biancavilla's mouth, but I did say I

16  would excuse him off the record.  I assume he would

17  have made the application for cause if I didn't say

18  that.

19      MR. CHAMBERLAIN:  All right.  He made it.  I

20  consent.

21      THE COURT:  Then we can move on.

22      MR. CHAMBERLAIN:  I'm telling you I did go

23  back and voir dire him because I did not consent

24  before.  That's why we took the break and I went back

25  to voir dire him, but I will consent.

Voir Dire - Court

1    THE CLERK:  Nine is excused?

2    THE COURT:  Yes.

3    MR. CHAMBERLAIN:  I am going to move on

4  number ten as well.

5    THE COURT:  Reason, please.

6    MR. CHAMBERLAIN:  Yes, Judge.  My notes

7  indicate -- I don't know, she said I don't know, in

8  answer to a question about whether she could be fair,

9  and, finally, she said she couldn't be fair and

10  impartial.  That's my notes, the young lady, number

11  ten.

12    MR. BIANCAVILLA:  I don't remember her saying

13  that, Judge.  She had a problem with the time but I

14  don't remember her saying anything about not being able

15  to be fair and impartial.

16    THE COURT:  I have an indication in my notes

17  she said she can't sit on a murder case.  Based on

18  that, I will excuse her for cause.

19    THE CLERK:  Further challenges for cause by

20  defense counsel, number one through ten.

21    THE COURT:  Are you finished,

22  Mr. Chamberlain?

23    MR. CHAMBERLAIN:  Yes, Judge.

24    THE CLERK:  People, perempt on four, five,

25  six or seven?

Voir Dire - Court

1          MR. BIANCAVILLA:  Four.

2          THE COURT:  Anybody else?

3          MR. BIANCAVILLA:  No.

4          THE COURT:  Mr. Chamberlain, five, six and

5     seven remain, peremptory challenges for any of them?

6          MR. CHAMBERLAIN:  Seven, Judge.

7          THE COURT:  Five and six are remaining.

8          MR. CHAMBERLAIN:  I'm using it on five also.

9          THE COURT:  Okay.  Six will be sworn; is that

10    correct?

11         MR. CHAMBERLAIN:  Yes.

12         THE CLERK:  People, challenges for cause,

13    numbers 11 through 14?

14         MR. BIANCAVILLA:  No.

15         THE CLERK:  Defense counsel, any challenges

16    for cause 11 through 14?

17         MR. CHAMBERLAIN:  I am going to go on 12,

18    Judge.

19         THE COURT:  Initially he said that he would

20    be -- when Mr. Biancavilla spoke with him, he said if

21    he found something the police said was unreasonable, he

22    would disregard it.

23         MR. CHAMBERLAIN:  Right.  He has police

24    relatives and he did say he would side, but when he I

25    went back at him at the end, he said he would try.  But

Voir Dire - Court

1    I believe his final position was he would have trouble

2    disregarding police officers. I believe that was his

3    last statement.

4              THE COURT: Mr. Biancavilla?

5              MR. BIANCAVILLA: I think he said he could

6    evaluate it fairly and apply the same tests for

7    civilians and police. I don't think he said he would

8    favor the police at any time during his

9    cross-examination.

10             THE COURT: I did at the beginning.

11             MR. BIANCAVILLA: I rehabilitated him.

12             THE COURT: The only thing you rehabilitated

13   him to was with respect -- if something unreasonable

14   came forward. But if it was reasonable, if the police

15   officer said something reasonable, and the police

16   officer did, he would side with the police officer.

17             MR. BIANCAVILLA: He didn't say that. He did

18   not say that. Obviously the reason why you reject

19   testimony is if it's unreasonable in light of all the

20   other facts. That's specifically in your jury

21   instruction. It's specifically in there.

22             If somebody says I'm going to reject it

23   because it's unreasonable, of course they find it

24   unreasonable, which flies in the face of logic. It's

25   part of your instructions when you are testing

Voir Dire - Court

1    credibility.

2            MR. CHAMBERLAIN:  He said he would try, that

3    he guessed he could.

4            THE COURT:  I'm going to excuse him.

5            MR. CHAMBERLAIN:  Miss Christenson, 13, she

6    said she can't be fair.

7            THE COURT:  I don't think she said that at

8    all.

9            MR. BIANCAVILLA:  I don't think so either.

10   She was the one who said she didn't like bikers.  A lot

11   of us don't like things, but she said she could be fair

12   and impartial.

13           MR. CHAMBERLAIN:  There are going to be

14   bikers in this case.  All the bars on Main Street in

15   this crime scene area, every one of them are Pagan

16   bars.

17           MR. BIANCAVILLA:  That's nonsense.  There's

18   not a biker in this case.

19           MR. CHAMBERLAIN:  The victim herself, there's

20   information she was a biker girl.  She was a Pagan

21   girl.

22           MR. BIANCAVILLA:  This is pure nonsense.

23           THE COURT:  I saw nothing that would convince

24   me she couldn't be fair and impartial.  She assured us

25   she could be fair and impartial in this case.  That's

Voir Dire - Court

1    denied.

2                 THE CLERK:  Do the People wish to exercise

3    any peremptories on 11, 13 or 14?

4                 MR. BIANCAVILLA:  No.

5                 THE CLERK:  Defense counsel, peremptory on

6    11, 13 or 14?

7                 MR. CHAMBERLAIN:  No.

8                 THE COURT:  Well, six, 11, 13 and 14 will be

9    sworn.  We'll have them come back Monday morning.  We

10   will break at this point until 2:30.

11                 (Whereupon, the following took place in open

12           court.)

13                 THE CLERK:  May I have your attention,

14   please.  The following jurors have been selected to

15   serve on this jury:  Denise Sawyer will be juror number

16   three; Gary Schor will be juror number four; Janet

17   Christenson will be juror number five; Martha Barkman

18   will be juror number six.

19                 If I did not call your name, you are excused

20   with the thanks of the Court.  Gather your personal

21   belongings and step out of the box.  Follow the

22   instructions of the court officer.

23                 THE COURT:  Counsel, approach the bench,

24   please.

25                 (Whereupon, the following took place at the

Voir Dire - Court

1    bench out of the hearing of the defendant and

2    prospective jurors.)

3              THE CLERK:  Are the jurors satisfactory to

4    the People?

5              MR. BIANCAVILLA:  Yes.

6              THE CLERK:  Are the jurors satisfactory to

7    the defense?

8              MR. CHAMBERLAIN:  Satisfactory, Judge.

9              (Whereupon, four jurors were duly sworn by

10   the clerk.)

11             THE COURT:  Ladies and gentlemen, at this

12   point we are going to break.  To the four sworn jurors,

13   you will be excused until Monday morning at 9:30.  You

14   do not have to report tomorrow.

15             Those in the back, we will start at 2:30.

16             Do not discuss the case amongst yourselves or

17   with anyone else.  Keep an open mind.  Do not form or

18   express any opinions until the entire case has been

19   completed.

20             Do not read or listen to any accounts of the

21   case should they be reported in the media.  Do not

22   visit or view any place or premises that have been

23   mentioned.

24             You are not to permit any party to discuss

25   the case with you or attempt to influence you, and you

Voir Dire - Court

1    must promptly report to the Court any violation

2    thereof.

3              Those jurors coming back, have a nice lunch.

4    To the other four sworn jurors, we'll see you Monday

5    morning.

6              (Whereupon, a luncheon recess was taken.)

7              A F T E R N O O N   S E S S I O N

8              (Whereupon, the prospective jurors entered

9    the courtroom and resumed their respective seats.)

10             THE COURT:  Good afternoon, ladies and

11   gentlemen.

12             In order to save a little bit of time, we are

13   going to change the procedure just a little bit.  As

14   you have all heard, this case is going to take

15   approximately two weeks to complete.  I want anybody --

16   and these are the only people I want to approach the

17   bench at this point, are those who, for a legitimate

18   reason, cannot stay for a two week period.  I'm telling

19   you right now, ladies and gentlemen, it has to be for a

20   reason.  You'll come up one at a time.  You'll follow

21   the court officers.

22             Ladies and gentlemen I want to make this very

23   specific.  There are only three acceptable reasons for

24   you to approach the bench; you have plain tickets and

25   are going away on vacation and you can show them to me;

Voir Dire - Court

1    two, you are a sole practitioner or proprietor and you

2    have a job where your store would have to close as a

3    result of that; and child care, somebody who normally

4    has a child care problem where they would normally stay

5    at home taking care of a child.

6                Now, you can approach.  Everybody else.

7    Please sit down.

8                (Whereupon, the following took place at the

9    bench outside the hearing of the prospective jurors and

10   defendant.)

11               PROSPECTIVE JUROR:  Stewart Center.

12               THE COURT:  Yes, sir?

13               PROSPECTIVE JUROR:  I have a 92 year old

14   father and 88 year old mother, both who are ill.  I

15   have signed a lease at the Gershwin Geriatric Center

16   starting May 1st.  I gave them a substantial deposit

17   and paid the May rent.  I was scheduled to go to

18   Florida to bring them up north.  I postponed until next

19   week thinking I wanted to fulfill my obligation because

20   I knew my commitment, but I can't postpone further.

21               THE COURT:  When are you going down to

22   Florida?

23               PROSPECTIVE JUROR:  I was going to go next

24   week.

25               THE COURT:  Do you have plane tickets?

Voir Dire - Court

1      PROSPECTIVE JUROR:  No.  I fly Jet Blue.

2      THE COURT:  Let me ask you this.  Is it

3  possible for you to postpone it again?  I have to ask

4  you that question.

5      PROSPECTIVE JUROR:  He just got out of the

6  hospital after two and a half weeks in the hospital.  I

7  have to get him up to Gershwin and I'm the only one

8  that can do it.

9      THE COURT:  Thank you.  Have a seat.

10      Counsel?

11      MR. BIANCAVILLA:  Consent.

12      MR. CHAMBERLAIN:  Consent.

13      THE COURT:  Your name, sir?

14      PROSPECTIVE JUROR:  Frank Sketsy.

15      I just had a triple bypass.  Yesterday when I

16  went to my car, five, six times I had to stop and walk.

17      THE COURT:  You are telling me you are unable

18  to --

19      PROSPECTIVE JUROR:  Yes, that's one.  Number

20  two, I have prostrate trouble.  As far as going to the

21  bathroom here, I know it's not problem.  I am awake all

22  night.  If I get three hours of sleep all night, that's

23  a lot.  Most of the day I'm beat.  Number three, half

24  the things you said, I didn't hear.

25      MR. BIANCAVILLA:  People consent.

Voir Dire - Court

1          MR. CHAMBERLAIN:   Consent.

2          THE COURT:   Next.   Your name?

3          PROSPECTIVE JUROR:   Gerard Ciquera.

4          I am a shop steward for the carpenters union.

5     If I'm out of work for two weeks, I will be laid off

6     from the job.   Someone else will fill my position.   I

7     had to wait almost two months for this job.

8          THE COURT:   You're in construction?

9          PROSPECTIVE JUROR:   Yes.

10         THE COURT:   You muster up and they send you

11    out?

12         PROSPECTIVE JUROR:   When you get laid off,

13    your name goes on a list and you wait for it be called

14    again.   Right now there's very little work.   I'll be

15    waiting approximately two months for my next job, as I

16    did for this job.

17         I don't get paid for any days I'm not at

18    work.   We get no sick days, no holidays, nothing.   When

19    you work in construction, you don't get paid.   I have

20    three kids, one starts college next fall.   Missing two

21    weeks, or actually a month, would literally break me.

22    I live hand to mouth now.

23         THE COURT:   Okay.

24         MR. BIANCAVILLA:   Consent.

25         MR. CHAMBERLAIN:   Consent.

Voir Dire - Court

1          THE COURT:  Your name?

2          PROSPECTIVE JUROR:  Martin Senzon.

3          I have plain tickets for May 13th.  I am

4    going to San Francisco on a convention.

5          THE COURT:  Do you have nonrefundable

6    tickets?

7          THE DEFENDANT:  Yes.

8          THE COURT:  What business are you in?

9          PROSPECTIVE JUROR:  Life insurance.

10         THE COURT:  Counsel?

11         MR. CHAMBERLAIN:  Consent.

12         MR. BIANCAVILLA:  Consent.

13         THE COURT:  Next.  Your name?

14         PROSPECTIVE JUROR:  Vincent Dicicco.

15         I am a hundred percent commissioned employee.

16    I'm a broker.  It's very difficult.

17         MR. BIANCAVILLA:  Consent.

18         MR. CHAMBERLAIN:  Consent.

19         THE COURT:  Next.  Your name?

20         PROSPECTIVE JUROR:  Clarisa Rasinski.

21         I have tickets to go to Miami on the 13th and

22    am returning the 19th.

23         THE COURT:  Vacation?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Counsel?

Voir Dire - Court

1          MR. BIANCAVILLA:  Consent.

2          MR. CHAMBERLAIN:  Consent.

3          PROSPECTIVE JUROR:  Thank you, very much.

4          THE COURT:  Have a seat.

5          Next.  Your name?

6          PROSPECTIVE JUROR:  Nicholas Shotofsky.

7          I go to college Nassau Community College

8     part-time.

9          THE COURT:  What do you do the rest of the

10    time?

11         PROSPECTIVE JUROR:  Landscaping and waiter.

12         THE COURT:  How many credits are you taking?

13         PROSPECTIVE JUROR:  Eleven.

14         THE COURT:  How many days a week are you

15    going to school?

16         PROSPECTIVE JUROR:  Three.

17         MR. CHAMBERLAIN:  Consent.

18         MR. BIANCAVILLA:  Consent.

19         THE COURT:  Next.  Your name?

20         PROSPECTIVE JUROR:  Paula Magatin.

21         My 11 year old is on steroids and needs

22    therapy.  I need to be out of work and home with her.

23         THE COURT:  Are you a full time employee?

24         PROSPECTIVE JUROR:  Yes.  My daughter is six

25    now.

Voir Dire - Court

1          THE COURT:  You won't be working either?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  What's wrong with your daughter?

4          PROSPECTIVE JUROR:  She has asthma.

5          THE COURT:  Is she presently at home as a

6     result of the asthma attack?

7          PROSPECTIVE JUROR:  She's in and out.  My

8     parents came back from vacation to take care of her.

9          MR. BIANCAVILLA:  Consent.

10          MR. CHAMBERLAIN:  Consent.

11          THE COURT:  Next.  Your name?

12          PROSPECTIVE JUROR:  Margaret Kollmer.

13          I'm a nurse in the hospital and other nurses

14     are covering for me.  I think two weeks would be a

15     hardship.

16          THE COURT:  Do you understand there's a lot

17     of people who have to serve, judges, lawyers?  They

18     have to cover for each other.

19          PROSPECTIVE JUROR:  I realize that.

20          THE COURT:  Do you get paid if you are not

21     working?

22          PROSPECTIVE JUROR:  I don't know.

23          THE COURT:  Who do you work for?

24          PROSPECTIVE JUROR:  Visiting nurse services

25     in the Brooklyn area.

Voir Dire - Court

1          THE COURT:  Are you getting paid for today?

2          PROSPECTIVE JUROR:  I hope so.

3          THE COURT:  The problem is everybody has to

4   serve.  Our chief judge has, as well as two judges here

5   in the County Court.  It's a hardship for everybody.

6          Counsel, questions?

7          MR. BIANCAVILLA:  No.

8          MR. CHAMBERLAIN:  No.

9          THE COURT:  Have a seat for a moment.

10          Next, please?  What is your name?

11          PROSPECTIVE JUROR:  Nick Scadaro.

12          I am retiring from the Long Island Railroad

13   after 28 years, June 1st.  My last date of work is

14   May 21st.  Prior to that, I have to be at work to get

15   my paperwork in order and I have to put in for a job at

16   a higher rate of pay when I retire.  My mother just

17   came home from Winthrop hospital with a stint on

18   Monday.  I thought it would be a few days and I'd serve

19   my time, like I have always done.  Honestly, my head is

20   not here right now.  I have to be there a week before

21   May 21st to sign my papers.

22          THE COURT:  Counsel, questions?

23          MR. BIANCAVILLA:  No.  Consent.

24          MR. CHAMBERLAIN:  Consent.

25          THE COURT:  Next.  What is your name?

Voir Dire - Court

1    PROSPECTIVE JUROR:  Borwen Huang.

2    I'm the owner of my company and I have to

3    take care of the company.

4    THE COURT:  What type of business.

5    PROSPECTIVE JUROR:  Imports.

6    THE COURT:  Do you have employees?

7    PROSPECTIVE JUROR:  Eight.

8    THE COURT:  If you are not there, like

9    today --

10    PROSPECTIVE JUROR:  My wife is taking care

11    but we have four kids.

12    THE COURT:  She usually doesn't work with you

13    full time?

14    PROSPECTIVE JUROR:  Sometimes I take care of

15    them.  Two weeks is way too much.  Three, four days,

16    maybe.

17    THE COURT:  Counsel, questions?

18    MR. BIANCAVILLA:  No.

19    MR. CHAMBERLAIN:  No.

20    THE COURT:  Have a seat for a moment.

21    What is your name?

22    PROSPECTIVE JUROR:  Kitty Chan.

23    My manager called me yesterday, tell me we

24    are going through a head count reduction in the office

25    which means lay offs.  What that means is I have people

Voir Dire - Court

1    working for me I have to go back and see who I'm going

2    to lay off and find out if I am being laid off.  I have

3    nine, ten people working for me.

4              THE COURT:  Is this something that could be

5    done in the evening?

6              PROSPECTIVE JUROR:  There's a lot of

7    discussion.  I have been on the phone in the morning,

8    at lunch time.  For my team, it's very disruptive if,

9    as the manager, I'm not there.

10             THE COURT:  Questions, counsel?

11             MR. BIANCAVILLA:  No questions.

12             MR. CHAMBERLAIN:  No questions.

13             THE COURT:  What is your name?

14             PROSPECTIVE JUROR:  Herbert Lempel.

15             I'm a physician, solo practice.  This is a

16   hardship.  I have an office in Forest Hills.

17             THE COURT:  What type of medicine?

18             PROSPECTIVE JUROR:  General practice.

19             THE COURT:  Other jurors that have come up

20   that are professionals, I have told them too, doctors,

21   lawyers, judges, everybody has to sit on jury duty.

22             Do you have someone covering you right now?

23             PROSPECTIVE JUROR:  Not today, actually.  I

24   am going back there tonight.

25             THE COURT:  Counsel?

Voir Dire - Court

1    MR. BIANCAVILLA:  No questions.

2    MR. CHAMBERLAIN:  Consent, as far as I'm

3    concerned.

4    MR. BIANCAVILLA:  Consent.

5    THE COURT:  Next?  What is your name?

6    PROSPECTIVE JUROR:  Brenda Alberti.

7    THE COURT:  You said you would like to speak

8    to the judge?

9    PROSPECTIVE JUROR:  I don't know.  My son was

10   harassed by Pagans.

11   THE COURT:  Your son was harassed by who?

12   PROSPECTIVE JUROR:  By Pagans.

13   THE COURT:  I understand that counsel brought

14   up the question, but that's not one of the reasons I

15   asked you come up here.

16   PROSPECTIVE JUROR:  I thought --

17   THE COURT:  At this point, we are only doing

18   people who can't stay for the two weeks.  Have a seat

19   for a moment and we'll get to you when you're in the

20   box.

21   Next.  What is your name?

22   PROSPECTIVE JUROR:  Madeline Parra.

23   I have a condition I get once in a while.

24   The doctor told me I can go back to work.  I am taking

25   medications.  I'm a social worker and I'm neglecting my

Voir Dire - Court

1    clients.

2              THE COURT:  Aren't there other social workers

3    there?

4              PROSPECTIVE JUROR:  I have been out more than

5    a week.  I went back Monday.  I am supposed to get

6    stronger.  With this I will be having a lot of stress.

7              THE COURT:  That wasn't one of the three

8    reasons I asked you to approach.  At this point I'll

9    ask you to take a seat and we'll take it up when you

10   are called in the box.

11             PROSPECTIVE JUROR:  I won't be excused?

12             THE COURT:  Not yet.  The attorneys will have

13   an opportunity to question you.

14             (Whereupon, the following took place in open

15        court.)

16             THE CLERK:  May I have your attention,

17   please?

18             The following jurors have been excused from

19   this panel with the thanks of the Court:  Herbert

20   Lempel; Nicholas Scadaro; Paula Magatin; Nicholas

21   Shotofsky; Clarisa Rasinsky; Vincent Dicicco; Martin

22   Senzon; Gerard Ciquera; Frank Sketsy; Stewart Center.

23             If you heard your name, please gather your

24   personal belongings.  You are excused with the thanks

25   of the Court.  Follow the instructions of the court

Voir Dire - Court

1    officer.  If you did not hear your name, please remain

2    seated.

3              Once again, jurors, if you hear your name

4    called, please step up with your personal belongings.

5    Have your questionnaires ready to hand to the court

6    officers and follow their instructions:  Elizabeth

7    Enright, seat number one; Margaret Carey, seat number

8    two; Diane Capobianco, seat number three; Thomas Y.

9    Chung, seat number four; Lisa M. Bravo, seat number

10   five; Barnett Behrenfeld, seat number six; Vincent

11   Alima, seat number seven; Lynn Lamarca, seat number

12   eight; Alex C. Thomas, seat number nine; Robert A.

13   Piazza, seat number 10; Madeline Parra, seat number 11;

14   Margaret Kollmer, seat number 12; Kitty C. Chan, seat

15   number 13; Borwen Huang, seat number 14.

16             THE COURT:  Good afternoon, ladies and

17   gentlemen.  We are ready to continue with the voir dire

18   process.

19             We'll start with Elizabeth Enright.  How are

20   you today?

21             PROSPECTIVE JUROR:  Fine.

22             THE COURT:  You have to speak up.

23             PROSPECTIVE JUROR:  Fine.

24             THE COURT:  You said you have a neighbor who

25   was a -- what's that, a retired New York City police

Voir Dire - Court

1    officer?

2                    PROSPECTIVE JUROR:  Yes.

3                    THE COURT:  And you also served on a state

4    trial jury, right?

5                    PROSPECTIVE JUROR:  Civil court.

6                    THE COURT:  A civil case?

7                    PROSPECTIVE JUROR:  Yes, but it settled out

8    of court.

9                    THE COURT:  You also checked off victim of a

10   crime, property theft.

11                   PROSPECTIVE JUROR:  I was mugged and had

12   property stolen about ten years ago.

13                   THE COURT:  Now, you've heard all the

14   questions that were asked of all the other potential

15   jurors.  Is there anything you want to tell us?

16                   Can you be a fair and impartial juror in this

17   case?

18                   PROSPECTIVE JUROR:  I can try.

19                   THE COURT:  You can't be equivocal.  I think

20   so is equivocal.  You have heard everything I said

21   prior to this.  Of course there's no right or wrong

22   answer here.  Can you be a fair and impartial in this

23   case?

24                   PROSPECTIVE JUROR:  Yes.

25                   THE COURT:  Thank you.

187

Voir Dire - Court

1          Margaret Carey?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  How are you?

4          PROSPECTIVE JUROR:  Very good.

5          THE COURT:  You have friends and relatives in

6      law enforcement?

7          PROSPECTIVE JUROR:  My brother is an

8      attorney.

9          THE COURT:  What type of law does he

10     practice?

11         PROSPECTIVE JUROR:  Corporate.  He works on

12     the New York Stock Exchange.

13         THE COURT:  You said you -- it seems you were

14     in federal court on a jury and civil trial, you wrote.

15     The federal case, was that criminal or civil?

16         PROSPECTIVE JUROR:  Criminal.

17         THE COURT:  Did you get to deliberate in that

18     case?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Did you reach a verdict?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Was it a good jury experience?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  And the civil trial, did you

25     reach a verdict in that case?

188

Voir Dire - Court

1     PROSPECTIVE JUROR:  No.  That was dismissed.

2          THE COURT:  Victim of a crime, you checked

3     off.  Can you tell us about that, please?

4          PROSPECTIVE JUROR:  About seven or eight

5     months ago my house was robbed.

6          THE COURT:  Do you mean burglarized?

7          PROSPECTIVE JUROR:  Right.

8          THE COURT:  Was anybody caught?

9          PROSPECTIVE JUROR:  No.  I knew who it was

10    and was able to get the things returned.

11         THE COURT:  So you didn't go to court?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  You've heard all the questions

14    asked of the other jurors.  Can you be a fair and

15    impartial juror in this case?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Thank you.

18         Diane Capobianco, right?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  You have to speak up.

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  You also have friends or

23    relatives in law enforcement.  Tell us about that.

24         PROSPECTIVE JUROR:  My brother, Nassau County

25    police, about 30 years.  He retired two years ago.  He

Voir Dire - Court

1    worked here in headquarters and he was with public

2    information.  Also my daughter's father, my next-door

3    neighbor.  Police are all over in the family.

4                 THE COURT:  You checked off victim of a

5    crime.  Can you tell us about that?

6                 PROSPECTIVE JUROR:  My husband's business was

7    burglarized many times.

8                 THE COURT:  Also party to a civil case.

9                 PROSPECTIVE JUROR:  I don't remember checking

10   that off.

11                THE COURT:  You checked yes to that.

12                PROSPECTIVE JUROR:  I'm sorry.

13                THE COURT:  You meant to check no.  We'll

14   forgive you.

15                You have heard all the questions we have

16   asked.  Is there anything you want to tell us?

17                Can you be a fair and impartial juror in this

18   case?

19                PROSPECTIVE JUROR:  Yes.

20                THE COURT:  Thank you.

21                Thomas Chung, how are you, sir?

22                PROSPECTIVE JUROR:  I'm okay.

23                THE COURT:  You checked off victim of a

24   crime.  Tell us about that.

25                PROSPECTIVE JUROR:  I was mugged at gunpoint

Voir Dire - Court

1    about four years ago in a parking lot.

2            THE COURT:  Was anybody caught as a result of

3    that crime.

4            PROSPECTIVE JUROR:  I don't think so.

5            THE COURT:  You didn't go to court?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  You've heard all the questions

8    asked.  Is there anything you want to tell us?

9            Can you be fair and impartial juror?

10           PROSPECTIVE JUROR:  I have a tendency to have

11   a bias against police officers.

12           THE COURT:  Against police officers?

13           PROSPECTIVE JUROR:  Yes.

14           THE COURT:  Was that as a result of a

15   particular problem with a police officer.

16           PROSPECTIVE JUROR:  Yes, several incidents

17   that happened to me, and I have heard a lot of stories

18   from others.

19           THE COURT:  You heard the list of police

20   officers who may be testifying in this case.  Were any

21   of those police officers ones that you have had a

22   problem with?

23           PROSPECTIVE JUROR:  No.

24           THE COURT:  Can you assure us that you can

25   keep separate the incident that you had with respect to

Voir Dire - Court

1    that police officer in the past and sitting and being a

2    fair and impartial juror on this case?

3             PROSPECTIVE JUROR:  I will try.

4             THE COURT:  Are you telling us under no

5    circumstances you can do that, as I explained to many

6    of the jurors before, a police officer has to be

7    treated just like any other witness, exactly the same.

8    Can you assure us that you can do that?

9             PROSPECTIVE JUROR:  Like I said, I have a

10   tendency to have bias against them.

11            THE COURT:  Thank you.

12            Lisa Bravo.

13            PROSPECTIVE JUROR:  Yes.

14            THE COURT:  You have checked off quite a few

15   things.  Friends and relatives in law enforcement?

16            PROSPECTIVE JUROR:  My brother is a housing

17   police officer in the Bronx and I have two cousins, one

18   with Queens Auto Crime and one with the Queens Street

19   Crime.

20            THE COURT:  Victim, witness to a crime?

21            PROSPECTIVE JUROR:  Thirteen years ago my

22   next-door neighbor was murdered in her apartment while

23   she slept.

24            THE COURT:  You understand the allegations in

25   this case.  Would that be a problem for you?

Voir Dire - Court

1    PROSPECTIVE JUROR:  Yes.

2    THE COURT:  When you say it's a problem, can

3    you put aside what happened to your next-door neighbor

4    and just listen to this case with respect to the facts

5    and the law as I give it to you?

6    PROSPECTIVE JUROR:  I don't think so, no.

7    THE COURT:  You also checked off some other

8    things.  Do you want to tell us from there?

9    PROSPECTIVE JUROR:  My brother-in-law had an

10   assault against him and he was actually convicted.  We

11   went through the whole process.

12   THE COURT:  Was that here in Nassau County?

13   PROSPECTIVE JUROR:  No.  It was in the Bronx.

14   THE COURT:  As a result of that, would that

15   create a problem for you sitting on a criminal case?

16   PROSPECTIVE JUROR:  That, no.

17   THE COURT:  You also checked off party to a

18   civil case.  Can you tell us about that?

19   PROSPECTIVE JUROR:  My husband got sued in a

20   car accident but it settled.

21   THE COURT:  Thank you.

22   Barnett Behrenfeld?

23   PROSPECTIVE JUROR:  That's right.

24   THE COURT:  How are you?

25   PROSPECTIVE JUROR:  Fine.

Voir Dire - Court

1      THE COURT:  Now, you checked off that you

2  served on a grand jury.

3      PROSPECTIVE JUROR:  A grand jury and a

4  criminal case.

5      THE COURT:  Now, you know, with respect to

6  the grand jury -- first of all, was that here in Nassau

7  County?

8      PROSPECTIVE JUROR:  Yes.  Yes.

9      THE COURT:  Do you understand there's a

10  different standard of proof with respect to the grand

11  jury, as there is with respect to a petit jury, which

12  is what you are being screened for now?  Did you get to

13  deliberate on the criminal case?

14      PROSPECTIVE JUROR:  Yes.

15      THE COURT:  Did you reach a verdict?

16      PROSPECTIVE JUROR:  Hung jury.

17      THE COURT:  You checked off victim of a

18  crime.  Do you want to tell us about that?

19      PROSPECTIVE JUROR:  My son's jewelry store

20  was robbed two years ago.

21      THE COURT:  Was anybody caught?

22      PROSPECTIVE JUROR:  Yes.

23      THE COURT:  Did you attend any of the court

24  proceedings?

25      PROSPECTIVE JUROR:  No.  It was out in

Voir Dire - Court

1    Suffolk County.

2              THE COURT:  You also checked party to a civil

3    case.

4              PROSPECTIVE JUROR:  Yeah, I sued my school

5    district after one of my sons was seriously hurt in a

6    school accident.

7              THE COURT:  Is that pending?

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  There's something else you

10   checked off.  Can you tell us about it?

11             PROSPECTIVE JUROR:  I would rather come up.

12             THE COURT:  We will call you up at the end.

13             Vincent Alima?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  You are a police officer?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  You are in New York City, Nassau,

18   Suffolk?

19             PROSPECTIVE JUROR:  New York City.

20             THE COURT:  How long have you been a police

21   officer?

22             PROSPECTIVE JUROR:  Nine years.

23             THE COURT:  As you know, there will be many

24   police officers testifying in this case?

25             PROSPECTIVE JUROR:  Correct?

Voir Dire - Court

1      THE COURT:  Will that be a problem for you?

2      PROSPECTIVE JUROR:  If I don't know them?

3      THE COURT:  You heard the list.

4      PROSPECTIVE JUROR:  I would have to see the

5   faces.  I belong to a couple of organizations where you

6   run into people and you just recognize their faces.

7      THE COURT:  So it is a possibility, although

8   you don't recognize them by name, as they walk up to

9   the witnesses stand you may know that person?

10      PROSPECTIVE JUROR:  Correct.

11      THE COURT:  Witness to a crime, was that as a

12   police officer?

13      PROSPECTIVE JUROR:  Yes, and I was the victim

14   of a crime.  My house was burglarized about ten, twelve

15   years ago.  And when I was a little boy, I was the

16   victim of a robbery.

17      THE COURT:  Now, you checked off also you

18   have a bad back and knee.

19      PROSPECTIVE JUROR:  That's correct.

20      THE COURT:  Can't sit still when you -- you

21   have to get up every so often.

22      PROSPECTIVE JUROR:  I'm on painkillers now.

23      THE COURT:  Can you still understand

24   everything that's going on here today?

25      PROSPECTIVE JUROR:  Yes.

Voir Dire - Court

1    THE COURT:  I didn't ask you, where do you

2    work, which precinct?

3    PROSPECTIVE JUROR:  76th Precinct in

4    Brooklyn.

5    THE COURT:  Motor patrol --

6    PROSPECTIVE JUROR:  No.  I'm in the precinct.

7    THE COURT:  Can you be a fair and impartial

8    juror in this case?

9    PROSPECTIVE JUROR:  Yes, I can.

10    THE COURT:  Thank you.

11    Lynn Lamarca?

12    PROSPECTIVE JUROR:  Yes.

13    THE COURT:  How are you?

14    PROSPECTIVE JUROR:  Good.

15    THE COURT:  You checked off you have two

16    cousins.  One is retired and one works in Queens.  I'm

17    not sure what that says.

18    PROSPECTIVE JUROR:  Emergency services.  I

19    work in a jewelry store and we have security and we

20    have a lot of emergency service policeman that I work

21    with.

22    THE COURT:  When you say emergency service,

23    is that the ambulance?

24    PROSPECTIVE JUROR:  No.  They were at 9-11.

25    They pulled people out of cars.

Voir Dire - Court

1        THE COURT:  You mean the Specialty Bureau of

2    the New York City Police Department?

3        PROSPECTIVE JUROR:  Yes.

4        THE COURT:  You checked off you sat on a

5    civil jury.

6        PROSPECTIVE JUROR:  Yes.

7        THE COURT:  It's been a while ago?

8        PROSPECTIVE JUROR:  Yes.

9        THE COURT:  Did you deliberate?

10       PROSPECTIVE JUROR:  Yes.

11       THE COURT:  Did you reach a verdict?

12       PROSPECTIVE JUROR:  Yes.

13       THE COURT:  Was it a good jury experience?

14       PROSPECTIVE JUROR:  Yes.

15       THE COURT:  Victim of a crime?

16       PROSPECTIVE JUROR:  My house was burglarized,

17   car stolen, two cars were broken into.

18       THE COURT:  Did you have to go to court?

19       PROSPECTIVE JUROR:  No.  They never found out

20   who did it.

21       THE COURT:  You heard all the questions asked

22   of the other jurors.  Is there anything you want to

23   tell us?

24       Can you be a fair and impartial juror?

25       PROSPECTIVE JUROR:  I believe so, but I'm not

Voir Dire - Court

1    comfortable with a murder case.  I would rather sit on

2    a civil case.

3              THE COURT:  You're saying any criminal case

4    would give you a problem?

5              PROSPECTIVE JUROR:  I believe so, yeah.

6              THE COURT:  Thank you.

7              Alex Thomas?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  How are you?

10             PROSPECTIVE JUROR:  Fine.

11             THE COURT:  Now, you were on a jury once

12   before, civil jury?

13             PROSPECTIVE JUROR:  Yeah.

14             THE COURT:  Did you get to deliberation?

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  You heard all the questions that

17   were asked.  Is there anything you want to tell us?

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  Can you be a fair and impartial

20   juror in this case?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Thank you.

23             Robert Piazza?

24             PROSPECTIVE JUROR:  Yes, sir.

25             THE COURT:  You don't have a brother who

Voir Dire - Court

1   plays for the Mets, do you?

2            PROSPECTIVE JUROR:  No, sir.

3            THE COURT:  Just figured I would check.

4   Maybe a cousin?

5            PROSPECTIVE JUROR:  No.

6            THE COURT:  You have friends in law

7   enforcement.

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Could you tell us about that

10  please?

11           PROSPECTIVE JUROR:  I work for a

12  municipality.  Many of my coworkers are police

13  officers.  In addition to that, I, also, in a separate

14  capacity serve as consultant to a local police

15  department.

16           THE COURT:  When you say consultant, what do

17  you mean by that?

18           PROSPECTIVE JUROR:  I manage their computer

19  systems.

20           THE COURT:  Which police department is this?

21           PROSPECTIVE JUROR:  The Glen Cove Police

22  Department.

23           THE COURT:  You were an alternate in a civil

24  jury trial?

25           PROSPECTIVE JUROR:  Yes, I was.

Voir Dire - Court

1          THE COURT:  You did not get to deliberation?

2          PROSPECTIVE JUROR:  No, sir.

3          THE COURT:  You also checked off victim of a

4     crime.  Can you tell us about that?

5          PROSPECTIVE JUROR:  My brother was mugged 20

6     years ago.

7          THE COURT:  And party to a civil case?

8          PROSPECTIVE JUROR:  Tax payer lawsuit in my

9     capacity as a municipal employee.

10         THE COURT:  You checked off one other thing.

11    Can you tell us from there?

12         PROSPECTIVE JUROR:  I would prefer not to.

13         THE COURT:  We'll have you approach at the

14    end.

15         Marlene Parra, how are you?

16         PROSPECTIVE JUROR:  Not good.

17         THE COURT:  Why?

18         PROSPECTIVE JUROR:  Because of what I told

19    you, your Honor.  I was very sick.

20         THE COURT:  Are you all right now?

21         PROSPECTIVE JUROR:  Physically, I'm not

22    feeling comfortable.

23         THE COURT:  You told us the doctor okayed you

24    to go back to work.

25         PROSPECTIVE JUROR:  He said Monday I can go

Voir Dire - Court

1    back to work.  I am taking medication.  I am not

2    feeling I should be here, really.

3                    THE COURT:  Right now are you not feeling

4    well?

5                    PROSPECTIVE JUROR:  I am very weak and

6    recovering from the last week.  I was sick the whole

7    week.

8                    THE COURT:  I understand that.  You told us

9    that.

10                   PROSPECTIVE JUROR:  Two hard days for me,

11   yesterday and today, back and forth, back and forth,

12   very hard for me.  Last night I went home and I had

13   such a headache I just wanted to go to bed.  This

14   morning I didn't feel like getting up and coming here.

15   I am not feeling in a good disposition right now.  My

16   body and my mind --

17                   THE COURT:  You're telling me you don't want

18   to be here?

19                   PROSPECTIVE JUROR:  It's not because I don't

20   want to.  It's because my body and mind are not a

21   hundred percent good.

22                   THE COURT:  You're telling you are not able

23   to give your attention and focus to this case?

24                   PROSPECTIVE JUROR:  Yes.

25                   THE COURT:  Thank you.

Voir Dire - Court

1          Margaret Kollmer?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  You checked off friends in law

4      enforcement, or relatives.

5          PROSPECTIVE JUROR:  I have two cousins who

6      were police officers.  One was a detective in Nassau

7      County but they are both retired.

8          THE COURT:  You also served on a grand jury?

9          PROSPECTIVE JUROR:  Yes, Federal in New York

10     City.

11         THE COURT:  Was that in Brooklyn?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  Manhattan?

14         PROSPECTIVE JUROR:  Manhattan.

15         THE COURT:  You understand that the burden of

16     proof is different for the grand jury, as it is for a

17     petit jury?

18         PROSPECTIVE JUROR:  Yes.

19         THE COURT:  You've heard all the questions

20     that were asked.  Is there anything else you want to

21     tell us?

22         PROSPECTIVE JUROR:  No.  I just think I'll

23     have trouble making a decision hearing only one side.

24     I understand one side will have testimony.  I think

25     I'll have a problem with that.

Voir Dire - Court

1       THE COURT:  You understand that no inference

2    can be drawn from the defendant not testifying and the

3    burden is on the People.  As that man sits there, he's

4    innocent and the burden is on the prosecutor to prove

5    his guilt beyond a reasonable doubt.  Can you follow

6    the law as I would charge it to you?  Can you follow

7    that?

8       PROSPECTIVE JUROR:  Yes, but to get both

9    sides, to me, would be a better way to make a judgment.

10      THE COURT:  You're telling us that if you

11   don't hear both sides you would not be able to make a

12   fair and reasonable determination as a juror?

13      PROSPECTIVE JUROR:  I feel it would be a

14   problem.

15      THE COURT:  Thank you.

16      Kitty Chan?

17      PROSPECTIVE JUROR:  Hi.

18      THE COURT:  You checked off a close friend is

19   a judge.  Where does that judge sit?

20      PROSPECTIVE JUROR:  He is a New York State

21   Supreme Court judge.

22      THE COURT:  In Nassau?

23      PROSPECTIVE JUROR:  No.  Queens.

24      THE COURT:  You checked off also victim of a

25   crime.  Was that burglary?

Voir Dire - Court

1    PROSPECTIVE JUROR:  Yes.

2    THE COURT:  Was that yourself?

3    PROSPECTIVE JUROR:  When I was living with my

4    parents in Queens, our house was burglarized twice.

5    THE COURT:  Did you go to court for that?

6    PROSPECTIVE JUROR:  They never found anybody.

7    THE COURT:  Also party to a civil case.

8    PROSPECTIVE JUROR:  I would like to approach

9    for that.

10   THE COURT:  We'll do that at the end.

11   Borwen Huang?

12   PROSPECTIVE JUROR:  Yes.

13   THE COURT:  I understand that you are in the

14   import business.

15   PROSPECTIVE JUROR:  Yes.

16   THE COURT:  And you told us before that you

17   were the sole proprietor of your business.

18   PROSPECTIVE JUROR:  Yes.

19   THE COURT:  Can the business run without you

20   being there?

21   PROSPECTIVE JUROR:  Couple days may be okay.

22   But two week, may be too hard.

23   THE COURT:  You checked off victim of a

24   crime.

25   PROSPECTIVE JUROR:  Business got burglarized

Voir Dire - Court

1    and car got broke in twice.

2              THE COURT:  Now, you've heard all the

3    questions that were asked.  Can you be a fair and

4    impartial in this case?

5              PROSPECTIVE JUROR:  I can.

6              THE COURT:  Thank you.

7              Counsel, approach the bench, please.

8              (Whereupon, the following took place at the

9         bench outside the hearing of the prospective

10        jurors and defendant.)

11             THE COURT:  Barnett Behrenfeld, please

12   approach, number six.

13             Sir, you asked to approach?

14             PROSPECTIVE JUROR:  Yes.  My son, when he was

15   in college cut off an off duty out of uniform police

16   officer in his car.  The police officer chased him,

17   accosted him, and arrested him for driving under the

18   influence of drugs, hit and run, and resisting arrest.

19             THE COURT:  Where was this?

20             PROSPECTIVE JUROR:  A block from my house.

21             THE COURT:  Here in Nassau County?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  As a result of this incident, do

24   you hold any sort of animosity towards police officers

25   in general or just this particular police officer?

Voir Dire - Court

1    PROSPECTIVE JUROR:  Well, there is more than

2    this one police officer involved because he called for

3    assistance.  They wrote up a police report that

4    indicated that my son's car was severely damaged in the

5    accident.  It was sitting in the police impound lot

6    without a scratch on it.  I couldn't get an officer

7    from the desk to go out and look at the car.

8    Eventually all charges were dismissed.

9    THE COURT:  You feel that -- let me ask this

10   way.  You have heard the list of police officers that

11   may testify in this case.  Were any of those police

12   officers the ones that were involved with your son?

13   PROSPECTIVE JUROR:  No.

14   THE COURT:  Can you put aside the incident

15   that happened with your son and be fair and impartial

16   in this case?

17   PROSPECTIVE JUROR:  I could put aside the

18   incident but I'm very critical of the demeanor of a

19   police officer.  If he comes across to me that he's not

20   telling the truth, I will reject everything he says.

21   THE COURT:  You, as the trier of facts, will

22   make determinations with respect to credibility.  But

23   there are numerous factors I will charge you on at the

24   end of the case that you should consider.  Do you

25   promise to follow the law with respect to determining

Voir Dire - Court

1   credibility?

2            PROSPECTIVE JUROR:  Yes.

3            THE COURT:  So you can be fair and impartial?

4            PROSPECTIVE JUROR:  I can.

5            THE COURT:  Thank you.  Have a seat.

6            (Whereupon, the prospective juror returned to

7   his seat.)

8            THE COURT:  Robert Piazza?

9            Yes, sir.

10           PROSPECTIVE JUROR:  Yes, sir.  I don't know

11  if it's relevant, but in February of this year and last

12  week I was interviewed by Mr. Traeger's office.

13           THE COURT:  In what capacity?

14           PROSPECTIVE JUROR:  In the first case, there

15  was an allegation of a criminal act.  And the second

16  case -- all of them having to do with my municipal

17  employment.  I imagine there will be another allegation

18  similar to the tax payer lawsuit.

19           THE COURT:  You say interviewed.  What do you

20  mean?

21           PROSPECTIVE JUROR:  If you want me to be

22  specific --

23           THE COURT:  I don't want you to say anything

24  that you feel shouldn't be on the record --

25           PROSPECTIVE JUROR:  The first time when

Voir Dire - Court

1    Mr. Daily from Mr. Traeger's office called me and

2    informed me I was the target of criminal

3    investigation --

4                 MR. CHAMBERLAIN:  Whose office?

5                 MR. BIANCAVILLA:  My office.

6                 THE COURT:  Counsel --

7                 MR. BIANCAVILLA:  What position do you hold?

8                 PROSPECTIVE JUROR:  Superintendent of street

9    maintenance, City of Long Beach.

10                MR. CHAMBERLAIN:  You're an employee of the

11   City of Long Beach but a consultant for the police

12   department of Glen Cove; is that correct?

13                PROSPECTIVE JUROR:  That's correct, yes.

14                THE COURT:  Have a seat for a moment.

15                (Whereupon, the prospective juror returned to

16   his seat.)

17                Counsel, do we have consent that we can

18   excuse Mr. Piazza?

19                MR. CHAMBERLAIN:  Yes.

20                MR. BIANCAVILLA:  Yes.

21                THE COURT:  Miss Chan, you asked to approach?

22                PROSPECTIVE JUROR:  My husband is being sued

23   in a civil case.  I was trying to get my daughter out

24   of the car at Home Depot and there was this lady

25   driving through.  I had to throw my daughter back in

Voir Dire - Court

1    the car to avoid -- you know, and my sister got in

2    front of the car and she continued to drive and my

3    husband was trying to catch her attention.  She

4    continued to drive and the side-view mirror knocked

5    into his body and broke and now she's suing us.

6              THE COURT:  That case is pending now in court

7    somewhere?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  As a result of that case that's

10   pending, do you have a problem being a fair impartial

11   juror in this case?

12             PROSPECTIVE JUROR:  Not because of that, but

13   because of what's going on at work, I will be

14   distracted.  People's jobs are on line.  I feel I

15   should be there to determine who should be laid off.

16   My own job is not secure so I will be distracted.

17             MR. BIANCAVILLA:  People consent.

18             THE COURT:  Do you have questions?

19             MR. CHAMBERLAIN:  I just have to say I hate

20   too consent when we have a pretty juror, but I will

21   consent.

22             THE COURT:  You'll be excused.  Have a seat

23   for a moment.

24             (Whereupon, the prospective juror returned to

25   her seat.)

Voir Dire - Court

1        MR. BIANCAVILLA:  Judge, for the record, with

2    respect to Mr. Chung, he's also -- he's made several

3    comments against police officers.  I think it's clear.

4    My point is, any further questioning by Mr. Chamberlain

5    regarding any incidents he may have been a witness to

6    or heard is going to, basically, taint this entire

7    room.  My point is the minute he starts questioning on

8    that, I am going to ask the rest of the panel be

9    excused.

10        THE COURT:  I don't know what he is going to

11    ask.  I can't tell him not to try to rehabilitate him.

12        MR. BIANCAVILLA:  My point is, with respect

13    to Mr. Chung, he's clearly and unequivocally said to

14    you on your questioning --

15        THE COURT:  Quite a few times.

16        MR. BIANCAVILLA:  I think any attempt to

17    rehabilitate him, if Mr. Chamberlain gets into it, I'm

18    not even going to question him, my point, anything he

19    asks him will taint the entire room and then I will ask

20    the entire room be excused for cause.  I am putting it

21    on the record so there's not a problem.

22        THE COURT:  I understand your point.

23        MR. BIANCAVILLA:  I'm not asking anything.

24        THE COURT:  I understand your point.

25        Would you like to say anything?

Voir Dire - Court

1     MR. CHAMBERLAIN:  Yes, I would, Judge.

2   Mr. Chung indicated he would try to be fair.  That was

3   a lot more than juror --

4             THE COURT:  I understand.

5             MR. CHAMBERLAIN:  I want to be heard.

6             THE COURT:  Go ahead.

7             MR. CHAMBERLAIN:  Because I want to bring up

8   juror number five.

9             THE COURT:  We're not bringing up five.  We

10  are talking about juror number four.

11            MR. CHAMBERLAIN:  My notes indicate he had a

12  tendency of bias against the police.  He didn't say he

13  couldn't be fair and I think I have the right to probe

14  that.

15            THE COURT:  I told you that you did.  I will

16  permit you to do that.  Thank you, counsel.

17            MR. CHAMBERLAIN:  I would like too bring up

18  five.

19            THE COURT:  Counsel, can we finish voir dire?

20  You'll have your opportunity to challenge for cause at

21  the proper time.

22            MR. CHAMBERLAIN:  Five said I don't think I

23  can be a fair juror.  I don't want Mr. Biancavilla

24  going back and talking about some of the things he

25  talked about or trying rehabilitate that.

Voir Dire - Court

1          THE COURT:  Make objections and I'll

2     sustain --

3          MR. CHAMBERLAIN:  I understand, but the

4     qualification of bias of police is not a hypothetical.

5          THE COURT:  Mr. Chamberlain, I would tell

6     you -- I told you that you would be permitted to try to

7     rehabilitate.  I understand Mr. Biancavilla's statement

8     on the record, however, I'm giving you the opportunity.

9     I don't know what you are going to ask him when you try

10    to rehabilitate him.  We'll see.

11          I understand what he said.  That's all I want

12    on the record at this point.  You have a right to

13    question the witness during your time.  Then we'll

14    entertain the applications for cause at the conclusion

15    of both yours and Mr. Biancavilla's voir dire.

16          MR. BIANCAVILLA:  Why don't we consent to

17    four and five now and not waste time?  Then we can fill

18    the box.

19          THE COURT:  Mr. Chamberlain?

20          MR. BIANCAVILLA:  Only if he'll consent.

21          MR. CHAMBERLAIN:  I'm not ready to do that.

22          THE COURT:  Let's go.

23          (Whereupon, the following took place in open

24       court.)

25          THE CLERK:  The following jurors have been

Voir Dire - Court

1    excused from this panel with the thanks of the Court.

2    If I call your name, gather your belongings, step out

3    of the box and follow the instructions of the court

4    officers, Kitty Chan and Robert Piazza.

5              Frances Dtugokenski, seat number ten; Ruthena

6    Davenport, seat number 13.

7              THE COURT:  Frances Dtugokenski forgive me if

8    I pronounce your name wrong.

9              PROSPECTIVE JUROR:  Dtugokenski, the T is

10   silent.  I had a hard time too.

11             THE COURT:  Now, you placed on your

12   questionnaire that your son-in-law is a police officer?

13             PROSPECTIVE JUROR:  Correct, in New York

14   City.

15             THE COURT:  And you also were an alternate on

16   a civil trial?

17             PROSPECTIVE JUROR:  Correct.

18             THE COURT:  Now, you also checked off

19   something.  Can you tell us from there?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  At the end I'll have you

22   approach.

23             Ruthena Davenport?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  How are you?

Voir Dire - Court

1    PROSPECTIVE JUROR:  Okay.

2    THE COURT:  Now, you checked off you have

3    relatives and friends in law enforcement.  Can you tell

4    us about that please?

5    PROSPECTIVE JUROR:  I have cousins.  One of

6    the detectives that you named on the case, I know.

7    THE COURT:  How well do you know that person?

8    PROSPECTIVE JUROR:  Friends of the family.

9    THE COURT:  Someone you see on a regular

10   basis?

11   PROSPECTIVE JUROR:  Not lately, no.

12   THE COURT:  Which detective is that?

13   PROSPECTIVE JUROR:  Mullen.

14   THE COURT:  Mullen?

15   PROSPECTIVE JUROR:  Yes.

16   THE COURT:  Now, you also checked off victim

17   of a crime.  Do you want to tell us about that?

18   PROSPECTIVE JUROR:  I was mugged about 20

19   years ago and my grandmother was murdered by an

20   intruder.

21   THE COURT:  Please try and keep your voice

22   up.

23        You checked off something else here.  Can you

24   tell us from there?

25   PROSPECTIVE JUROR:  No.

Voir Dire - Court

1   THE COURT:  All right.

2   Miss Dtugokenski come forward.

3   Counsel, come forward to the bench.

4   (Whereupon, the following took place at the

5   bench outside of the hearing of the prospective

6   jurors and defendant.)

7   THE COURT:  You checked off victim a crime.

8   PROSPECTIVE JUROR:  My step brother was

9   convicted.  He was an accomplice to a murder about 20

10  years ago.  His friend and himself were high on drugs.

11  They robbed a house and in the middle of the robbery

12  the teenage son came home and Charles wanted to leave

13  but the friend said --

14  THE COURT:  You know the allegations in this

15  indictment are murder.  Do you think that you would be

16  able to sit as a fair and impartial in a murder case?

17  PROSPECTIVE JUROR:  Yes.

18  THE COURT:  Now, you have heard all the

19  questions asked of the other jurors.  Is there anything

20  you want tell us?

21  PROSPECTIVE JUROR:  No.

22  THE COURT:  You can be fair and impartial?

23  PROSPECTIVE JUROR:  Yes.

24  THE COURT:  Thank you.  Have a seat.

25  (Whereupon, the prospective juror returned to

Voir Dire - Court

1       her seat.)

2                       THE COURT:  Miss Davenport, come forward.

3                       You said -- you checked off convicted

4           of a crime.

5                       PROSPECTIVE JUROR:  It was my uncle.  It was

6       self-defense but he murdered one and he was on trail

7       and he did time.

8                       THE COURT:  He was convicted of murder?

9                       PROSPECTIVE JUROR:  Yes.

10                      THE COURT:  Was that in Nassau County?

11                      PROSPECTIVE JUROR:  No.

12                      THE COURT:  You know that the allegations in

13      the indictment here are murder.  Do you think you would

14      be able to be a fair and impartial juror on a murder

15      case knowing your uncle was convicted?

16                      PROSPECTIVE JUROR:  No.

17                      THE COURT:  You don't think you would be able

18      to do this?

19                      PROSPECTIVE JUROR:  No.

20                      THE COURT:  Counsel, questions?

21                      MR. BIANCAVILLA:  No.

22                      MR. CHAMBERLAIN:  No, Judge.

23                      (Whereupon, the prospective juror returned to

24      her seat.)

25                      THE COURT:  Consent.

Voir Dire - Court

1        MR. BIANCAVILLA:  Yes.

2        MR. CHAMBERLAIN:  Yes.

3        MR. BIANCAVILLA:  Judge, while we are up

4    here, do you want to excuse Miss Parra?

5        THE COURT:  On consent, I would be glad to.

6    Also Mrs. Kollmer, 12, who said she needs to hear both

7    side of the story.  I'm looking to move this along.

8        MR. CHAMBERLAIN:  I agree with the district

9    attorney.  I'll consent on both.

10       THE COURT:  Okay.  Then let's excuse them.

11   Let me get the numbers.

12       MR. BIANCAVILLA:  While we are up here, since

13   we are just filling seats, how about Huang, 14, the

14   sole proprietor of a business who said that being away

15   for a two week period will be a hardship?  I consent to

16   that also.

17       MR. CHAMBERLAIN:  Can we agree on 14 and five

18   who said they didn't think they could be a fair juror?

19   I want a joint agreement.

20       THE COURT:  I'm looking.  I am asking, with

21   respect to 14.  If you don't want to consent, that's up

22   to you.

23       MR. BIANCAVILLA:  Since he wants to play

24   let's make a deal, I would consent to four, five and

25   14.

Voir Dire - Court

1        MR. CHAMBERLAIN:  I don't want --

2        THE COURT:  Counsel, take a seat.

3        MR. CHAMBERLAIN:  Judge, I'll go with the

4  last one.

5        MR. BIANCAVILLA:  Fourteen is fine.

6        THE COURT:  Counsel, this is a very serious

7  matter.  If I have consent from both of you, that's

8  fine.  But I don't want to play let's make a deal.

9        MR. CHAMBERLAIN:  Judge --

10        THE COURT:  Excuse me.  I'm talking to both

11  of you.  I think I have made myself clear now.

12        Do we have consent with respect to 14?

13        MR. BIANCAVILLA:  Yes, Judge.

14        MR. CHAMBERLAIN:  Yes, Judge.

15        (Whereupon, the following took place in open

16        court --

17        THE CLERK:  The following jurors have been

18  excused from this panel with the thanks of the Court;

19  Margaret Kollmer, Borwen Huang, Ruthena Davenport,

20  Marlene Parra.  If I called your name, gather your

21  personal belongings and step out of the box and follow

22  the instructions of the court officers.

23        Brenda Aliberti, seat number 11; Robert

24  Hilkebrand, seat number 12; Enid Winefsky, seat number

25  13; Gene Hodermarsky, seat number 14.

Voir Dire - Court

1    THE COURT:  Brenda Alberti?

2    PROSPECTIVE JUROR:  Yes.

3    THE COURT:  How are you?

4    PROSPECTIVE JUROR:  Okay.

5    THE COURT:  You checked off your husband,

6  brother and friends are members of law enforcement?

7    PROSPECTIVE JUROR:  Yes, sir.

8    THE COURT:  Where is that?

9    PROSPECTIVE JUROR:  New York.

10    THE COURT:  And also victim a crime?

11    PROSPECTIVE JUROR:  I would like to discuss

12  that privately but they also stole a car from me.

13    THE COURT:  We'll call you up at the end.

14    Robert Hilkebrand?

15    PROSPECTIVE JUROR:  Yes.

16    THE COURT:  You checked off law enforcement.

17  Can you tell us about that?

18    PROSPECTIVE JUROR:  My uncle, who is dead

19  now, was a New York City Transit cop and two of my

20  sons -- my son is 29 years old.  Two of my son's

21  friends are cops.

22    THE COURT:  You checked off -- you said you

23  were on a civil and criminal trial but you said you're

24  not sure, you took too long and were released by the

25  judge so you didn't deliberate.

Voir Dire - Court

1       PROSPECTIVE JUROR:  On the criminal, yes, I

2  did.  I don't know how many years ago that was.  It was

3  a rape case.

4       THE COURT:  Did you reach a verdict?

5       PROSPECTIVE JUROR:  Yes.

6       THE COURT:  You checked off victim of a

7  crime.  Can you tell us about that please?

8       PROSPECTIVE JUROR:  My brother-in-law's

9  father was brutally murdered about 15 years ago.

10      THE COURT:  Now, you understand what the

11  charges are here?

12      PROSPECTIVE JUROR:  Yes.

13      THE COURT:  Would that be a problem for you?

14      PROSPECTIVE JUROR:  Yes, it would be.

15      THE COURT:  You wouldn't be able to sit on a

16  murder case?

17      PROSPECTIVE JUROR:  Not the way this man was

18  killed, no.

19      THE COURT:  Okay.

20      So you're telling us you wouldn't be able to

21  be a fair and impartial juror?

22      PROSPECTIVE JUROR:  I'm pretty sure I

23  couldn't, Judge.  We went in the house and --

24      THE COURT:  Let me just ask the question so

25  I'm hundred percent sure.  Is there any possibility

Voir Dire - Court

1    that you could put aside what happened to your

2    brother-in-law's father, put that aside and decide this

3    case solely upon the evidence you hear and the law I

4    give you?

5                PROSPECTIVE JUROR:  I don't think so, no.

6                THE COURT:  Thank you.

7                Enid Winefsky?

8                PROSPECTIVE JUROR:  Yes.

9                THE COURT:  How are you?

10               PROSPECTIVE JUROR:  Good.

11               THE COURT:  You checked off victim?

12               PROSPECTIVE JUROR:  My car was stolen from my

13   place of work.

14               THE COURT:  Was anybody caught?

15               PROSPECTIVE JUROR:  They found the car.

16               THE COURT:  You didn't have to go to court?

17               PROSPECTIVE JUROR:  No.

18               THE COURT:  You heard all the questions

19   asked.  Can you be a fair and impartial juror in this

20   case?

21               PROSPECTIVE JUROR:  Yes.

22               THE COURT:  Thank you.

23               Gene Hodermarsky, how are you?

24               PROSPECTIVE JUROR:  Good.

25               THE COURT:  You checked -- you have a lot

Voir Dire - Court

1    of -- let me ask you, generally, you heard all the

2    questions asked.  Can you be a fair and impartial juror

3    in this case?

4              PROSPECTIVE JUROR:  I think I would have a

5    problem if the defendant doesn't testify.

6              THE COURT:  Even though I tell you the law,

7    that the burden is on the People to prove the

8    defendant's guilt?

9              PROSPECTIVE JUROR:  I view it if they are not

10   willing to tell their side of the story, they are

11   probably hiding something.

12             THE COURT:  If you didn't hear both sides,

13   you couldn't be a fair and impartial, is that what you

14   are saying?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Counsel, approach the bench.

17             (Whereupon, the following took place at the

18        bench outside the hearing of the prospective

19        jurors and defendant.)

20             THE COURT:  Brenda Aliberti, come forward.

21             You asked to approach?

22             PROSPECTIVE JUROR:  Yesterday they mentioned

23   the Pagans, a motorcycle group, and he comes from

24   Farmingdale.  I live close to there, but my son was

25   harassed a couple of years ago by that group.

Voir Dire - Court

THE COURT:  Those are just questions.

PROSPECTIVE JUROR:  I know, but I don't believe I could be open minded about the whole thing. Nothing this group --

THE COURT:  Say, for argument's sake, the Pagans have nothing to do with this case, there's no evidence with respect to that, will you be able to be a fair and impartial juror?

PROSPECTIVE JUROR:  It's already in my mind and I heard about the case.  We know it happened.  I live right in the area.  I am in that area all the time.  I shop in that area.

THE COURT:  You are telling us you can't put aside what you heard about this case?

PROSPECTIVE JUROR:  Yes.  I'm being honest. I don't want to send somebody, you know --

THE COURT:  You feel you cannot be a fair and impartial juror?

PROSPECTIVE JUROR:  Right.

(Whereupon, the prospective juror returned to her seat.)

THE COURT:  Counsel, questions?

MR. CHAMBERLAIN:  I'll consent, Judge.

MR. BIANCAVILLA:  Yes, consent.

Just a suggestion, why don't we, on cause, 14

Voir Dire - Court

1    and 15, and fill the last two seats with those people.

2              MR. CHAMBERLAIN:  I didn't hear.

3              THE COURT:  Counsel, I understand that you

4    will consent to excusing for cause prospective jurors

5    12 and 14; is that correct?

6              MR. BIANCAVILLA:  Correct.

7              MR. CHAMBERLAIN:  Correct.

8              (Whereupon, the following took place in open

9         court.)

10             THE CLERK:  The following jurors have been

11   excused with the thanks of the Court.  If I call your

12   name, gather your personal belongings and step out of

13   the box:  Brenda Alberti, Robert Hilkebrand, Gene

14   Hodermarsky.

15             William Geoghan, seat number 11; Ronald

16   Hipschman.

17             THE COURT:  Ladies and gentlemen, at this

18   time we are going to take a short break.

19             Do not discuss the case amongst yourselves or

20   with anyone else.  Keep an open mind.  Do not form or

21   express any opinions until the entire case has been

22   completed.

23             Do not read or listen to any accounts of the

24   case should they be reported in the media.  Do not

25   visit or view any place or premises that have been

Voir Dire - Court

1      mentioned.

2                  You are not to permit any party to discuss

3      the case with you or attempt to influence you, and you

4      must promptly report to the Court any violation

5      thereof.

6                  (Whereupon, a brief recess was taken.)

7                  (Whereupon, the prospective jurors entered

8            the courtroom and resumed their respective seats.)

9                  THE COURT:  William Geoghan?

10                 PROSPECTIVE JUROR:  Yes.

11                 THE COURT:  I said that correctly?

12                 PROSPECTIVE JUROR:  Absolutely.

13                 THE COURT:  Now, you have friends in law

14     enforcement.  Can you tell us about that?

15                 PROSPECTIVE JUROR:  My dad was a lawyer and

16     my grandfather was the district attorney of Brooklyn in

17     the '30s.

18                 THE COURT:  What type of attorney was your

19     father?

20                 PROSPECTIVE JUROR:  Trial lawyer.

21                 THE COURT:  Civil or criminal?

22                 PROSPECTIVE JUROR:  Civil.

23                 THE COURT:  You checked off party to a civil

24     case.

25                 PROSPECTIVE JUROR:  About 30 years ago, I was

Voir Dire - Court

1    in a car accident.  I sued and it was settled out of

2    court.

3              THE COURT:  You heard the questions asked of

4    the potential jurors.  Anything you want to tell us?

5              Can you be fair and impartial?

6              PROSPECTIVE JUROR:  Yes, I can.

7              THE COURT:  Ronald Hipscham?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  You have friends and relatives in

10   law enforcement?

11             PROSPECTIVE JUROR:  A life-long friend is a

12   police officer up in Rocklyn County.  I live in Floral

13   Park and we have our own police department and the

14   sergeant grew up next door to us.  I've known him since

15   I was a kid.

16             THE COURT:  Victim of a crime?

17             PROSPECTIVE JUROR:  My brother 12, 15 years

18   ago, he had a jewelry store in Freehold, New Jersey,

19   armed robbery.  The fellow who did it was killed in a

20   shoot out with police afterwards.

21             THE COURT:  You also served on a criminal

22   trial?

23             PROSPECTIVE JUROR:  Nassau, right here.

24             THE COURT:  Here in County Court?

25             PROSPECTIVE JUROR:  Yes.

Voir Dire - Court

1      THE COURT:  Did you deliberate?

2      PROSPECTIVE JUROR:  Yes.

3      THE COURT:  Did you reach a verdict?

4      PROSPECTIVE JUROR:  Yes.

5      THE COURT:  You also were on a grand jury?

6      PROSPECTIVE JUROR:  Yes.

7      THE COURT:  You heard all the questions asked

8   of all the other jurors.

9      PROSPECTIVE JUROR:  Several times.

10      THE COURT:  I'm sure you did.  One last time

11   is there anything you want to tell us?

12      Can you be a fair and impartial juror?

13      PROSPECTIVE JUROR:  Yes.

14      THE COURT:  Thank you.

15      Mr. Biancavilla.

16      MR. BIANCAVILLA:  Thank you, Judge.

17      (Whereupon, voir dire examination, not

18   stenographically recorded, was conducted.)

19      (Whereupon, the following took place at the

20   bench outside of the hearing of the prospective jurors

21   and defendant.)

22      THE CLERK:  People, challenges for cause,

23   numbers one through six?

24      MR. BIANCAVILLA:  Number four, Mr. Chung.

25      THE COURT:  Yes.  He said he had a bias

Voir Dire - Court

1    against police officers.  The best he could give us is

2    he would try to be fair which is equivocal.

3              MR. CHAMBERLAIN:  I agree, but there's a lot

4    of people here that will be biased against police

5    officers.  It might be nice to balance it.

6              THE COURT:  That's not the standard, Mr.

7    Chamberlain.  We're looking for people who can be fair

8    and impartial jurors.  Four is granted.

9              MR. BIANCAVILLA:  That's the only one for

10   cause.

11             THE CLERK:  Defense counsel, challenges for

12   cause, one through six?

13             MR. CHAMBERLAIN:  Bravo, number five.

14             THE COURT:  She testified she had a problem

15   sitting on a murder case.

16             MR. CHAMBERLAIN:  She also said I don't think

17   I can be a fair juror.

18             THE COURT:  I'll grant that.  I agree with

19   you.

20             THE CLERK:  Further challenges for cause, one

21   through six by defense counsel?

22             MR. CHAMBERLAIN:  No's.

23             THE CLERK:  Do the People wish to exercise

24   any peremptory, one through six?

25             THE COURT:  We have one, two, three and six

Voir Dire - Court

1    left.

2             MR. BIANCAVILLA:  Yes, number six.

3             THE COURT:  Anybody else?

4             MR. BIANCAVILLA:  No.

5             THE COURT:  Mr. Chamberlain, one, two and

6    three left for preempts.

7             MR. CHAMBERLAIN:  One.

8             THE COURT:  Okay.

9             MR. CHAMBERLAIN:  Three.

10            THE COURT:  Okay.

11       Just one through six, we are going to swear

12   number two, that's Miss Carey.

13            THE CLERK:  People, challenges for cause,

14   number seven through 11?

15            MR. BIANCAVILLA:  Judge, number eight said

16   she's not comfortable sitting on a murder case.

17            MR. CHAMBERLAIN:  I agree.

18            THE COURT:  We'll excuse her for cause.

19            THE CLERK:  Challenges for cause, People?

20            MR. BIANCAVILLA:  Seven through 11, no.

21            THE CLERK:  Defense counsel, challenges for

22   cause, seven, nine, ten or 11?

23            MR. CHAMBERLAIN:  No.

24            THE CLERK:  Do the People wish to exercise a

25   peremptory challenge as to seven, nine, ten or 11?

Voir Dire - Court

1        MR. BIANCAVILLA:  No.

2            THE CLERK:  Defense counsel, do you wish to

3    exercise a peremptory challenge for seven, nine, ten or

4    11.

5            MR. CHAMBERLAIN:  These are --

6            THE COURT:  Peremptory.

7            MR. CHAMBERLAIN:  Peremptory.  I'm sorry.

8    Judge, can we go back?  I missed Miss Alima on this

9    page on challenges for cause.

10           THE COURT:  We have already heard from the

11   People with respect to preempts.  We can't go back at

12   this point.

13           MR. CHAMBERLAIN:  I will challenge number

14   seven.

15           THE CLERK:  Any further challenges,

16   peremptory challenges by defense counsel on nine, ten

17   or 11?

18           MR. CHAMBERLAIN:  I'll go with ten.

19           THE COURT:  You are challenging ten

20   peremptorily?

21           MR. CHAMBERLAIN:  Correct.

22           THE COURT:  Anybody else?

23           MR. CHAMBERLAIN:  No.

24           THE COURT:  Number nine and 11, Mr. Thomas

25   and Mr. Geoghan will be sworn.

Voir Dire - Court

1        THE CLERK:  Do the People have challenges for

2    cause, number 12 and 13?

3        MR. BIANCAVILLA:  No.

4        THE CLERK:  Defense counsel, challenges for

5    cause, 12 or 13?

6        MR. CHAMBERLAIN:  Judge, my records indicate

7    number 13 indicated she would have a problem sitting on

8    a murder case.

9        THE COURT:  I'll excuse her for cause.

10   That's my recollection also.  Granted.

11       THE CLERK:  Do the People wish to exercise a

12   peremptory challenge to number 12?

13       MR. BIANCAVILLA:  Yes.

14       THE COURT:  So we will swear Miss Carey,

15   Mr. Thomas and Mr. Geoghan.

16           (Whereupon, the following took place in open

17       court.)

18       THE CLERK:  The following jurors have been

19   selected to serve on this jury:  Margaret Carey will be

20   juror number seven; Alex C. Thomas will be juror number

21   eight; William Geoghan will be juror number nine.

22       If I did not call your name, you are excused

23   with the thanks of the Court.  You may gather your

24   personal belongings and step out of the box.  If I

25   called your name, remain seated.

Voir Dire - Court

1    Are the remaining jurors satisfactory to the

2    People?

3            MR. BIANCAVILLA:  Yes.

4            THE CLERK:  The defense?

5            MR. CHAMBERLAIN:  Yes.

6            (Whereupon, three jurors were duly sworn by

7    the clerk.)

8            THE COURT:  I'm now speaking to the three

9    newly sworn jurors.  At this point we will excuse you

10   and ask you to be back here Monday morning at 9:30 a.m.

11   when we expect to start the trial.  I am going to ask

12   you to get here a little bit early due to the fact

13   parking can be difficult.  It is better you get here at

14   9:00 and then go out for coffee and report to where the

15   officers tell you to report.

16           Do not discuss the case amongst yourselves or

17   with anyone else.  Keep an open mind.  Do not form or

18   express any opinions until the entire case has been

19   completed.

20           Do not read or listen to any accounts of the

21   case should they be reported in the media.  Do not

22   visit or view any place or premises that have been

23   mentioned.

24           You are not to permit any party to discuss

25   the case with you or attempt to influence you, and you

Voir Dire - Court

1    must promptly report to the Court any violation

2    thereof.

3              You must not converse amongst yourselves or

4    with anyone else.  Keep an open mind.  Do not form or

5    express any opinions until the entire case has been

6    completed.

7              Have a nice weekend and we will see you

8    Monday morning.

9              Counsel, we'll have a new panel tomorrow

10   morning at 9:30.

11             MR. CHAMBERLAIN:  How many alternates are we

12   going pick?

13             MR. BIANCAVILLA:  May I suggest four?

14             MR. CHAMBERLAIN:  I would tend to agree.

15             THE COURT:  We'll do that.

16                       *       *       *

17             (Whereupon, the above matter was adjourned to

18        May 3rd, 2002.)

19

20

21

22

23

24

25